LENNON, MURPHY & LENNON, LLC
Attorneys for Defendant
JANGHA MARINE CORP.
The GrayBar Building
420 Lexington Avenue, Suite 300
New York, New York 10170
Telephone:  (212) 490-6050
Facsimile:  (212) 490-6070

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
THYMUS SHIPPING CORP.,                    :     07 CV 10522 (LLS)
                                          :
                    Plaintiff,            :     ECF CASE
                                          :
        - against -                       :
                                          :
JANGHA MARINE CORP.,                      :
                                          :
                    Defendant.            :
-------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REDUCE ATTACHMENT

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................1

STATEMENT OF FACTS.........................................................................................................2

ARGUMENT..............................................................................................................................4

POINT ONE
IT IS PLAINTIFF'S BURDEN TO PROVE WHY THE ATTACHMENT SHOULD NOT BE VACATED ................................................................................................................................5

POINT TWO
PURSUANT TO SUPPLEMENTAL RULE E(6) THE COURT SHOULD REDUCE THE ATTACHMETN BY VACATING THE BANK GUARANTEE CLAIM.....................................6

CONCLUSION...........................................................................................................................8

## PRELIMINARY STATEMENT

Defendant, JANGHA MARINE CORP. ("Defendant" or "Jangha"), by its undersigned counsel, Lennon, Murphy & Lennon, LLC, submits the within Memorandum of Law in Support of its Motion to Reduce the maritime attachment obtained by Plaintiff, THYMUS SHIPPING CORP. ("Plaintiff" or "Thymus"), pursuant to Rules B, E(4)(f) and E(6) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

Thymus filed its Complaint in support of an Ex Parte Order of maritime attachment on November 21, 2007. *See Lennon Decl. ¶ 2, Ex. 1.* The Ex Parte Attachment Order dated November 21, 2007 issued in this action authorizes the attachment of Defendant's property in this district in an amount up to $791,500.73, inclusive of costs and interest. *See Lennon Decl. ¶ 3, Ex. 2.* Upon information and belief, approximately $150,571.46 of Jangha's property has been restrained in the District as a result of Thymus' service of the Ex Parte Order and Process of Maritime Attachment and Garnishment, authorized and issued thereby, that has been served on non-party garnishees.

For the reasons set forth in the accompanying Declaration of Captain Mahiuddin Abdul Kadir MAK ("MAK Decl.") and Declaration of Kevin J. Lennon ("Lennon Aff.") and for the reasons explained herein, the Ex Parte Order should be reduced because Plaintiff's underlying claims as alleged in its Verified Complaint includes a premature indemnity claim for potential exposure to non-party, Sea Quest Shipping Pte Ltd. ("Sea Quest"), for which security should not be granted.

Sea Quest unlawfully arrested Plaintiff's vessel in Bangladesh which required Plaintiff to post security in the form of a $400,000 bank guarantee to release the vessel from arrest. *See*

1

*Lennon Decl. ¶ 4, Ex. 3.* However, the Sea Quest claim has not been paid, or settled and, for the reasons shown herein, is not being prosecuted in Bangladesh. Further, Plaintiff's claim for security for the bank guarantee it has posted, plus the costs thereof, is an insufficient basis for Rule B security as it is a premature indemnity claim unless and until it has paid or settled that claim. In this respect, the Plaintiff cannot sustain its burden to show that it has a valid prima facie maritime claim under Rule B for which security may be granted.

## STATEMENT OF FACTS

Pursuant to a maritime contract of charter dated December 1, 2004 the Plaintiff chartered the M/V Regal Star ("Vessel") to Defendant who, in turn, sub-chartered the Vessel to non-party Sea Quest for one time chartered trip from Haldia and Paradip, India to China. The Vessel was directed to and arrived at Haldia, India for loading of Sea Quest's cargo. However, Sea Quest having failed to pay hire on the sub charter party to Jangha as required, Jangha terminated the sub charter party.

Thereafter, Jangha re-let the Vessel by way of a new sub charter to non-party Jade Fortune Investment Inc. ("Jade"). Jangha advised Thymus to follow Jade's forthcoming voyage instructions. Jade issued voyage instructions to Thymus who followed the same and loaded Jade's cargo at Haldia. The Vessel subsequently arrived at Chittagong, Bangladesh to discharge Jade's cargo. However, on or about March 31, 2005, Sea Quest unlawfully arrested the Vessel for an alleged claim of loss and damages stemming from the events at Haldia, India.[1]

Thymus thereafter arranged for the Vessel's release by posting a bank guarantee in the sum of $400,000 to secure Sea Quest's alleged claims. *See Lennon Decl. ¶ 4, Ex. 3.* Following

---

[1] For a more detailed description of the events in question please see the parties' London arbitration briefs attached as Exhibits 7 – 9 to the Lennon Declaration.

2

the initial filing of Sea Quest's arrest papers, and a challenge by Thymus to the size of the alleged claims supporting the arrest, there has been no virtually activity in the Bangladeshi proceedings. *See Mak Decl. ¶¶ 16-19*. Further, it is to be noted that based upon Jangha's own efforts to recover unpaid hire from Sea Quest (which arose from the same voyage and many of the same facts and circumstances as alleged herein), that it appears Sea Quest is no longer in business and thus will not, be pursuing a recovery from Thymus in Bangladesh. *See Lennon Decl. ¶ 5, Ex. 4.*

Jangha's efforts to obtain copies of court papers and a status of the Bangladeshi proceedings from Thymus have been largely unavailing. *See Lennon Decl. ¶ 6, Ex. 5*. It is respectfully submitted that Thymus' failure to produce such papers and a status of the Bangladeshi proceedings is due to the fact that there has been virtually no prosecution by Sea Quest of its alleged claims against Thymus which were used to support of Sea Quest's unlawful arrest of Thymus' vessel.

In the absence of any substantive efforts made by Sea Quest to recover from Thymus over the past three (3) years, this Court should find that (a) Thymus should have by now obtained, or at least sought, a dismissal of Sea Quest's claims commenced by way of an unlawful vessel arrest; (b) there is no basis upon which to find that Thymus will ever be required to pay, by way of settlement, judgment or otherwise, any sums to Sea Quest for which it could plausibly seek recovery against Jangha and (c) that Thymus' $454,576 indemnity claim, plus interest, costs and fees thereon, is, in any event, an improper predicate for Rule B maritime attachment.

As a result, Thymus' indemnity claim for the $400,000 bank guarantee, plus interest and costs thereon, should be vacated and the Ex Parte Order accordingly reduced, including the costs

3

for payment of the bank guarantee and the interest, fees and costs calculated thereon.

The parties have fully submitted their dispute to London arbitration the last brief being submitted by Thymus on April 26, 2006. *See Lennon Decl.* ¶¶ *8-10.* In this respect, it is to be noted that while Thymus has asserted a claim in the arbitration for unpaid hire and port expenses due and owing from Jangha under the parties' contract (such being a valid prima facie maritime claim for Rule B purposes), that Jangha has counterclaimed on the basis that the final accounting under the parties contract shows a balance due to it of $165,450.52[2]. Jangha reserves its rights herein to seek security on its counterclaim pursuant to Supplemental Rule E(7).

## ARGUMENT

### POINT I

### IT IS PLAINTIFF'S BURDEN TO PROVE WHY THE ATTACHMENT SHOULD NOT BE VACATED

A Plaintiff that has obtained and an Ex Parte Rule B attachment order shoulders the burden at the post-attachment hearing to prove *inter alia* that "it has a valid prima facie admiralty claim against the defendant." See Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd., 460 F.3d 434, 445 (2d Cir. 2006). Supplemental Admiralty Rule E(4)(f) of the Federal Rules of Civil Procedure provides:

> Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules.

In such cases, Local Admiralty and Maritime Rule E.1 provides:

---

[2] Jangha's principal claim ($165,450.52) plus using Thymus' 30% factor for calculation of interest, arbitration fees and attorney's costs ($49,351.16) equals $215,085.67.

4

The adversary proceeding following arrest or attachment or garnishment that is called for in Supplemental Rule E(4)(f)[3] shall be conducted by a judicial officer within three court days, unless otherwise ordered.

The Second Circuit Court of Appeals commented on Rule E(4)(f) in Aqua Stoli and explained the following standard:

> [A] district court must vacate an attachment if the plaintiff fails to sustain his burden of showing that he has satisfied the requirements of Rules B and E. ***We also believe vacatur is appropriate in other limited circumstances.*** While, as we have noted, the exact scope of a district court's vacatur power is not before us, we believe that a district court may vacate the attachment if the defendant shows at the Rule E hearing that 1) the defendant is subject to suit in a convenient adjacent jurisdiction; 2) the plaintiff could obtain in personam jurisdiction over the defendant in the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise. n5.
>
> n.5 Rule E(4)(f) clearly places the burden on the plaintiff to show that an attachment was properly ordered and complied with the requirements of Rule B and E. Although Rule E does not explicitly mention a district court's equitable power to vacate an attachment or who bears such a burden, former Local Rule 12 required the defendant to establish any equitable grounds for vacatur, and we believe that defendants still bear that burden under the Supplemental Rules.

Aqua Stoli, 460 F.3d at 445 (emphasis added).

It is thus Plaintiff's burden to prove that its attachment was properly issued. Here, Jangha is challenging only that aspect of Thymus' attachment which seeks security in the sum of $454,576 plus interest, costs and security thereon, on an indemnity basis. Jangha is not challenging that aspect of Thymus' attachment seeking security for allegedly unpaid hire and port expenses, plus interest, costs and fees.

Understood properly, the Court's role at a Rule E(4)(f) hearing is not to require that a plaintiff necessarily prove its claim, but it should be ensure that "… it is likely that alleged facts

---

[3] *See* Salazar v. The Atlantic Sun, 881 F.2d 73, 79 (3d Cir. 1989) and Linea Naviera de Cabotaje, C.A. v. Mar Caribe de Navigaciion, C.A., 169 F. Supp.2d 1341, 1357-59 (M.D. FL. 2001) which support a flexible approach for hearings conducted under Supplemental Rule E(4)(f).

5

are true." See Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd., 475 F. Supp. 2d 275, 280 (S.D.N.Y. 2006) citing North of England Protecting and Indem. Ass'n v. M/V Nara, 1999 U.S. Dist. LEXIS 22375, * (E.D. La. 1999). Thus, this Court should require that Thymus show it has reasonable grounds for its attachment including the indemnity claim.

For the reasons that are shown herein, Thymus attachment should be reduced since its claim for indemnity on the bank guarantee does not rest on reasonable grounds and it is not a valid prima facie maritime claim, falling short of Thymus' burden at the E(4)(f) hearing. Because the indemnity claim is also premature it should not be permitted to form the basis for security unless and until the underlying claims are settled, paid or otherwise resolved.

## POINT II

### PURSUANT TO SUPPLEMENTAL RULE E(6) THE COURT SHOULD REDUCE THE ATTACHMENT BY VACATING THE BANK GUARANTEE CLAIM

Supplemental Admiralty Rule E(6) provides that "Whenever security is taken the court may, on motion and hearing, for good cause shown, reduce the amount of security given...." See *Supp. R. E(6)*. This court "has power, pursuant to Supplemental Admiralty Rule E(6) to reduce the amount of the attachment when good cause is shown." See Sea Transp. Contractors, Ltd., 411 F. Supp. 2d at 396. See also Daeshin Shipping Co. Ltd. v. Meridian Bulk Carriers, Ltd., 2005 U.S. Dist. LEXIS 22409 (S.D.N.Y. 2005)

Recent authority from this Court confirms that absent *compelling circumstances* that where a claim has not actually accrued then it is not a valid prima facie maritime claim under Rule B and any attachment based on such a claim should be vacated. See Sonito Shipping Co. Ltd. v. Sun United Maritime Ltd., 2007 U.S. Dist. LEXIS 19531 (S.D.N.Y. 2007); J.K. Int'l Pty Ltd. v. Agriko S.A.S., 2007 U.S. Dist. LEXIS 10074 (S.D.N.Y. 2007); and Bottiglieri di

6

Navigazione SpA v. Tradeline LLC, 472 F. Supp. 2d 588 (S.D.N.Y. 2007).

Accrual of a cause of action is a mandatory prerequisite to show that a *prima facie* maritime claim exists for which Rule B security may be permitted. Because the Bangladeshi proceedings have not been resolved (much less advanced in the past three years), it is not possible for Thymus to show that it has anything beyond a naked premature indemnity claim against Jangha. Generally speaking, a plaintiff must wait until the underlying proceeding has been resolved *before* it can seek security for any type of indemnity claim under Rule B. *See* Sonito, 2007 U.S. Dist. LEXIS 19531 at * 19 (stating that this Circuit has not been receptive to c contingent indemnity claims as bases for maritime arrest or attachment) *citing* Greenwich Marine, Inc. v. S.S. Alexandra, 339 F.2d 901 (2d Cir. 1965) (vacating attachment based on indemnity claim as premature due to lack of judgment entered against charterer for alleged cargo damage).

In the Bottiglieri decision, relying on Greenwich Marine, Judge Kaplan held that until the underlying action is resolved, an indemnity action based thereon is premature and thus, Rule B is not an available remedy, noting that such discretion is extremely limited to circumstances where it is abundantly clear that the plaintiff's otherwise inchoate indemnity claim will imminently ripen (as in *Greenwich Marine* where the claim ripened within *hours* of the attachment). In essence, Judge Kaplan found that the indemnity claim would **remain unripe** until the Rule B plaintiff had actually been ordered to pay the underlying claimant for the asserted damages. Applying Judge Kaplan's reason as stated in Bottiglieri, until Thymus actually pays, or at least is ordered to pay, Sea Quest's claims, its indemnity claim for the bank guarantee, plus interests, costs and fees thereon, remains unripe and contingent.

Here, Thymus can show neither that the claims underlying its indemnity action have been resolved, nor any compelling circumstances[4] which would justify maintaining the attachment. In fact, as shown by Captain MAK's Declaration and the correspondence exchanged by the parties (*see Lennon Decl., ¶ 6, Ex. 5*), it is apparent that the underlying claims will likely never be resolved or at least not any time in the future. It is therefore indisputable that Thymus' claims, in this respect, are highly speculative and contingent and should not be afforded security under Rule B.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, this Court should find either that Thymus' indemnity claim for the $454,576 in bank guarantee/costs thereof, plus interest, costs and expenses thereon, is not a valid prima facie maritime claim, under Rule B, and/or that such indemnity claim is premature and contingent, thus insufficient for security under Rule B. In either case, Thymus, having failed its burden at the E(4)(f) hearing, this Court should partial vacate and reduce Thymus' attachment under Supplemental Rule E(6) to a reasonable amount[5] to secure only the extent of Plaintiff's claim for unpaid hire and port expenses, plus interest, costs and fees thereon.

---

[4] In *J.K. Int'l. Pty, Ltd.*, 2007 U.S. Dist. LEXIS 10074 (S.D.N.Y. 2007), which supports the partial vacatur of the attachment here, Judge Karas recognized that absent some compelling equities, a premature attachment claim should be dismissed. *Id.* at *14. It is submitted that there are no compelling equities in Thymus favor.

[5] Plaintiff's principal claim of 154,270.21 in allegedly unpaid hire and port expenses plus an apparent 30% factor for calculation of interest, arbitration fees and attorney's costs ($46,281.21) equals $200,051.92.

Dated: April 2, 2008
New York, NY

                        Respectfully submitted,

                        The Defendant,
                        JANGHA MARINE CORP.

By: _____
                        Kevin J. Lennon
                        LENNON MURPHY & LENNON, LLC
                        The GrayBar Building
                        420 Lexington Ave., Suite 300
                        New York, NY 10170
                        (212) 490-6050 (phone)
                        (212) 490-6070 (fax)
                        kjl@lenmur.com