LENNON, MURPHY & LENNON, LLC
Attorneys for Defendant
JANGHA MARINE CORP.
The Graybar Building
420 Lexington Avenue, Suite 300
New York, NY 10170
(212) 490-6050 - phone
(212) 490-6070 - facsimile

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
THYMUS SHIPPING CORP.,                        :        07 CV 10522 (LLS)
                                              :
                    Plaintiff,                :        ECF CASE
                                              :
        - against -                           :
                                              :
JANGHA MARINE CORP.,                          :
                                              :
                    Defendant.                :
--------------------------------------------------------X

## DECLARATION IN SUPPORT
## OF MOTION TO REDUCE MARITIME ATTACHMENT

State of Connecticut  )
                      )        ss:  Town of Southport
County of Fairfield   )

        Kevin J. Lennon, being duly sworn, deposes and says:

        1.      I am a member of the Bar of this Court and represent the Defendant herein. I am

familiar with the facts of this case and make this Affidavit in support of Defendant's motion

seeking to vacate, or alternatively reduce, Plaintiff's maritime attachment.

        2.      Attached hereto as Exhibit 1 is a copy of the Plaintiff's Verified Complaint dated

November 21, 2007 filed in support of its application for issuance of a maritime attachment.

        3.      Attached hereto as Exhibit 2 is a copy of the Court's Ex Parte Order dated

November 21, 2007 authorizing restraint of Defendant's funds.

4.    Attached hereto as Exhibit 3 is a copy of bank guarantee dated April 23, 2005 issued by Sonali Bank to the Registrar for the Bangladeshi Supreme Court.

5.    Attached hereto as Exhibit 4 is a copy of Jangha's papers filed in support of a Default Judgment against Sea Quest Shipping Pte. Ltd. demonstrating that Sea Quest failed to defend against Jangha's claims arising from the relevant sub charter party fixture.

6.    Attached hereto as Exhibit 5 are copies of correspondence exchanged by counsel between January 2, 2008 and February 13, 2008. Such correspondence shows that Thymus failed to produce copies of any papers filed in the Bangladeshi proceedings or advise Jangha regarding the status of such proceedings.

7.    Attached hereto as Exhibit 6 is a copy of a SWIFT message dated issued by the Mashreq Bank to Sonali Bank dated April 18, 2007 purporting to extend the bank guarantee attached as Exhibit 3.

8.    Attached hereto as Exhibit 7 is a copy of Thymus' Submission of Claim dated September 9, 2005 filed in the London arbitration.

9.    Attached hereto as Exhibit 8 is a copy of Jangha's Defence and Counterclaim dated January 19, 2006 filed in the London arbitration.

10.    Attached hereto as Exhibit 9 is a copy of Thymus' Reply and Defence to Counterclaim dated April 26, 2006 filed in the London arbitration.

Dated: April 2, 2008
      Southport, CT

Kevin J. Lennon

Sworn and subscribed to before me
this 2nd day of April, 2008

NOTARY PUBLIC

# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**JUDGE STANTON**

-------------------------------------------x

THYMUS SHIPPING CORP.,

               Plaintiff,



**07 CV 10522**

      -against-

VERIFIED COMPLAINT

JANGHA MARINE CORP.,

           Defendant.

NOV 2 1 2007

U.S.D.C. S.D. N.Y.
CASHIERS

-------------------------------------------x

     Plaintiff, THYMUS SHIPPING CORP. (hereinafter referred to as "Plaintiff"), by and through its attorneys, Cardillo & Corbett, as and for its Verified Complaint against the Defendant JANGHA MARINE CORP. (hereinafter referred to as "Defendant") alleges, upon information and belief, as follows:

     1.    This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 United States Code § 1333.

     2.    At all times material to this action, Plaintiff was, and still is, a foreign company duly organized and existing under the laws of Liberia with an address at 80 Broad Street, Monrovia, Liberia.

     3.    Plaintiff is and was, at all material times, the registered owner of the M/V REGAL STAR (the "Vessel").

     4.    Upon information and belief, Defendant was, and still is, a foreign corporation, or other business entity, organized under, and existing by virtue of foreign law, with an

address at RM 703 Hanaro Bldg No. 194-4 Insa-Dong, Chongro-Ku, Seoul 110-794, Korea, and was at all material times the charterer of the Vessel.

5.    Plaintiff and Defendant entered into a time charter party dated December 1, 2004, pursuant to which Plaintiff let and Defendant hired the Vessel (the "Charter Party").

6.    Under the terms of the Charter Party, it was the duty of Defendant as charterer of the Vessel to pay hire in U.S. dollars at the rate of $12,500 per day commencing from the time of delivery of the Vessel under the Charter Party until the date of her redelivery.

7.    The Vessel was delivered to Defendant on December 27, 2004, and was redelivered to Plaintiff on April 26, 2005.

8.    During the period of the Charter Party, Defendant apparently entered into a voyage charter of the Vessel with a third party sub-charterer.

9.    Prior to the Vessel's redelivery, the Vessel was arrested in Bangladesh as security for claims brought by the sub-charterer against the Defendant for cancellation of the voyage charter between them.

10.    In order to release the Vessel from arrest, Plaintiff was required to retain lawyers in Bangladesh and post

2

security in the form of a bank guarantee in the amount of
$400,000. An action is currently pending in Bangladesh which
Plaintiff has had to defend.

11.  While the Vessel was under arrest in Bangladesh,
Defendant wrongfully and in breach of the Charter Party
withheld hire and port costs in connection with the arrest, and
also redelivered the Vessel there in breach of the Charter
Party, for which Plaintiff sustained damages and losses.

12.  Defendant has failed to pay the balance of hire
due and port costs in the amount of $154,270.71.

13.  Plaintiff protested Defendant's wrongful refusal
to pay the full charter hire and port costs, demanded that it
do so and continued to demand payment up until the present
time, but none of it was paid.

14.  The Charter Party provides that any disputes
arising under the Charter Party shall be referred to
arbitration in London under English law.

15.  Plaintiff has commenced arbitration in London
against Defendant, and Plaintiff's claims are now the subject
of that arbitration.

16.  Interest, costs and attorneys' fees are
routinely awarded to the prevailing party by arbitrators in
London pursuant to English law.  As best as can now be

3

estimated, the following amounts can be expected to be

recovered in the action from Defendant:

A. Payment of hire and port costs:          $154,270.71

B. Payment of security for the
claim pending in Bangladesh
(effectively counter-security for
Plaintiff's bank guarantee):                $400,000.00

C. Payment of costs of the bank
guarantee (which will increase
over time):                                  $54,576.00

D. Interest, arbitration fees
and attorneys' fees:                        $182,654.02

                      Total:                $791,500.73


## DEFENDANT NOT FOUND WITHIN THE DISTRICT

17.    The Defendant cannot be found within this

District within the meaning of Rule B of the Supplemental Rules

for Certain Admiralty and Maritime Claims of the Federal Rules

of Civil Procedure, but, upon information and belief, Defendant

has, or will have during the pendency of this action, property

within this District and subject to the jurisdiction of this

Court, held in the hands of garnishees including, but not

limited to, ABN Amro Bank NV, American Express Bank, Bank of

America, Bank of Communications Co. Ltd. New York Branch, Bank

of New York, Barclays Bank, BNP Paribas, Citibank, Deutsche

Bank, HSBC (USA) Bank, J.P. Morgan Chase, Standard Chartered

4

Bank, UBS AG and/or Wachovia Bank, which are believed to be due
and owing to the Defendant.

18.    The Plaintiff seeks an order from this court
directing the Clerk of Court to issue Process of Maritime
Attachment and Garnishment pursuant to Rule B of the
Supplemental Rules for Certain Admiralty and Maritime Claims
and also pursuant to the United States Arbitration Act, 9
U.S.C. §§ 1 and 8, attaching, *inter alia,* any property of the
Defendant held by the aforesaid garnishees for the purpose of
obtaining personal jurisdiction over the Defendant, and to
secure Plaintiff's claim as described above.

**WHEREFORE,** Plaintiff prays:

A.    That process in due form of law issue against
the Defendant, citing it to appear and answer under oath all
and singular the matters alleged in the Complaint;

B.    That since the Defendant cannot be found within
this District pursuant to Rule B of the Supplemental Rules for
Certain Admiralty and Maritime Claims, this Court issue an
Order directing the Clerk of Court to issue Process of Maritime
Attachment and Garnishment pursuant to Rule B of the
Supplemental Rules for Certain Admiralty and Maritime Claims
and also pursuant to the United States Arbitration Act, 9
U.S.C. §§ 1 and 8, attaching all tangible or intangible
property in whatever form or any other funds held by any
garnishee, including, but not limited to, ABN Amro Bank NV,

5

American Express Bank, Bank of America, Bank of Communications Co. Ltd. New York Branch, Bank of New York, Barclays Bank, BNP Paribas, Citibank, Deutsche Bank, HSBC (USA) Bank, J.P. Morgan Chase, Standard Chartered Bank, UBS AG and/or Wachovia Bank, which are due and owing to the Defendant, in the amount of $791,500.73 to secure the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

      C.    That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof; and

      D.    That the Plaintiff has such other, further and different relief as the Court may deem just and proper.

Dated:    New York, New York
           November 21, 2007

                    CARDILLO & CORBETT
                    Attorneys for Plaintiff
                    THYMUS SHIPPING CORP.

              By: _____
                  James P. Rau (JR 7209)

                  Office and P.O. Address
                  29 Broadway, Suite 1710
                  New York, New York 10006
                  Tel: (212) 344-0464
                  Fax: (212) 797-1212

## ATTORNEY'S VERIFICATION

State of New York }
                } ss.:
County of New York)

    1.    My name is James P. Rau.

    2.    I am over 18 years of age, of sound mind, capable of making this Verification, and fully competent to testify to all matters stated herein.

    3.    I am a partner in the firm of Cardillo & Corbett, attorneys for the Plaintiff.

    4.    I have read the foregoing Verified Complaint and know the contents thereof and believe the same to be true and accurate to the best of my knowledge, information and belief.

    5.    The reason why this Verification is being made by the deponent and not by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now within this District.

    6.    The source of my knowledge and the grounds for my belief are the statements made, and the documents and information received from, the Plaintiff and agents and/or representatives of the Plaintiff.

    7.    I am authorized to make this Verification on

7

behalf of the Plaintiff.

_____
James P. Rau

Sworn to before me this
21st day of November, 2007

_____
NOTARY PUBLIC

TULIO R. PRIETO
Notary Public, State of New York
No. 02PR6070811
Qualified in Richmond County
Certificate Filed in New York County
Commission Expires February 19, 2010

8

# EXHIBIT 2

1312

STANTON, J.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------- ------ -------x
THYMUS SHIPPING CORP.,                    :
                                          :    ECF
                          Plaintiff,      :    ORDER FOR PROCESS
                                          :    OF MARITIME ATTACHMENT
                -against-                 :    07 Civ. 10522 (LLS)
                                          :
JINGHE MARINE CORP.,                      :
                                          :
                          Defendant.      :
---------------------------- --------x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1.26.07

WHEREAS, on November 21, 2007, Plaintiff, THYMUS

SHIPPING CORP., filed a Verified Complaint herein for damages

amounting to $791,500.73 inclusive of interest and praying for

the issuance of Process of Maritime Attachment and Garnishment

pursuant to Rule B of the Supplemental Rules for Certain

Admiralty and Maritime Claims of the Federal Rules and Civil

Procedure; and

WHEREAS, the Process of Maritime Attachment and

Garnishment would command that the United States Marshal or

other designated process server attach any and all of the

Defendant's property within the District of this Court; and

WHEREAS, the Court has reviewed the Verified

Complaint and the Supporting Affidavit, and the conditions of

Supplemental Rule B appearing to exist, it is hereby

ORDERED, that Process of Maritime Attachment and

Garnishment shall issue against all tangible or intangible

property belonging to, claimed by or being held for the

Defendant by any garnishees within this District, including but

not limited to, ABN Amro Bank NV, American Express Bank, Bank of America, Bank of Communications Co. Ltd. New York Branch, Bank of New York, Barclays Bank, BNP Paribas, Citibank, Deutsche Bank, HSBC (USA) Bank, J.P. Morgan Chase, Standard Chartered Bank, UBS AG and/or Wachovia Bank, in an amount up to and including $791,500.73, pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure; and it is further

ORDERED that any person claiming an interest in the property attached or garnished pursuant to said order shall, upon application to the Court, be entitled to a prompt hearing at which the Plaintiff shall be required to show cause why the attachment and garnishment should not be vacated or other relief granted; and it is further

ORDERED that supplemental process enforcing the Court's Order may be issued by the Clerk upon application without further Order of the Court; and it is further

ORDERED that following initial service by the United States Marshal or other designated process server upon each garnishee, that supplemental service of the Process of Maritime Attachment and Garnishment, as well as this Order, may be made by way of facsimile transmission to each garnishee provided the garnishee agrees to accept service in this manner; and it is further

2

ORDERED that service on any garnishee as described above is deemed effective continuous service throughout the day from the time of such service through the opening of the garnishee's business the next business day provided the garnishee agrees to same; and it is further

ORDERED that pursuant to Federal Rule of Civil Procedure 5(b)(2)(D) each garnishee may consent, in writing, to accept service by any other means; and it is further

ORDERED that a copy of this Order be attached to and served with said Process of Maritime Attachment and Garnishment.

Dated: New York, New York
    November **21**, 2007

SO ORDERED:

_Louis L. Stanton_
U.S.D.J.

4 20 P. M.

3

# EXHIBIT 3



ঌ ৪৪৩৩৩৪৪

**SONALI BANK**
**FOREIGN EXCHANGE DEPARTMENT**
**REMITTANCE SECTION**
**LOCAL OFFICE, DHAKA.**

NO.LO/RMT/GUR-31/2005
DATED: 23.04.05

TO,
THE REGISTRAR
SUPREME COURT OF BANGLADESH
DHAKA.

<u>CAUTION TO ACCEPTOR</u>

BEFORE ACTING THE GUARANTEE PLEASE GET THE
GENUINENESS OF THE SAME CONFIRMED FROM THE
ISSUANCE BRANCH OF THE BANK, OTHERWISE THE
BANK SHALL NOT BE LIABLE FOR ANY LOSS CAUSED
DUE TO MISUSE.

SUB: OUR GUARANTEE NO.31/2005 DT. 23.04.05 FOR USD. 4,00,000/= (US$ FOUR
HUNDRED THOUSAND) ONLY FVG. YOURSELVES A/C. M/S. THYMUS SHIPPING
CORPORATION OWNER OF THE VESSEL M.V. REGAL STAR IN RESPECT OF ADMIRALTY
SUIT NO.4 OF 2005.

DEAR SIR,

AT THE REQUEST OF OUR FOREIGN CORRESPONDENT MASHREQ BANK PSC, DUBAI, U.A.E. WE
ISSUE OUR GUARANTEE AS FOLLOWS :-

HEREAS THE PLAINTIFF, SEA QUEST SHIPPING PTE LTD., SINGAPORE HAS FILED THE ABOVE-
NOTED SUIT IN THIS HON'BLE HIGH COURT DIVISION UNDER ADMIRALTY JURISDICTION AGAINST M.V.
REGAL STAR NOW BERTHED AT MONGLA PORT AND OTHERS AS DEFENDANTS ON 31.03.2005 FOR A
DECREE FOR AN AMOUNT OF USD 1,000,716.00. AND WHEREAS THE HON'BLE HIGH COURT DIVISION
UNDER ADMIRALTY JURISDICTION ON 31.03.2005 WAS PLEASED TO ORDER IN THE ABOVE SUIT FOR
ARREST OF M.V. REGAL STAR AND DETENTION OF THE SAME UNLESS SUFFICIENT AND PROPER
SECURITY IS FURNISHED BY OR ON BEHALF OF THE VESSEL, AND WHEREAS THE OWNERS OF THE
VESSEL M.V. REGAL STAR, THYMUS SHIPPING CORPORATION, LIBERIA FILED WRITTEN OBJECTIONS
AGAINST THE PLAINTIFF'S APPLICATION FOR ARREST OF THE VESSEL AND APPLICTION FOR REDUCTION
OF THE BANK GUARANTEE AMOUNT FOR RELEASE OF THE VESSEL M.V. REGAL STAR FROM ARREST ON
BEHALF OF THE DEFENDANT NOS.1 AND 2.

AND WHEREAS UPON HEARING OF THE APPLICATION FOR REDUCTION OF THE BANK GUARANTEE
AMOUNT THE HON'BLE HIGH COURT DIVISION BY ORDER DATED 18.04.2005 WAS PLEASED TO REDUCE
THE AMOUNT OF BANK GUARANTEE TO USD 400,000.00 (UNITED STATES DOLLARS FOUR HUNDRED
THOUSAND ONLY) FOR RELEASE OF THE VESSEL M.V. REGAL STAR, AND WHEREAS WITHOUT
PREJUDICE TO ALL DEFENCES AVAILABLE TO M.V. REGAL STAR AND HER OWNERS, THYMUS SHIPPING
CORPORATION AND THEIR RIGHTS TO FILE AND RAISE ALL LEGAL AND FACTUAL OBJECTIONS TO THE
CLAIM OF THE PLAINTIFF IN THE SUIT AS WELL AS APPLICATION FOR ARREST OF THE VESSEL AND ALSO
THE PROVISIONS OF SECURITY AND TO MINIMISE FURTHER LOSSES, THE OWNERS OF THE VESSEL M.V.
REGAL STAR, THYMUS SHIPPING CORPORATION AGREE TO FURNISH SECURITY BY WAY OF BANK
GUARANTEE IN THIS HON'BLE COURT FOR USD400,000.00 (UNITED STATES DOLLARS FOUR HUNDRED
THOUSAND) ONLY FOR RELEASE OF THE VESSEL M.V. REGAL STAR FROM ARREST IN THE ABOVE SUIT.

NOW, THEREFORE, THE GUARANTOR BANK STANDS SURETY FOR THE VESSEL M.V. REGAL STAR
AND HER OWNERS, THYMUS SHIPPING CORPORATION AND UNDERTAKES TO DEPOSIT IN THIS HON'BLE
COURT A SUM OF USD400,000.00 (UNITED STATES DOLLARS FOUR HUNDRED THOUSAND) ONLY OR

CONTD.....P/2



ए  ৫০১১৪৮২

PAGE NO-2

LESSER AMOUNT WHENEVER CALLED UPON TO DO SO BY THIS HON'BLE COURT IN THE EVENT A DECREE IS PASSED AGAINST THE VESSEL M.V. REGAL STAR AND HER OWNERS, THYMUS SHIPPING CORPORATION OR THE CLAIM IS SETTLED AMICABLY BETWEEN THE PLAINTIFF AND THE VESSEL'S INTERESTS.

IN WITNESS WHEREOF WE, SONALI BANK, LOCAL OFFICE, DHAKA AS THE GUARANTOR BANK DO HEREBY EXECUTE THIS BANK GUARANTEE ON THIS THE 23RD DAY OF APRIL, 2005 WHICH IS TO REMAIN IN FORCE TILL THE SAID ADMIRALTY SUIT AND OTHER PROCEEDINGS IN CONNECTION THEREWITH IS DISPOSED OF OR FOR TWELVE (12) MONTHS FROM THE DATE HEREOF WHICHEVER DATE IS EARLIER BUT NOT BEYOND 23.04.2006 AND IS EXTENDABLE FOR FURTHER POERIOD OR POERIODS AS PER ORDER OF THE COURT IF THE SAID ADMIRALTY SUIT AND OTHER PROCEEDINGS IN CONNECTION THEREWITH IS NOT DISPOSED OF BEFORE 23RD DAY OF APRIL, 2006. NOTWITHSTANDING ANYTHING CONTAINED HEREINBEFORE, OUR LIABILITY UNDER THIS GUARANTEE IS RESTRICTED TO USD400,100.00 (UNITED STATES DOLLARS FOUR HUNDRED THOUSAND ONLY) AND SHALL REMAIN IN FORCE UNTIL THE ADMIRALTY SUIT AND OTHER PROCEEDINGS IN CONNECTION THEREWITH IS DISPOSED OF OR FOR TWELVE (12) MONTHS FROM THE DATE HEREOF WHICHEVER DATE IS EARLIER BUT NOT BEYOND 23.04.2006 AND IS EXTENDABLE FOR FURTHER POERIOD OR PERIODS AS PER ORDER OF THE COURT IF THE ADMIRALTY SUIT AND OTHER PROCEEDINGS IN CONNECTION THEREWITH IS NOT DISPOSED OF "BEFORE 23RD DAY OF APORIL, 2006. IN CASE THIS IS NOT DONE BY THE DEFENDANT, THE BANK SHALL PLACE THE GUARANTEED AMOUNT IN FAVOUR OF THE BENEFICIARY WITHIN 45(FORTYFIVE) DAYS FROM THE DATE OF EXPIRY.

UNLESS THE CLAIM IN WRITING IS PRESENTED TO US WITHIN NINETY (90) DAYS OF THE DISPOSAL OF THE ADMIRALTY SUIT AND OTHER PROCEEDINGS IN CONNECTION THEREWITH ALL RIGHTS UNDER THIS BANK GUARANTEE SHALL BE FORFEITED AND WE SHALL BE RELEASED AND DISCHARGED FROM ALL LIABILITIES THEREUNDER, WHETHER OR NOT THIS BANK GUARANTEE IS SURRENDERED OR RETURNED TO US.

FURTHER THIS BANK GUARANTEE SHALL BE CANCELLED AUTOMATICALLY AFTER EXPIRY OF NINETY (90) DAYS OF RECEIPT BY US A CERTIFIED TRUE COPY OF THE ORDER OF COURT PURSUANT TO THE ADMIRALTY SUIT AND OTHER PROCEEDINGS IN CONNECTION THEREWITH.

YOURS FAITHFULLY.

AUTHORISED SIGNATURE
Md. Rafiqul Islam Khan
Signature No. 1525

AUTHORISED SIGNATURE
ABDU/EADI
Sr. Frincipal Officer
SONALI BANK
P.A. No. 1078

# EXHIBIT 4

$Core, J$

TISDALE & LENNON, LLC
11 West 42nd Street, Suite 900
New York, NY 10036
Tel: (212) 354-0025
Fax: (212) 869-0067
Attorneys for Plaintiff

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:    8/22/05

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

JANG HA MARINE CORP.,                :        05 CV 4264 (DLC) (RLE)

      Plaintiff,                      :        ECF CASE

    - against -                           :

SEA QUEST SHIPPING PTE. LTD. AND/OR   :
CONNECT.WELL (S) PL AND/OR ELBE
BRIDGE LTD. and WEST BENGAL           :
ESSENTIAL COMMODITIES SUPPLY
CORPORATION LIMITED,                  :

      Defendants.                     :

-------------------------------------------------------------X

## ORDER TO SHOW CAUSE

Upon the Memorandum of Law in Support of Motion for Default and upon the Affidavit

of Kevin J. Lennon in Support of Motion for Default, and upon all prior proceedings herein it is

hereby:

**ORDERED** that the Defendant Sea Quest Shipping Pte. Ltd., appear before the Hon.

Denise Cote, in Courtroom 11B of the Daniel Patrick Moynihan United States Courthouse, 500

Pearl Street, New York, New York at _____noon_____ on _S, t_ , _15_, 2006 or as soon

thereafter as counsel may be heard, why an order should not be entered:

    (1)    Confirming the Interim Final Arbitration award rendered in Plaintiff's favor

pursuant to the New York Convention on the Recognition and Enforcement of Foreign Arbitral

Awards and the enacting legislation codified at 9 U.S.C. §201 *et seq.*;

(2)    Pursuant to Rule 55.2(b) of the Civil Rules for Southern District of New York,

Rule 55 of the Federal Rules of Civil Procedure granting a default judgment against Defendant in

the amount of **$281,569.64**; and

(2)    Granting Plaintiff such other and further relief as to this Court may deem just and

proper.

*overnight*

Service of this order and the papers upon which it was granted shall be made by mail to

the Defendant at its last known addresses on or before 5 p.m. on *August* , *25*, 2006.

Service shall also be made by e-mail to Defendant at its last known e-mail address on or before

5 p.m. on *August* , *25*, 2006. ~~If service by mail or by e-mail fail Plaintiff shall serve the Defendant in person at its last known address on or before _____ m on _____, ___ 2006.~~

Any papers in opposition to Plaintiff's motion shall be filed and served by courier on

counsel for Plaintiff by 5 p.m. on *Sept* , *11*, 2006.

Dated: August 22, 2006
    New York, NY

_____
U.S.D.J.

2

TISDALE & LENNON, LLC
11 West 42nd Street, Suite 900
New York, NY 10036
Tel: (212) 354-0025
Fax: (212) 869-0067
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

JANG HA MARINE CORP.,                                      :        05 CV 4264 (DLC) (RLE)

        Plaintiff,                                          :        ECF CASE

    - against -                                              :

SEA QUEST SHIPPING PTE. LTD. AND/OR           :
CONNECT.WELL (S) PL AND/OR ELBE
BRIDGE LTD. and WEST BENGAL                       :
ESSENTIAL COMMODITIES SUPPLY
CORPORATION LIMITED,                                     :

       Defendants.                                        :
-----------------------------------------------------------------X

## MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT

Pursuant to Local Rule 7.1 of the Local Rules for the U.S. District Courts for the

Southern and Eastern Districts of New York, Plaintiff, Jang Ha Marine Corp. (hereafter "Jang Ha"

or "Plaintiff") hereby submits its Memorandum of Law in support of its motion for default

judgment.

Pursuant to Rule 55 of the Federal Rules of Civil Procedure and Local Rule 55.2 of the

Local Rules for the U.S. District Courts for the Southern and Eastern Districts of New York

Plaintiff is moving for default judgment against the Defendant, Sea Quest Shipping Pte. Ltd. for

its failure to appear and defend against this action.

Plaintiff commenced this action on April 29, 2005 seeking to enforce claims arising from a breach of maritime contract subject to London arbitration. *See* Plaintiff's Verified Complaint attached within Exhibit 1 to the Affidavit of Kevin J. Lennon in Support of Motion for Default Judgment (hereafter referred to as "Lennon Aff.").

A London arbitration award was subsequently awarded in Plaintiff's favor against Sea Quest. *See* Lennon Aff., Exhibit 6. Following issuance of the London arbitration award, on October 17, 2005 the Plaintiff filed a Petition for Recognition and Enforcement of the London Arbitration Award (hereafter "Petition for Recognition") pursuant to the Convention on Recognition and Enforcement of Foreign Arbitral Awards, 9 United States Code section 201 *et seq.* *See* Lennon Aff., Ex. 1. Plaintiff contemporaneously filed a supporting Affidavit and Memorandum of Law. *See* Lennon Aff., Ex. 1

Plaintiff sought to serve Sea Quest with the Petition for Recognition and Enforcement through international registered mail via the Clerk of Court. However, that attempt was unsuccessful as the registered mail was unaccepted in Singapore where Sea Quest resides. *See* Lennon Aff., Ex. 7.

Thereafter, Plaintiff served Sea Quest with process in conformity with Singaporean law and in accordance with the Rule 4(f) of the Federal Rules of Civil Procedure. Service on Defendant was made on June 19, 2006 at 4:30 p.m. *See* Lennon Aff., Ex. 8..

Rule 55(b)(1) of the Federal Rules of Civil Procedure directs that the court may enter default judgment when the affirmative relief sought is a calculable sum certain. See New York v. Green, 2005 U.S. App. Dist. LEXIS 17527, *7-8 (2d Cir. 2005). As set forth in Plaintiff's Petition for Recognition, Plaintiff seeks to enforce a Final Award rendered by a London arbitration panel dated August 16, 2005. *See* Lennon Aff., Ex. 6. The sum awarded to plaintiff

2

in the Final Award, together with post-award interest and costs, sough to be entered as a default judgment against Sea Quest herein is $281,569.64. *See* Lennon Aff., Ex. 5.

Plaintiff does not seeking affirmative relief against an infant, an incompetent person, an individual in the military service or the United States.

Service was properly made on the Defendant Sea Quest on June 19, 2006. Sea Quest has not appeared, filed an Answer, or filed any other responsive pleading, within 20 days after service as is required by Rule 12 of the Federal Rules of Civil Procedure. Plaintiff further notes that Sea Quest has had notice of this action since September 6, 2005 by way of Plaintiff's notice of attachment. *See* Lennon Aff., Ex. 4.

On August 17, 2006 the Plaintiff filed a request that the Clerk of Court enter default against Defendant, Sea Quest, for its failure to answer. The Clerk has not yet noted entry of Sea Quest's default. Plaintiff is filing its motion default judgment without the certificate of default as it is obligated to file any motion for default judgment not later than August 23, 2005 by reason of the Court's Order dated August 18, 2005. Plaintiff will submit a copy of the Clerk's certificate of default once the same has been received from the Clerk.

Plaintiff's damages are liquidated as proven by the sworn Affidavit of Kevin J. Lennon.

Plaintiff is <u>not</u> providing advance notice of this application because the Defendant has not appeared, formally or informally, in this action and has never communicated any "clear intention to defend" against this action.. See <u>New York v. Green</u>, *supra* at *14 (citations omitted).

For all of the foregoing reasons, Plaintiff prays that the court grant default judgment in favor of Plaintiff and against the Defendant, Sea Quest Shipping Pte. Ltd. in the sum of $281,569.64.

Plaintiff reserves the right to request a supplemental judgment to allow for imposition of continuing post-award interest and/or to recover any forthcoming Award of Costs granted in its favor by the London arbitration panel.

Dated: August 22, 2006
New York, NY

The Plaintiff,
JANG HA MARINE CORP.

By:

Kevin J. Lennon (KL 5072)
Tisdale & Lennon, LLC
11 West 42nd Street, Suite 900
New York, NY 10036
(212) 354-0025 - phone

4

## AFFIRMATION OF SERVICE

Lauren C. Davies, an attorney duly admitted to practice before this Honorable Court,

affirms as follows: On August 23, 2006, pursuant to Judge Cote's Order of August 22, 2006, I

served a copy of the foregoing MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR

DEFAULT JUDGMENT via overnight mail upon the following:

Sea Quest Shipping Pte. Ltd.
30 Cecil Street, #15-00 Prudential Tower
Singapore 049712

LAUREN C. DAVIES

TISDALE & LENNON, LLC
11 West 42nd Street, Suite 900
New York, NY 10036
Tel:  (212) 354-0025
Fax:  (212) 869-0067
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

JANG HA MARINE CORP.,                          :        05 CV 4264 (DLC) (RLE)

          Plaintiff,                              :        ECF CASE

    - against -                                      :

SEA QUEST SHIPPING PTE. LTD. AND/OR            :
CONNECT.WELL (S) PL AND/OR ELBE
BRIDGE LTD. and WEST BENGAL                    :
ESSENTIAL COMMODITIES SUPPLY
CORPORATION LIMITED,                           :

        Defendants.                             :
-------------------------------------------------------------X

## AFFIDAVIT OF KEVIN J. LENNON
## IN SUPPORT OF MOTION FOR JUDGMENT BY DEFAULT

STATE OF CONNECTICUT)
                ) .    ss:    SOUTHPORT
COUNTY OF FAIRFIELD    )

    KEVIN J. LENNON, being duly sworn, deposes and says:

    1.    I am a member of the Bar of this Court and am a partner in the firm of Tisdale &

Lennon, LLC, attorneys for the Plaintiff, JANG HA MARINE CORP. (hereinafter referred to as

"Jang Ha" or "Plaintiff"), in the above-entitled action and I am familiar with all the facts and

circumstances of this action.

    2.    I make this affidavit pursuant to Rule 55.1 and 55.2(a) of the Local Rules for the

U.S. District Courts for the Southern and Eastern Districts of New York.

3.    Plaintiff requests that this Court grant its Motion for Default Judgment against
Defendant SEA QUEST SHIPPING PTE. LTD. (hereinafter referred to as "Sea Quest" or
"Defendant") as it has been given due and proper notice of all proceedings against it yet has failed
to appear and defend in this action.

4.    This is an action to enforce a London arbitration award based upon a breach of
maritime contract.

5.    This action was commenced on April 29, 2005, by the filing of a Verified
Complaint which included a prayer for an Ex Parte Order for Process of Maritime Attachment
pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims and
the Federal Arbitration Act, 9 U.S.C. §§ 1 and 8. *See* copy of Verified Complaint annexed
hereto within Exhibit 1.

6.    On April 29, 2005, the Court issued an Ex Parte Order of Maritime Attachment
and Garnishment. The Ex Parte Order authorized the Plaintiff to attach Defendant's property up
to the sum of $1,403,475.60, located within this judicial district and belonging to the Defendant.
*See* copy of Ex Parte Order annexed hereto within Exhibit 1.

7.    The Ex Parte Order and Process of Maritime Attachment and Garnishment
(hereafter "PMAG") named garnishee banks believed to have assets due and owing to the
Defendant. The Ex Parte Order and PMAG were served upon the banks and continue to be
served on the banks in an effort to obtain security for Plaintiff's claim.

8.    Prior to the commencement of this action, on March 11, 2005, a separate action
was commenced in the U.S. District Court for the Southern District of New York by Parkroad
Corporation against Sea Quest Shipping Pte Ltd. under docket number 05 CV 2793. On March
11, 2005, this Court issued an Ex Parte Order of Maritime Attachment and Garnishment and

2

PMAG that authorized Parkroad Corporation to attach Sea Quest's property up to the sum of $947,500. *See* Ex Parte Order dated March 11, 2005 annexed hereto as Exhibit 2.

9. On March 28, 2005, the Bank of New York confirmed that it had restrained $29,975.00 of Sea Quest's funds in response to the March 11, 2005 Ex Parte Order and PMAG. On March 29, 2005 Bank of New York confirmed that it had restrained an additional $2,475.00 of Sea Quest's funds pursuant to the March 11, 2005 Ex Parte Order and PMAG.

10. On March 28, 2005, Standard Chartered Bank confirmed that it had restrained $19,980.00 of Sea Quest's funds pursuant to the March 11, 2005 Ex Parte Order and PMAG.

11. Subsequently, and pursuant to a settlement agreement, Parkroad Corporation voluntarily discontinued without prejudice pursuant to Fed. R. Civ. P. 41(a)(1) its action against Sea Quest Shipping Pte. Ltd. Corporation. *See* Notice of Voluntary Discontinuance annexed within Exhibit 3. That action was dismissed by the Court on June 21, 2005. *See* 'So Ordered' Letter dated June 18, 2005 annexed within Exhibit 3.

12. The Sea Quest funds attached by Parkroad Corporation have been attached by Jang Ha Marine in this action pursuant to service of the Ex Parte Order and PMAG on the garnishee banks. Those funds continue to be held by the respective garnishee banks.

13. Notice of the attached funds in the total amount of $52,430.00 was served upon the Defendant on September 6, 2005 via facsimile and email. Previous attempts to serve the defendant notice pursuant to Local Admiralty Rule B.2 were unsuccessful. *See* Letter of Notice to the Defendant annexed hereto as Exhibit 4.

14. On August 16, 2005, a final London arbitration award was rendered in Jang Ha's favor. The London arbitrators awarded Jang Ha $258,794.73 for the principal claim, together with interest at the rate of 5.25% per annum compounded quarterly from April 5, 2005 until the

3

date of payment. The London arbitrators also awarded Jang Ha arbitration costs equaling $3,445.41, together with interest at the rate of 7.25% per annum compounded quarterly from the date of the arbitration award until the date of payment. After calculating the costs and interest, the full amount that Jang Ha is entitled to recover from Sea Quest, not including any future. Award of Costs in Jang Ha's favor, under the final arbitration award is $281,569.64. *See* Statement of Damages annexed hereto as Exhibit 5 and Interim Final Arbitration Award annexed hereto as Exhibit 6.

15.    On October 17, 2005, Jang Ha petitioned this Court for the Recognition, Confirmation and Enforcement of the Final Arbitration Award dated August 16, 2005 that was made in its favor and against Sea Quest. *See* Petition for Recognition annexed hereto within Exhibit 4.

16.    Plaintiff sought to serve Sea Quest with process of the Petition for Recognition and Enforcement through international registered mail via the Clerk of Court. That attempted service was commenced by the Clerk of Court on October 26, 2005. *See* Clerk's Certificate of Mailing annexed within Exhibit 1. However, that attempt was unsuccessful as the registered mail was unaccepted in Singapore where Sea Quest resides. See copy of envelope containing attempted service attached hereto as Exhibit 7. Plaintiff's counsel received that unclaimed envelope on or about December 2, 2005.

17.    Plaintiff gave Defendant ample notice of the arbitration proceedings in London as well as the current action before this Court. In conformity with Singaporean law, the Defendant was served with the Petition for Recognition and Enforcement at its registered place of business on June 19, 2006 at 4:30pm. *See* Proof of Service annexed hereto as Exhibit 8.

4

18.    Despite the notice provided, Sea Quest failed to formally appear in the action or file a responsive pleading. More than 45 days have elapsed since the date of service as evidenced in the exhibits attached to Petitioner's Proof of Service, annexed hereto as Exhibit 8.

19.    A proposed default judgment is annexed hereto as Exhibit 9.

20.    Defendant is not an infant, incompetent or in the military.

21.    Plaintiff respectfully requests that a judgment of default be entered against Defendant Sea Quest in the sum of $281,569.64.

Dated: Southport, CT
       August 22, 2006

Respectfully submitted,

The Plaintiff,
JANG HA MARINE CORP.

By: _____
Kevin J. Lennon (KL 5072)
TISDALE & LENNON, LLC
11 West 42nd Street, Suite 900
New York, NY
(212) 354-0025 - phone
(212) 869-0067 - facsimile
klennon@tisdale-lennon.com

Sworn to and subscribed before me
this 22nd day of August, 2006

_____
Notary Public

5

## AFFIRMATION OF SERVICE

Lauren C. Davies, an attorney duly admitted to practice before this Honorable Court,

affirms as follows: On August 23, 2006, pursuant to Judge Cote's Order of August 22, 2006, I

served a copy of the foregoing AFFIDAVIT OF KEVIN J. LENNON IN SUPPORT OF

MOTION FOR JUDGMENT BY DEFAULT via overnight mail upon the following:

Sea Quest Shipping Pte. Ltd.
30 Cecil Street, #15-00 Prudential Tower
Singapore 049712

LAUREN C. DAVIES

6

# EXHIBIT 7



TISDALE &
LENNON, LLC
11 WEST 42ND STREET
SUITE 900
NEW YORK, NY 12016

RB 632 906 818 US

Sea Quest Shipping Pte. Ltd.
10 Anson Road #27-12, International Plaza
Singapore 079903

UNITED STATES
POSTAL SERVICE

9140        01437

U.S. POSTAGE
PAID
NEW YORK, NY
OCT 26, 05
AMOUNT
$13.05
00061077-10

RR 162
134662
SINGAPORE
SG

~ 7 NOV 2005

# EXHIBIT 8

TISDALE & LENNON, LLC
11 West 42nd Street, Suite 900
New York, NY 10036
Tel: (212) 354-0025
Fax: (212) 869-0067
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------X
JANG HA MARINE CORP.,                        :

           Plaintiff,                   :      05 Civ. 4264 (DLC) (RLE)

   - against -                               :

SEA QUEST SHIPPING PTE LTD,                  :
CONNECT.WELL (S) PL, ELBE
BRIDGE LTD. and WEST BENGAL                  :
ESSENTIAL COMMODITIES SUPPLY
CORPORATION LIMITED,                         :

           Defendants.                  :
--------------------------------------------X

## PROOF OF SERVICE

Pursuant to Fed. R. Civ. P. 4(l), the Plaintiff hereby makes proof of service to the Court.

Plaintiffs have attached hereto as Exhibit 1a true and accurate copy of the Declaration of Hussein

Bin Mohd Sahron attesting to service of the following documents on Defendant Sea Quest

Shipping: *Petition for Recognition, Confirmation and Enforcement of Final Arbitration Award,*

*Memorandum of Law in Support of Petition for Recognition, Confirmation and Enforcement of*

*Final Arbitration Award, Affidavit of Kevin J. Lennon and Summonses.* The attached

Declaration shows that Sea Quest Shipping was duly served on June 19, 2006 at 4:30 p.m.

Dated: New York, NY
    June 28, 2006

The Plaintiff,
JANG HA MARINE CORP.

By:

Kevin J. Lennon (KL 5072)
Tisdale & Lennon, LLC
11 West 42nd Street, Suite 900
New York, NY 10036
(212) 354-0025 – phone
(212) 869-0067 – fax
Klennon@Tisdale-Lennon.com

TISDALE & LENNON, LLC
11 West 42nd Street, Suite 900
New York, NY 10036
Tel:  (212) 354-0025
Fax:  (212) 869-0067
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
JANG HA MARINE CORP.,                            :

          Plaintiff,          :      05 Civ. 4264  (DLC) (RLE)

  - against -                                   :

SEA QUEST SHIPPING PTE LTD,                  :
CONNECT.WELL (S) PL, ELBE
BRIDGE LTD. and WEST BENGAL                :
ESSENTIAL COMMODITIES SUPPLY
CORPORATION LIMITED,                             :

       Defendants.                     :
-------------------------------------------------------X

## DECLARATION OF HUSSEIN BIN MOHD SAHRON REGARDING SERVICE OF PROCESS OF PETITION FOR THE RECOGNITION, CONFIRMATION AND ENFORCEMENT OF FINAL ARBITRATION AWARD

HUSSEIN BIN MOHD SAHRON, under the penalty of perjury of the laws of the

United States, states as follows:

1.    I am over eighteen years old and understand the obligations of an oath. I am a

Court Clerk employed by the professional law firm of Ang & Partners, 150 Beach Road, #32-00,

The Gateway West, Singapore 189720. I have been employed in this capacity for twenty years.

2.    I make this Declaration based upon my own personal knowledge.

3.    I was instructed by attorney Anna Quah, a partner in Ang & Partners, to

personally serve the papers attached hereto as Exhibit 1, on Sea Quest Shipping.

4.    Attorney Quah furnished me with a copy of the registered office information for

Sea Quest Shipping, attached hereto as Exhibit 2, which indicated an address of 30 Cecil Street, #15-00 Prudential Tower, Singapore 049712.

5.    On June 19, 2006 at 4:30 p.m. I personally delivered the papers attached hereto as Exhibit 1 to Sea Quest at 30 Cecil Street, #15-00 Prudential Tower, Singapore 049712.

6.    I delivered the papers to a female Malay receptionist with short black hair, approximately 5'3'' tall, perhaps 20 years old, with fair skin color. I did not obtain her name.

7.    At the time I delivered the papers to the receptionist she advised me that Sea Quest Shipping no longer occupied the premises and that the company presently occupying the premises is an executive centre for Sea Quest Shipping.

8.    To my understanding, my service of papers on Sea Quest at its registered office address was valid service of process under Singapore law, notwithstanding Sea Quest's presence, or lack thereof, at the office.

9.    The receptionist to whom I served the papers did not reject the papers or advise me that she lacked authority to accept the papers.

10.    To my understanding, the papers I served have not been returned to the offices of Ang & Partners.

    Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Affirmed by the abovenamed        )
HUSSEIN BIN MOHD SAHRON        )
on this 20ᵗʰ day of June 2006        )

Before

_____

A Notary Public

Edmund Hendrick
N2005/0077
1 Apr 2006 - 31 Mar 2007
SINGAPORE

2

This is the exhibit marked "**EXHIBIT-1**"

referred to in the affidavit of

**HUSSEIN BIN MOHD SAHRON**

Affirmed before me

This 20ᵗʰ day of June 2006

Before me,



**A NOTARY PUBLIC**

# ANG & PARTNERS

ADVOCATES & SOLICITORS

Our Ref :   LDS/AQ/eb/2006-8035
Your Ref:   —

**BY HAND**

19 June, 2006

SEA QUEST SHIPPING PTE LTD
30 Cecil Street
#15-00 Prudential Tower
Singapore 049712

190 Beach Road #22-00
The Gateway West
Singapore 189720

Tel : (65) 6224 2930
Fax (65) 6225 3680 (Litigation)
Fax (65) 6224 3701 (Corporate)

After Office Hours
(65) 9760 6115

Website
www.angpartners.com

─────────────
Service of court documents by
facsimile is not accepted
─────────────

Dear Sirs

RE   :   UNITED STATES DISTRICT COURT
         SOUTHERN DISTRICT OF NEW YORK
         ECF CASE: 05 CV.4264 (DLC)
         PETITIONER: JANGHA MARINE CORP
         RESPONDENT: SEA QUEST SHIPPING PTE LTD
         AND/OR CONNECT.WELL(S) PL AND/OR ELBE
         BRIDGE LTD

PARTNERS
Loo Dip Seng
Goh Kok Leong
Shenyene Wang
Cheah Kok Lim
Chae Long Sun
Azman Jaafar
San Seng Choo
Hang Heng Leong
Tan Joo Seng
Linda Phua
Christopher S.L. Goh
Anna Quah
Akrampjeet Singh Khaira
Bijay Klawlat
Kanita Mahendran

We are instructed to represent Jangha Marine Corp in the above matter
and enclose by way of service the following: -

a) Petition for Recognition, Confirmation and Enforcement of Final
   Arbitration Award;

CONSULTANTS
Goh Phai Cheng, Senior Counsel

Koh Kee Guan
Notary Public/Commissioner for Oaths

ENGLISH LAW CONSULTANT
Prof. Francis Reynolds QC (Hon.)

b) Memorandum of Law in Support of Petition and Recognition,
   Confirmation and Enforcement of Final Arbitration Award;

c) Affidavit of Kevin J. Lennon; and

d) Two copies of the Summons In A Civil Case.

Kindly acknowledge receipt of the same.

Yours faithfully

**ANG & PARTNERS**

Enc

ANG & PARTNERS is in alliance with
DLA Piper Rudnick Gray Cary, a global
legal services organisation with offices
throughout Asia, Europe and the US

ACKNOWLEDGEMENT

Acknowledge Receipt of letter (with enclosures)

Signed by : ............
Date       :   6/06/06
Time       :   4.30 p.m.

**DLA PIPER RUDNICK GRAY CARY**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

JANG HA MARINE CORP.,          :

        Plaintiff,           :

                               05 CV 4264 (DLC) (RLE)

  - against -           :

SEA QUEST SHIPPING PTE. LTD. AND/OR  :
CONNECT. WELL (S) PL AND/OR ELBE
BRIDGE LTD. and WEST BENGAL       :
ESSENTIAL COMMODITIES SUPPLY
CORPORATION LIMITED,            :

        Defendants.         :
------------------------------------------------------------X

## AFFIDAVIT OF SERVICE

State of Connecticut  )
                  )   ss: SOUTHPORT
County of Fairfield  )

LAUREN C. DAVIES being duly sworn, deposes and says:

1.     I am over 18 years of age and understand the obligations of an oath.

2.     I hereby certify that on August 23, 2006, in accordance with the Court's Order to Show Cause dated August 22, 2006, I served Sea Quest Shipping Pte. Ltd. at their last known place of business via overnight mail and email a true and accurate copy of the Order to Show Cause, Clerk's Certificate, Memorandum of Law in Support of Motion for Default, the Affidavit of Kevin J. Lennon and all accompanying exhibits.

3.     Annexed hereto as Exhibit 1 is a copy of the email sent to Sea Quest Shipping Pte. Ltd. on August 23, 2006.

4.    Annexed hereto as Exhibit 2 are copies of Federal Express documents

evidencing the service of papers on Sea Quest Shipping Pte. Ltd. in Singapore at their last

known place of business at 9:52am on August 28, 2006.

Dated: Southport, Connecticut
August 29, 2006

Lauren C. Davies

Sworn and subscribed to before me
this 29th day of August, 2006.

Notary Public

2

# EXHIBIT 1

## Lauren C. Davies

| | |
|---|---|
| From: | Lauren C. Davies |
| Sent: | Wednesday, August 23, 2006 2:29 PM |
| To: | 'seaquest@seaquest.sg'; 'operation@seaquest.sg' |
| Cc: | Kevin Lennon |
| Subject: | Jang Ha Marine Corp. v. Sea Quest Shipping et al. |

Importance:      High

*VIA OVERNIGHT MAIL*
*and E-Mail: seaquest@seaquest.sg / operation@seaquest.sg*
Sea Quest Shipping Pte. Ltd.
30 Cecil Street, #15-00 Prudential Tower
Singapore 049712.

Re:    **JANG HA MARINE CORP. v. SEA QUEST SHIPPING et al.**
         Docket Number: 05 CV 4264 (DLC)
         Our Reference Number: 05-99-1115

Dear Sir/Madam:

This letter is to advise you that we represent Jang Ha Marine Corp. in relation to a dispute arising from a charter party with your company dated 17.02.05. On behalf of Jang Ha Marine we have filed a lawsuit in the United States District Court for the Southern District of New York against your company seeking recovery of damages. Pursuant to Rule 55 of the Federal Rules of Civil Procedure and Local Rule 55.2 of the Local Rules for the U.S. District Courts for the Southern and Eastern Districts of New York, the Plaintiff has moved for default judgment against Sea Quest Shipping Pte. Ltd. for its failure to appear and defend against this action.

In accordance with the Order to Show Cause signed by United States District Judge Denise Cote on August 22, 2006, please find contained herein the Order to Show Cause, Clerk's Certificate, Affidavit of Kevin J. Lennon, Memorandum of Law in Support of Motion for Default and all accompanying exhibits.

Kind regards,

Lauren C. Davies

      

Letter to          Affidavit of KJL.pdf          Clerk's                Memo of Law.pdf          Order to Show          Ex. 1.pdf (1 MB)    Ex. 2.pdf (104 KB)
Sequest.pdf (33 KB)    (147 KB)          ertificate.pdf (35 KB          (108 KB)          Cause.pdf (57 KB...

     

Ex. 3.pdf (56 KB)    Ex. 4.pdf (38 KB)    Ex. 5.pdf (26 KB)    Ex. 6.pdf (284 KB)    Ex. 7.pdf (42 KB)    Ex. 8.pdf (801 KB)    Ex. 9.pdf (31 KB)

---

Lauren Cozzolino Davies
**Tisdale & Lennon, LLC**

11 West 42nd Street
Suite 900

# EXHIBIT 2

  

≪ Log out    Home

Your Shipment Details:

| | | | |
|---|---|---|---|
| Ship to: | Madam or Sir<br>Sea Quest Shipping Pte.<br>Ltd.<br>30 Cecil Street, #15-00<br>Prudential Tower<br>Singapore, 049712<br>SG<br>2032548474 | Package Type:<br>Pickup/Drop Off:<br>Weight:<br>Dimensions:<br>Declared Value:<br>Shipper Account Number:<br>Bill transportation to: | FedEx Pak<br>Drop Off<br>1 LBS<br>0 x 0 x 0 In<br>1 USD<br>162728415<br>162728415 |
| From: | Dawn Kubie<br>TISDALE LENNON LLC<br>10 SPRUCE STREET<br>SOUTHPORT, CT 06890<br>US<br>2032548474 | Bill duty/taxes to:<br>Courtesy Rate Quote<br>Special Services:<br>Purpose:<br>Shipment Type: | 162728415<br>*44<br><br><br>Express |
| Tracking no: | 790044884006 | | |
| Your reference: | 1115 | | |
| Ship date: | Aug 23 2006 | | |
| Service Type: | International Priority | | |

Print

Returns History  Tra

## Please Note

*The courtesy rate shown here may be different than the actual charges for your shipment. Differences may occur based on actual weig dimensions, and other factors. Consult the applicable FedEx Service Guide or the FedEx Rate Sheets for details on how shipping char calculated.

FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misd misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is l greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary v e.g., jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict Consult the applicable FedEx Service Guide for details.



Close Window

Track Shipments
Detailed Results

 Print

| Tracking number | 790044684006 | Reference | 1115 |
|---|---|---|---|
| Signed for by | .AZLINA | Destination | SINGAPORE SG |
| Ship date | Aug 23, 2006 | Delivered to | Receptionist/Front Desk |
| Delivery date | Aug 28, 2006 9:52 AM | Service type | Priority Pak |
| | | Weight | 1.6 lbs. |

Status          Delivered

**Signature Proof of Delivery**
Click Request copy of signature to view delivery information for
this shipment.



Request copy of signature

| Date/Time | | Activity | Location | Details |
|---|---|---|---|---|
| Aug 28, 2006 | 9:52 AM | Delivered | SINGAPORE SG | |
| | 8:09 AM | On FedEx vehicle for delivery | SINGAPORE SG | |
| Aug 26, 2006 | 10:13 AM | Delivery exception | SINGAPORE SG | Holiday - Business closed |
| | 10:12 AM | At local FedEx facility | SINGAPORE SG | |
| | 7:51 AM | At local FedEx facility | SINGAPORE SG | |
| | 5:55 AM | Int'l shipment release | SINGAPORE SG | |
| Aug 24, 2006 | 11:16 AM | Departed FedEx location | ANCHORAGE, AK | |
| | 12:50 AM | Departed FedEx location | NEWARK, NJ | |
| Aug 23, 2006 | 9:35 PM | Arrived at FedEx location | NEWARK, NJ | |
| | 8:16 PM | Left origin | NORWALK, CT | |
| | 5:33 PM | Picked up | NORWALK, CT | |
| | 11:23 AM | Package data transmitted to FedEx | | |

Email results          Track more shipments

Subscribe to tracking updates (optional)

Your Name: [            ]          Your Email Address: [            ]

| Email address | Language | | Exception updates | Delivery updates |
|---|---|---|---|---|
| | English | | ☐ | ☐ |
| | English | | ☐ | ☐ |
| | English | | ☐ | ☐ |
| | English | | ☐ | ☐ |

Select format:  ⦿ HTML  ○ Text  ○ Wireless

Add personal message:

Not available for Wireless or
non-English characters.

☐ By selecting this check box and the Submit button, I agree to these Terms and Conditions

[Submit]

Close Window

## Lauren C. Davies

From:    TrackingUpdates@fedex.com
Sent:    Saturday, August 26, 2006 1:24 AM
To:      Lauren C. Davies
Subject: FedEx Shipment 790044684006 Delivered

Our records indicate that the following shipment has been delivered:

| | |
|---|---|
| Tracking number: | 790044684006 |
| Reference: | 1115 |
| Ship (P/U) date: | Aug 23, 2006 |
| Delivery date: | Aug 28, 2006 09:52 AM |
| Sign for by: | .AZLINA |
| Delivered to: | Receptionist/Front Desk |
| Service type: | FedEx International Priority |
| Packaging type: | FedEx Pak |
| Number of pieces: | 1 |
| Weight: | 1.6 LB |

Shipper Information
DAWN KUBIE
TISDALE LENNON   LLC
10 SPRUCE STREET
SOUTHPORT
CT
US
06890

Recipient Information
MADAM OR SIR
SEA QUEST SHIPPING PTE. LTD.
30 CECIL STREET, #15-00
PRUDENTIAL TOWER
SINGAPORE
SG
049712

Special handling/Services:
Deliver Weekday

Please do not respond to this message. This email was sent from an unattended
mailbox. This report was generated at approximately 8:58 PM CDT
on 09/27/2006.

To learn more about FedEx Express, please visit our website at fedex.com.

All weights are estimated.

To track the latest status of your shipment, click on the tracking number  above,
or visit us at fedex.com.

This tracking update has been sent to you by FedEx on the behalf of the
Requestor noted above. FedEx does not validate the authenticity of the
requestor and does not validate, guarantee or warrant the authenticity of  the
request, the requestor's message, or the accuracy of this tracking update.  For
tracking results and fedex.com's terms of use, go to fedex.com.

Thank you for your business.

# EXHIBIT 5

## Kevin J. Lennon

| | |
|---|---|
| **From:** | Kevin J. Lennon |
| **Sent:** | Wednesday, January 02, 2008 11:36 PM |
| **To:** | 'jrau@cardillocorbett.com' |
| **Subject:** | Thymus v. Jang Ha Marine |
| **Importance:** | High |
| **Attachments:** | Jangha v Sea Quest - OSC.pdf; Jangha v Sea Quest - KJL DECL - DJGMT.pdf; Jangha v Sea Quest - MOL - DJGMT.pdf; Respondent's Reply.pdf; Bank Guarantee.pdf |
| **TimeMattersID:** | M9FF79A32A453251 |
| **TM Matter No:** | 1312-07 |

**TM Matter Reference:** Thymus Shipping v. Jangha Marine.

Our ref.:        07-1312

Dear Jim:

I refer to our telecom earlier today and confirm that we act on behalf of Jangha Marine in respect of Thymus Shipping's rule B attachment.

I am attaching some of the papers that we filed in our prior case against Sea Quest. I will send you a copy of the underlying arbitration award tomorrow. A couple of things are pertinent:

1.    As far as we can tell, Sea Quest ceased to exist sometime in 2005. They never opposed Jangha' arbitration claims and never opposed our Rule B application or the default judgment. Thus, we suspect that the Bangladesh arrest it carried out against Thymus may have been one of its last acts and that the Bangladesh proceeding is no longer being actively prosecuted;

2.    The award in favor of Jangha Marine against Sea Quest found that Jangha had lawfully withdrawn the vessel from Sea Quest due to non-payment of hire; and

3.    The bank guarantee posted by Thymus to free the vessel from arrest appears to be valid only for 1 year from April 23, 2005. We do not know if it has been renewed but suspect that it may not have been if the underlying proceeding is not being litigated.

Please inquire with Thymus and get back to us. Jangha would like to know if Thymus will voluntarily reduce the rule B to exclude the claim for indemnity on the $400k bank guarantee and other related costs.

If so, then Jangha will consider allowing a portion of the funds restrained in NY to remain under attachment to secure Thymus claims. However, Jangha has interposed a counterclaim in the pending Thymus – Jangha London arbitration that is, to my understanding, not secured. Please see a copy of Jangha's Reply annexed. Depending on the level of the quantum to remain as security in NY Jangha may be willing to forego security on its counterclaim.

Let me know as soon as you can regarding the status of the Bangladeshi proceeding. I had intended to get this process underway prior to the holidays but ran out of time and Jangha would like to press ahead with resolving the matter or seeking relief via a motion. I apologize for rushing you into action but simply wanted to let you know what Jangha wants the matter to proceed ahead apace. Your efforts are therefore greatly appreciated.

Should you wish to discuss please contact me at any time. However, I am in court most of tomorrow with very limited access to my cell phone or email so I will likely only be able to get back to you tomorrow evening. Thanks very much.

Kind regards,

Kevin J. Lennon

4/1/2008

Lennon, Murphy & Lennon, LLC
Visit our website at www.lenmur.com

\*\*\* NOTICE \*\*\* This message is being sent by a lawyer. It may contain attorney-client or attorney work product
information subject to legal privilege. If you receive this message in error, please notify the sender. Thank you.

The GrayBar Building
420 Lexington Avenue, Suite 300
New York, NY  10170
(212) 490-6050 - Ph.
(212) 490-6070 - Fax

Tide Mill Landing
2425 Post Road
Southport, CT  06890
(203) 256-8600 - Ph.
(203) 256-8615 - Fax

## Kevin J. Lennon

| From: | Kevin J. Lennon |
|---|---|
| **Sent:** | Thursday, January 10, 2008 11:31 AM |
| **To:** | 'jrau@cardillocorbett.com' |
| **Subject:** | RE: Thymus v. Jangha Marine |
| **TimeMattersID:** | M42F89A3AE83D268 |
| **TM Matter No:** | 1312-07 |
| **TM Matter Reference:** | Thymus Shipping v. Jangha Marine. |

Our ref.:      07-1312

Dear James:

Thanks foe the reply. I appreciate the effort and trust that you understand Jangha will want us to take efforts in New York if we do not hear back from you regarding Thymus' position on the attachment securing the Bangladeshi bank guarantee for the Sea Quest claim in the next few days. As such, please keep me posted. Thanks very much -- feel free to call/write to discuss.

Kind regards,

*Kevin J. Lennon*
Lennon, Murphy & Lennon, LLC   www.lenmur.com

The Gray Bar Building, 420 Lexington Avenue, Ste 300, New York, NY  10170
P (212) 490-6050
F (212) 490-6070

Tide Mill Landing, 2425 Post Road, Ste 302, Southport, CT  06890
P (203) 256-8600
F (203) 256-8615

*\*\*\* NOTICE \*\*\*  This message is being sent by a lawyer. It may contain attorney-client or attorney work product information subject to legal privilege. If you receive this message in error, please notify the sender. Thank you.*

**From:** James P. Rau [mailto:jrau@cardillocorbett.com]
**Sent:** Thursday, January 10, 2008 10:47 AM
**To:** Kevin J. Lennon
**Subject:** RE: Thymus v. Jangha Marine

Dear Kevin,

I have requested the information and will let you know as soon as I hear back from them.
Best regards,

James P. Rau
Cardillo & Corbett
29 Broadway, Suite 1710
New York, NY 10006

4/1/2008

(212) 344-0464 - Phone
(212) 797-1212 - Fax


The information contained in this e-mail message is privileged and confidential, and is intended only for the use of the individual named above and others who have been specifically authorized to receive such. If the recipient is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, or if any problems occur with transmission, please notify us immediately by e-mail at <mailto:jrau@cardillocorbett.com> or telephone (212) 344-0464. Thank you.

-----Original Message-----
**From:** Kevin J. Lennon [mailto:klennon@lenmur.com]
**Sent:** Wednesday, January 09, 2008 11:01 AM
**To:** jrau@cardillocorbett.com
**Subject:** Thymus v. Jangha Marine
**Importance:** High

Our ref.:      07-1312

Dear Jim:

Further to our telecom and my email of last week can you please advise if you have been able to determine the status of the Bangladeshi proceeding and the bank guarantee for which indemnity was sought in NY in the Rule B? We are being pressed by our client and I'd like to avoid unnecessary motion practice if possible. Thanks.

Kind regards,


*Kevin J. Lennon*
Lennon, Murphy & Lennon, LLC   www.lenmur.com

The Gray Bar Building, 420 Lexington Avenue, Ste 300, New York, NY 10170
P (212) 490-6050
F (212) 490-6070

Tide Mill Landing, 2425 Post Road, Ste 302, Southport, CT 06890
P (203) 256-8600
F (203) 256-8615

*** NOTICE *** This message is being sent by a lawyer. It may contain attorney-client or attorney work product information subject to legal privilege. If you receive this message in error, please notify the sender. Thank you.

## Kevin J. Lennon

| | |
|---|---|
| **From:** | James P. Rau [jrau@cardillocorbett.com] |
| **Sent:** | Friday, January 11, 2008 5:37 PM |
| **To:** | Kevin J. Lennon |
| **Subject:** | RE: Thymus v. Jangha Marine |
| **TimeMattersID:** | MC0669A3BED49462 |
| **TM Matter No:** | 1312-07 |
| **TM Matter Reference:** | Thymus Shipping v. Jangha Marine. |

Dear Kevin,

We have been informed by Bangladesh counsel for the Owners of the M/V REGAL STAR, M. Hafizullah of Orr, Dignam & Co., that Sea Quest's suit remains pending there before the High Court Division of the Supreme Court. He also confirms that the bank guarantee remains valid up to April 23, 2008.

We would also point out with respect to the guarantee that the costs concerning same as claimed in the London arbitration (and in our New York action), are for costs of issuance in 2005 and yearly extensions through April 2008 (when it presumably will be extended again, if necessary). We suggest you contact Jangha's London counsel to confirm this.

Best regards,

Jim Rau

James P. Rau
Cardillo & Corbett
29 Broadway, Suite 1710
New York, NY 10006
(212) 344-0464 - Phone
(212) 797-1212 - Fax

The information contained in this e-mail message is privileged and confidential, and is intended only for the use of the individual named above and others who have been specifically authorized to receive such. If the recipient is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, or if any problems occur with transmission, please notify us immediately by e-mail at <mailto:jrau@cardillocorbett.com> or telephone (212) 344-0464. Thank you.

-----Original Message-----
**From:** Kevin J. Lennon [mailto:klennon@lenmur.com]
**Sent:** Wednesday, January 09, 2008 11:01 AM
**To:** jrau@cardillocorbett.com
**Subject:** Thymus v. Jangha Marine
**Importance:** High

Our ref.:        07-1312

Dear Jim:

Further to our telecom and my email of last week can you please advise if you have been able to determine the status of the Bangladeshi proceeding and the bank guarantee for which indemnity was sought in NY in the Rule B? We are being pressed by our client and I'd like to avoid unnecessary motion practice if possible. Thanks.

Kind regards,

**Kevin J. Lennon**
Lennon, Murphy & Lennon, LLC   www.lenmur.com

The Gray Bar Building, 420 Lexington Avenue, Ste 300, New York, NY 10170
P (212) 490-6050
F (212) 490-6070

Tide Mill Landing, 2425 Post Road, Ste 302, Southport, CT 06890
P (203) 256-8600
F (203) 256-8615

*\*\*\* NOTICE \*\*\* This message is being sent by a lawyer. It may contain attorney-client or attorney work product information subject to legal privilege. If you receive this message in error, please notify the sender. Thank you.*

## Kevin J. Lennon

| From: | Kevin J. Lennon |
| --- | --- |
| Sent: | Friday, February 01, 2008 5:23 AM |
| To: | 'jrau@cardillocorbett.com' |
| Subject: | RE: Thymus v. Jangha Marine |
| TimeMattersID: | MA0B59A507F82247 |
| TM Matter No: | 1312-07 |

**TM Matter Reference:** Thymus Shipping v. Jangha Marine.

Our ref.:        07-1312

Dear Jim;

Further to my last email below, and our telecom on the 18th, are you in position to provide us with a copy of the renewed bank guarantee and/or any documentation of the ongoing Bangladeshi proceedings? Our client would like for us to pursue a motion to vacate the attachment if such evidence is not provided by Thymus. Please let me know where things stand on your end. Thanks very much.

Kind regards,

Kevin J. Lennon
Lennon, Murphy & Lennon, LLC
Visit our website at www.lenmur.com

\*\*\* NOTICE \*\*\* This message is being sent by a lawyer. It may contain attorney-client or attorney work product information subject to legal privilege. If you receive this message in error, please notify the sender. Thank you.

The GrayBar Building
420 Lexington Avenue, Suite 300
New York, NY  10170
(212) 490-6050 - Ph.
(212) 490-6070 - Fax

Tide Mill Landing
2425 Post Road
Southport, CT  06890
(203) 256-8600 - Ph.
(203) 256-8615 - Fax

**From:** Kevin J. Lennon
**Sent:** Friday, January 11, 2008 5:48 PM
**To:** jrau@cardillocorbett.com
**Subject:** RE: Thymus v. Jangha Marine

Our ref.:        07-1312

Dear Jim:

Thanks. I will take these points up with our instructing counsel and Jangha Marine.

It would help if you could provide to us a copy of the current bank guarantee since the terms of the guarantee I sent you called for its expiry in 1 year and also a thumbnail sketch of where the proceedings are in

Bangladesh.

As you may be aware, Jangha is of the position that the Sea Quest claim against owners is without any foundation and if possible the subject of a dispositive application by owners. I trust you agree that a party such as Thymus seeking indemnity for a claim lodged against must take it upon itself to assert and advance defenses against the claim and not simply allow for a lacking claim to persist because there is an ability to obtain security for exposure on that claim from another party. Thus, we request that we be provided with a copy of the pleadings/briefs lodged by Thymus in Bangladesh against the claim filed by Sea Quest.

Thank you. Please feel free to call/write to discuss.

Kind regards,

**Kevin J. Lennon**
Lennon, Murphy & Lennon, LLC   www.lenmur.com

The Gray Bar Building, 420 Lexington Avenue, Ste 300, New York, NY 10170
P (212) 490-6050
F (212) 490-6070

Tide Mill Landing, 2425 Post Road, Ste 302, Southport, CT 06890
P (203) 256-8600
F (203) 256-8615

*** NOTICE *** *This message is being sent by a lawyer. It may contain attorney-client or attorney work product information subject to legal privilege. If you receive this message in error, please notify the sender. Thank you.*

**From:** James P. Rau [mailto:jrau@cardillocorbett.com]
**Sent:** Friday, January 11, 2008 5:37 PM
**To:** Kevin J. Lennon
**Subject:** RE: Thymus v. Jangha Marine

Dear Kevin,

We have been informed by Bangladesh counsel for the Owners of the M/V REGAL STAR, M. Hafizullah of Orr, Dignam & Co., that Sea Quest's suit remains pending there before the High Court Division of the Supreme Court. He also confirms that the bank guarantee remains valid up to April 23, 2008.

We would also point out with respect to the guarantee that the costs concerning same as claimed in the London arbitration (and in our New York action), are for costs of issuance in 2005 and yearly extensions through April 2008 (when it presumably will be extended again, if necessary). We suggest you contact Jangha's London counsel to confirm this.

Best regards,

Jim Rau

James P. Rau
Cardillo & Corbett
29 Broadway, Suite 1710

New York, NY 10006
(212) 344-0464 - Phone
(212) 797-1212 - Fax


The information contained in this e-mail message is privileged and confidential, and is intended only for the use of the individual named above and others who have been specifically authorized to receive such. If the recipient is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, or if any problems occur with transmission, please notify us immediately by e-mail at <mailto:jrau@cardillocorbett.com> or telephone (212) 344-0464. Thank you.

-----Original Message-----
**From:** Kevin J. Lennon [mailto:klennon@lenmur.com]
**Sent:** Wednesday, January 09, 2008 11:01 AM
**To:** jrau@cardillocorbett.com
**Subject:** Thymus v. Jangha Marine
**Importance:** High

Our ref.:        07-1312

Dear Jim:

Further to our telecom and my email of last week can you please advise if you have been able to determine the status of the Bangladeshi proceeding and the bank guarantee for which indemnity was sought in NY in the Rule B? We are being pressed by our client and I'd like to avoid unnecessary motion practice if possible. Thanks.

Kind regards,


*Kevin J. Lennon*
Lennon, Murphy & Lennon, LLC   www.lenmur.com

The Gray Bar Building, 420 Lexington Avenue, Ste 300, New York, NY 10170
P (212) 490-6050
F (212) 490-6070

Tide Mill Landing, 2425 Post Road, Ste 302, Southport, CT 06890
P (203) 256-8600
F (203) 256-8615

*\*\*\* NOTICE \*\*\* This message is being sent by a lawyer. It may contain attorney-client or attorney work product information subject to legal privilege. If you receive this message in error, please notify the sender. Thank you.*

4/1/2008

## Kevin J. Lennon

| | |
|---|---|
| **From:** | James P. Rau [jrau@cardillocorbett.com] |
| **Sent:** | Wednesday, February 13, 2008 12:33 PM |
| **To:** | Kevin J. Lennon |
| **Subject:** | RE: Thymus v. Jangha Marine |

| | |
|---|---|
| **Attachments:** | bank guarantee  ext.img-0211073937-0001.TIF |
| **TimeMattersID:** | M0B589A5C1C8A986 |
| **TM Matter No:** | 1312-07 |
| **TM Matter Reference:** | Thymus Shipping v. Jangha Marine. |



bank guarantee
ext.img-021107...

Dear Kevin,

Further to my email of January 11, 2008 and our telephone conversation of February 1, 2008, please find attached the bank advise  extending the subject bank guarantee until May 23, 2008,  with "all other terms and conditions remain unchanged".

I am still awaiting a copy of the documents concerning the ongoing action against owners in Bangladesh which their counsel there has requested from the court.

Best regards,
Jim Rau

James P. Rau
Cardillo & Corbett
29 Broadway, Suite 1710
New York, NY 10006
(212) 344-0464 - Phone
(212) 797-1212 - Fax

The information contained in this e-mail message is privileged and confidential, and is intended only for the use of the individual named above and others who have been specifically authorized to receive such. If the recipient is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, or if any problems occur with transmission, please notify us immediately by e-mail at <mailto:jrau@cardillocorbett.com> or telephone (212) 344-0464. Thank you.

## Kevin J. Lennon

| | |
|---|---|
| **From:** | Kevin J. Lennon |
| **Sent:** | Wednesday, February 13, 2008 11:51 PM |
| **To:** | 'jrau@cardillocorbett.com' |
| **Subject:** | RE: Thymus v. Jangha Marine |

| | |
|---|---|
| **TimeMattersID:** | M1DEC9A5CEAE9299 |
| **TM Matter No:** | 1312-07 |
| **TM Matter Reference:** | Thymus Shipping v. Jangha Marine. |

Our ref.:     07-1312

Dear Jim:

Thanks - I will pass this to our client and their solicitors. I don't necessarily concur that this shows that a bank guarantee is still in existence since the terms of the guarantee itself seem to indicate otherwise. Would there not be an actual re-issuance of another guarantee instead of a mere Swift message?

Please let me know if / when documents can be obtained. It is puzzling to us that documentation showing that a claim is still being prosecuted against Thymus by Sea Quest cannot be obtained in over 6 weeks. Further, even if one assumes a claim is being pursued, if there is such a paucity of evidence and/or lack of any effort to move the case by Sea Quest, or Thymus to dismiss, then Thymus need, or perhaps right, to security seems quite diminished.

Will let you know what our side advises. Thanks.

Kind regards,

Kevin J. Lennon
Lennon, Murphy & Lennon, LLC
Visit our website at www.lenmur.com

\*\*\* NOTICE \*\*\* This message is being sent by a lawyer. It may contain attorney-client or attorney work product information subject to legal privilege. If you receive this message in error, please notify the sender. Thank you.

The GrayBar Building
420 Lexington Avenue, Suite 300
New York, NY  10170
(212) 490-6050 - Ph.
(212) 490-6070 - Fax

Tide Mill Landing
2425 Post Road
Southport, CT  06890
(203) 256-8600 - Ph.
(203) 256-8615 - Fax

-----Original Message-----
From: James P. Rau [mailto:jrau@cardillocorbett.com]
Sent: Wednesday, February 13, 2008 12:33 PM
To: Kevin J. Lennon
Subject: RE: Thymus v. Jangha Marine

1

Dear Kevin,
Further to my email of January 11, 2008 and our telephone conversation of
February 1, 2008, please find attached the bank advise extending the
subject bank guarantee until May 23, 2008, with "all other terms and
conditions remain unchanged".
I am still awaiting a copy of the documents concerning the ongoing action
against owners in Bangladesh which their counsel there has requested from
the court.

Best regards,
Jim Rau

James P. Rau
Cardillo & Corbett
29 Broadway, Suite 1710
New York, NY 10006
(212) 344-0464 - Phone
(212) 797-1212 - Fax

The information contained in this e-mail message is privileged and
confidential, and is intended only for the use of the individual named above
and others who have been specifically authorized to receive such. If the
recipient is not the intended recipient, you are hereby notified that any
dissemination, distribution or copy of this communication is strictly
prohibited. If you have received this communication in error, or if any
problems occur with transmission, please notify us immediately by e-mail at
<mailto:jrau@cardillocorbett.com> or telephone (212) 344-0464.  Thank you.

# EXHIBIT 6

10/02/2008 1:00:56 PM  (Printed from SIDE Viewer)                              1

```
---------------------- Instance Type and Transmission --------------
Original sent to SWIFT (ACK)
Priority/Delivery          : Normal
Message Input Reference    : BOMLABRDAXXX5586497343
-------------------------- Message Header --------------------------
Swift Input    : FIN 767 Guarantee Amendment
Sender         : BOMLABADFTC
                 MASHREQBANK PSC.
                 (FOREIGN TRADE CENTRE)
                 DUBAI
                 UNITED ARAB EMIRATES AE
Receiver       : BSONBDDHXXX
                 SONALI BANK
                 DHAKA
                 BANGLADESH BD
-------------------------- Message Text ----------------------------
  27: Sequence of Total
      1/1
  20: Transaction Reference Number
      G045863
  21: Related Reference
      LC/RMT/GUR-31/05
  23: Further Identification
      REQUEST
  30: Date
      070428
  26E: Number of Amendment
      02
  31C: Date of Issue / Request to Issue
      050418
  77C: Amendment Details
      AGAINST OUR COUNTER GUARANTEE, PLS. EXTEND THE VALIDITY
      OF YOUR ABOVE GUARANTEE UNTIL 23RD MAY 2008

      ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

      OUR COUNTER GUARANTEE VALIDITY EXTENDED UNTIL 07TH JUNE 2008..

      REGARDS,
      SIDDIQUE
      FTC
-------------------------- Message Trailer -------------------------
{MAC:B459A3DE}
{CHK:CD895F60ECB1}


-------------------------- Message History -------------------------
*Original (Completed)

Created at ' MP creation' on 18/04/2007 at 4:30:49 PM
By 21986 : Created at rp [ MP creation] and assigned to unit [LCIssuance]
By 21986 : Disposed from rp [ MP creation] to rp [ MP mod text]; On processing
by Function mpc with result Success;
By 21986 : Routed from rp [ MP mod text] to rp [ MP authorisation]; On
Processing by Function mpm with result Success; (Rule:USER,200)
By 1125 : Routed from rp [ MP authorisation] to rp [OFCS IN]; On Processing by
Function mpa with result Success; (Rule:USER,50)
By SYSTEM : Routed from rp [OFCS IN] to rp [DDAS IN]; On Processing by Function
OFCS Detect with result No_Violation; (Rule:USER,5)
By SYSTEM : Routed from rp [DDAS IN] to rp [ SI to SWIFT]; On Processing by
Function DDAS CHECK with result Bypassed; (Rule:USER,100)
Sent to SWIFT 'BOMLARADAXXXF' on 18/04/2007 at 5:53:46 PM
Session Nr 5586 Sequence Nr 497343 Result: SWIFT Result: SWIFT Ack
By SYSTEM : Completed in rp [ SI to SWIFT]; On Processing by Function
_SI_to_SWIFT with result Success; (Rule:USER,372)
```

# EXHIBIT 7

# ▦ Winter Scott
## Solicitors

19-21 Great Tower Street
London EC3R 5AR
Telephone: +44 (0)20 7648 2460
Fax: +44 (0)20 7626 5591
DX: 518 London/City
E-mail: firstinitialsurname@winterscott.co.uk

William Robertson Esq.                    Our Ref:              JCK/175-5
The Atlas Room                            Your Ref:        WR/04/2808/mw
37 Woodpecker Crescent
Burgess Hill
West Sussex
RH15 9XY

Alan Oakley Esq.
Hoy's Farm
Upwick                                    Date:         9th September 2005
Ware
Hertfordshire
SG11 2LD

Re: "REGAL STAR"

We refer to previous correspondence, and should be grateful if the Tribunal would accept this letter as Owners' Submissions of Claim.

1. Pursuant to a Time Charterparty on the NYPE 1946 form ("the Charterparty"), Thymus Shipping Corp ("Owners") chartered the vessel "REGAL STAR" ("the vessel") to Jangha Marine Corp ("Charterers") for about 3 months to about 4 months, +/- 10 days in Charterers' option.

2. The Charterparty provided, *inter alia*, as follows:

   Lines 16 - 17: *"Charterers to have liberty to sublet the vessel for all or any part of the time covered by this Charter, but Charterers remaining responsible for the fulfilment of this Charter Party."*

   Clause 4:    *"... Charterers are to give Owners 20/18/15 days approximate and thereafter daily definite notices of redelivery..."*

   Clause 8:    *"... The Captain (although appointed by the Owners) shall be under the orders and directions of the Charterers..."*

   Clause 18:   *"... Charterers will not suffer, nor permit to be continued, any lien or encumbrance incurred by them or their agents, which might have priority over the title and interest of the owners in the vessel."*

   Clause 65:   *"Should the vessel be captured or seized or detained or arrested by any authority or by any legal process during the currency of this Charter Party, the payment of hire shall be suspended until the time of her release, unless such capture or seizure or detention or arrest is occasioned by any personal act or omission or default of the Charterers or their agents. Any expenses incurred by and/or during*

Partners:  Glenn Winter  Ken Scott  Michael Ellis  Damien Wilkes  Tim Houghton
Associates:  Richard Verney (not admitted)  Rachel Bellsham-Revell  James King
Non-Practising Consultant:  Heidi Shamsuddin
Regulated by the Law Society

VAT No GB 819417416

> *the above capture or seizure or detention or arrest shall be for Owners' account provided Charterers' use of the vessel is actually prevented, unless caused by Charterers or their agents, in which case to be for Charterers' account and vessel to remain on full hire."*

A copy of the Charterparty, upon which Owners rely for its full terms and effects, is attached as *Enclosure 1.*

3. During the currency of the Charterparty, Charterers sub-chartered the vessel to Sea Quest Shipping Pte Ltd for one time charter trip from Haldia and Paradip to China.

4. During the course of that sub-employment, and shortly after the vessel had arrived at the first load port, Haldia, Owners received a message from Charterers stating that orders from Sea Quest were to be disregarded for the time being; we attach a copy of this message as *Enclosure 2.* In fact, Sea Quest provided Owners with voyage instructions the next day, and the Master passed these along to Charterers, with his confirmation that he was following their instructions to ignore messages from Sea Quest (*Enclosure 3*). It later transpired that Charters gave these orders by reason of Sea Quest's failure to pay hire to Charterers (*Enclosure 4*).

5. Although the port authority subsequently advised the Master to proceed to berth, Charterers instructed him to wait (*Enclosure 5*); eventually, and presumably in the absence of any payment by Sea Quest, Charterers instructed the Master to leave Haldia without loading any cargo; please see *Enclosure 6.* These were obviously orders that Owners were obliged to follow pursuant to clause 8. The vessel then sailed to Paradip for an Owners' matter for which off-hire has already been agreed.

6. We understand that around this time, and again without loading any cargo for Sea Quest, Charterers terminated the sub-charterparty with Sea Quest (we assume for non-payment of hire), and fixed the vessel to different sub-charterers, Jade Fortune Investment Inc, for one time charter trip from Haldia to Mongla, via Vizag and Chittagong; we attach a copy of Charterers' instructions as *Enclosure 7.*

7. The vessel subsequently called at Mongla, in Bangladesh, to discharge her cargo for Jade Fortune Investment. However, on 31st March 2005 she was arrested by Sea Quest Shipping in respect of a claim for loss and damage related to the aborted call at Haldia.

8. Obviously, Owners were not responsible for the vessel not loading Sea Quest's cargo at Haldia; they were simply following Charterers' orders to, firstly, wait at anchorage and not berth, and, secondly, proceed to Paradip without loading any cargo.

9. In any event, this arrest amounted to an encumbrance on the vessel within the meaning of clause 18, and, given that responsibility for the vessel's arrest clearly lay with Charterers and not Owners (as Owners were simply following Charterers' legitimate orders), Charterers were obliged to provide security to Sea Quest to obtain the vessel's release: see, for example, *The Vestland* [1980] 2 Lloyd's Rep. 171.

10. However, despite their clear legal obligation to put up security, and Owners' repeated demands that they comply with their Charterparty obligations in this regard, Charterers refused to do so.

11. In order to mitigate the losses flowing from the vessel's arrest, Owners were eventually forced to put up security themselves, in the sum of US$400,000; we attach a copy of this security as *Enclosure 8.* The release order was issued on 24th April, although it was not served on the vessel until 26th April; the outward pilot was dropped at 18:30 hours that day. Charterers immediately redelivered the vessel to Owners; however, in breach of

clause 4 of the Charter, they did not give Owners the required 20-day notice of redelivery. Owners were therefore forced to fix the vessel at the market rate of US$11,000 per day (see *Enclosure 9*), and are entitled to claim the difference between the hire rate (US$12,500) and the market rate for 20 days; this amounts to US$32,000, and is included in Owners' Final Hire Statement.

12. We attach as *Enclosure 10* copies of potential fixtures available in the market on or around the date of the vessel's redelivery; as the Tribunal will note, these all offered daily rates less than the US$11,000 eventually fixed. Owners therefore properly mitigated their losses.

13. We now attach as *Enclosure 11* a copy of Owners' Final Hire Statement, showing a balance due to Owners of US$154,270.71. To date, Charterers have failed to pay this sum, or any part thereof.

14. It appears that Charterers have refused to pay this sum, as they contend that the vessel was off-hire while she remained under arrest at Mongla.

15. Such an argument is, of course, wholly misconceived. Pursuant to clause 65, where an arrest is *"occasioned by any personal act or omission or default of the Charterers or their agents"* the vessel is to remain on-hire, and Charterers are liable for any expenses arising out of the arrest.

16. Here, the arrest was *"occasioned"* by Charterers, since they ordered the vessel to remain at anchorage, and then sail from Haldia without loading any cargo, this resulting in Sea Quest arresting the vessel. While Charterers' actions vis-à-vis Sea Quest may have been reasonable due to Sea Quest's apparent failure to pay hire, that does not mean that the arrest was anything other than *"occasioned"* by Charterers' actions (namely, their orders to wait and then leave, knowing full well that Sea Quest wished to load cargo).

17. That being so, the vessel clearly remained on hire. Further or alternatively, Charterers are not entitled to put the vessel off-hire where the disputed period resulted from their own failure to comply with their Charterparty obligations; here, their failure to provide security to Sea Quest to obtain the release of the vessel, pursuant to clause 18.

18. Alternatively, if (which is denied) Charterers are *prima facie* entitled to put the vessel off-hire under clause 65, Owners are entitled to damages in an equivalent sum for Charterers' breach of clause 18.

19. Owners have also incurred numerous expenses in dealing with the arrest; these include the costs of putting up the bank guarantee, lost interest on the monies put up by way of security, the costs of their Bangladeshi lawyers, and so on.

20. Owners are entitled to an indemnity from Charterers for the above expenses, pursuant to clauses 18 and/or 65; these expenses are presently estimated at US$30,000, and we hope to provide the Tribunal with a detailed breakdown in due course.

21. Owners are also entitled to an indemnity from Charterers for any and all sums (including costs) they are held liable to pay to Sea Quest in the Bangladeshi proceedings, and for all unrecovered costs incurred by them in respect of those proceedings; clearly, Owners would not be involved in the Bangladeshi proceedings at all, had Charterers not given the orders discussed in paragraphs 4 and 5 above, which orders Owners were obliged to follow pursuant to clause 8. Owners' right to an indemnity in respect of the above sums therefore arises by implication pursuant to clause 8 (see, for example, *Strathlorne Steamship v. Andrew Weir* (1934) 50 Ll. L. Rep. 185).

22. Owners therefore claim:

3

(a) The sum of US$154,270.71, alternatively damages;

(b) An indemnity for all expenses arising out of the arrest of the vessel at Mongla;

(c) An indemnity as per paragraph 21 above;

(d) Compound interest; and

(e) Costs (to be assessed if not agreed).

Owners should be grateful for a Reasoned Award.

Yours faithfully

WINTER SCOTT
Enc.
cc.

Jangha Marine Corporation

For the kind attention of T Y Tung, fax: 00 82 2730 9416

4

# "REGAL STAR"

# Enclosures to Owners' Submissions of Claim

**Winter Scott**
Solicitors

# ENCLOSURE 1

**Winter Scott**
Solicitors

02-4PN-2005  15:54  PKLM  INKBELINE LLC              TS  #                     P.01

# Time Charter
## GOVERNMENT FORM
### Approved by the New York Produce Exchange
November 8th, 1913-Amended October 20th, 1921; August 6th, 1931; October 3rd, 1946

1  This Charter Party, made and concluded in Dubai .............. 1st ....... day of December.......... 2004.... 19 .......
2  Between Thomus Shipping Corp., Monrovia, Liberia. ...................................................................
3  Owners of the good, St. Vincent & the Grenadines Flag Steamship/Motorship .. "Regal Star" ...................... of .....
4  of .. 12539... tons gross register, and .. 6145..., tons net register, having engines of .................. Indicated/horse-power
5  and with hull, machinery and equipment in a thoroughly efficient state, and classed .... Lloyds Register/NKA/+LMC
6  at .. 2395/62255.... of about ...... cubic feet metric grain/bale capacity, and ..... 18,411 metric... tons of 2240-lbs
7  deadweight capacity (cargo and bunkers, including fresh water and stores not exceeding one-and-one-half-percent of
8  ship's deadweight capacity,
9  allowing a minimum of 20%-tons) on a draft of ... 8.816 MTRS feet--inches on ...,.. summer water free-board, inclusive
    of permanent bunkers,
9  which are of the capacity of about ,......,..tons of fuel, and capable of steaming, fully laden, under good weather
    (means upto and including beaufort force 3)
10  conditions about .11.5... knots on a consumption of about ..19...tons of IFO(150 cst) + about 2.5 MT MGO at sea
    (for description, See clause 31) best Water coal-best grade fuel-oil-best grade Diesel oil;
11  now, Trading .....................................................................................................................
12  ..................................and...lengths Marine Corp......................Charterers of the city of..... Seoul, Korea...
13      Witnesseth, That the said owners agree to let, and the said Charterers agree to hire the said vessel, from
    the time of delivery, for
14  short period charter of about 3 months to about 4 months +/- 10 days in Charterers' option trading always via
    safe port(s), safe berth(s), safe anchorage(s), always afloat always accessible always within institute Warranty
    limits with general & harmless cargoes, within Suez-Japan range. IMO/IMDG cargoes always excluded.
15  ...........................................................................which: below mentioned trading limits.
16  Charterers to have liberty to sublet the vessel for all or any part of the time covered by this Charter, but Charterers
    remaining responsible for
17  the fulfilment of this Charter Party.
18  Vessel to be placed at the disposal of the Charterers, at dropping last outward sea pilot Mumbai - Dubai range,
19  port in Owners option any time day or night Sundays/Fridays holidays included (Scienton Mumbai) .........
20  In such dock or at such wharf or place (where she may safely lie, always afloat, at all times of day, as sea-lies
    otherwise provided in clause 30-35,-es
21  the Charterers may direct. If such dock, wharf or place be not available time to count as provided as provided for in clause No.3
    Vessel on her delivery to be
22  ready to receive permissible cargo with clean-swept holds and tight, staunch, strong and in every way fitted for the
    service, having water ballast, winches and
23  donkey-boiler with sufficient steam power, or if not equipped with donkey-boiler, then other power sufficient to run all
    the vessel's cargo gear winches at one and the same
24  time (and with full complement of officers, seamen, engineers and firemen for a vessel of her tonnage), throughout
    the period of this Charter vessel to be employed, in carrying lawful merchan-
25  dise, including petroleum or its products, in proper containers, excluding ....................................................
26  (vessel is not to be employed in the carriage of Live Stock, but Charterers are to have the privilege of shipping a small
    number on deck at their risk.
27  all necessary dunnage and other requirements to be for amount of Charterers). In such lawful trades, between safe port
    and/or ports in British North
28  America, and/or United States of America, and/or West Indies, and/or Central America, and/or Caribbean Sea, and/or
    Gulf of Mexico, and/or
29  Mexico, and/or South America ......................................................................... and/or Europe
30  and/or Africa, and/or Asia, and/or Australia, and/or Tasmania, and/or New Zealand, but excluding Magdalena River,
    River St. Lawrence between
31  October 31st and May 15th, Hudson Bay and all unsafe ports, also excluding, when out of season, White Sea, Black
    Sea and the Baltic.
32  Trading Exclusions - See Clause 61 ....................................................................................................
33  ................................................................................................................................................
34  ................................................................................................................................................
35  as the Charterers or their Agents shall direct, on the following conditions:
36      1. That the Owners shall provide and pay for all fresh water, lubricating oil and provisions, wages,
        including all officers and crews overtime and consular shipping and discharging fees of the Crew; shall pay for the
37  insurance of the vessel, also for the entire stores, deck, engine room and other necessary stores, including boiler water
    and maintain her class and keep

IUZ-HMX-2005  15:55  FROM  TRAVELINE LLC          TO  #          P.02



38  the vessel in a thoroughly efficient state in hull, machinery and equipment with all inspection certificates necessary
    to comply with all current requirements at ports of call for and during the service.
39      2. That whilst on hire the Charterers shall provide and pay for all the fuel except as otherwise agreed, Port
        Charges, Pilotages, where vessel's of similar size customarily take pilots, Agencies, for clearance and cargo
        work only (See Clause 49) Commissions
40  Consular Charges (except those pertaining to the Crew and flag), and all other usual expenses except those before
    stated, but when the vessel puts into
41  a port for cause for which Owners are responsible, then all such charges incurred shall be paid by the
    Owners. Fumigations ordered because of
42  illness of the crew to be for Owners account. Fumigations ordered because of cargoes carried at ports visited while
    vessel is employed under this
43  charter to be for Charterers account. All other fumigations to be for Charterers account after vessel has been on charter
    for a continuous period
44  of six months or more.
45  Charterers are to provide necessary dunnage and shifting boards, also any extra fittings requisite for a special trade
    or unusual cargo, but
46  Owners to allow them the use of any dunnage and shifting boards already aboard vessel if any. Charterers to have
    the privilege of using shifting boards.
47  for dunnage, they making good any damage thereto.
48      3. That the Charterers, at the port of delivery, and the Owners, at the port of re-delivery, shall take over
        and pay for all fuel remaining on
49  board the vessel at the current prices in the respective ports, the vessel to be delivered with not less than ............
    ...... tons and not more than ...............
50  ...............................  tons and to be re-delivered with not less than ............ tons and not more than ...............tons.
51      4. That the charterers shall pay for the use and hire of the said Vessel at the rate of US$ 12,500/- daily
        Including overtime, fresh water, tubes.  Hire payable every 15 days in advance in owners' nominated bank
        account,
52  ...............United States Currency per ton on vessels total deadweight carrying capacity, including bunkers and
53  stores, on ............................. summer freeboard, per Calendar Month, commencing on and from the time/day of her
    delivery, as aforesaid, and at
54  and after the same rate for any part of a day month, hire to continue until the hour of the day of her re-delivery in like
    good order and condition, ordinary
55  wear and tear excepted, to the Owners (unless lost) at dropping last outward sea pilot Suez/Japan range port in
    Charterers' option any time day or night Sundays/Fridays holidays included.  However if last disport prior to
    redelivery PG, then redelivery to be at passing Muscat outbound.
56  ........................................unless otherwise mutually agreed.  Charterers are to give Owners 20/15/10 days approximate and
    thereafter daily definite notices of redelivery along with port of re-delivery not less than .......................... Days
57  notice of vessels expected date of re-delivery, and probable port.  Charterers to keep Owners advised of the vessel's
    movement and notify Owners' immediately of unforeseen delays.
58      5. Payment of said hire to be made in San Clause 29 New-York in cash in United States Currency, every
    15 days semi-monthly in advance, and for the last half-month 15 days or
59  part of same the approximate amount of hire, and should same not cover the actual time, hire is to be paid for the
    balance day by day, as it becomes
60  due.  If so required by Owners, unless bank guarantee or deposit is made by the Charterers, otherwise failing the
    punctual and regular payment of the
61  hire, or bank guarantee, or on any breach of this Charter Party, the Owners shall be at liberty to withdraw the vessel
    from the service of the Char-
62  terers, without prejudice to any claim they (the Owners) may otherwise have on the Charterers.  Time to count from
    7 a.m. on the working day
63  following that on which written notice of readiness has been given to Charterers or their Agents before 4 p.m., but
    if required by Charterers, they
64  to have the privilege of using vessel at once, such time used to count as hire.
65  Cash for vessel's ordinary disbursements at any port may be advanced as required by the captain, by the Charterers
    or their Agents, subject
66  to 3.5% commission and such advances shall be deducted from the hire.  The Charterers, however, shall in no way
    be responsible for the application
67  of such advances.
68      6. That the cargo or cargoes be laden and/or discharged in any safe dock or at any safe wharf or safe place
    that Charterers or their Agents may
69  direct, provided the vessel can safely lie always afloat at any time of tide, except at such places where it is customary
    for similar size vessels to safely
70  lie aground.





LE HKMUSU  13:33  FROM  INDELINE LLL                    IU #                    P.93



71    7. That the whole reach of the Vessel's Hold, Decks, and usual places of loading (not more than she can reasonably stow and carry), also

72    accommodations for Supercargo, if carried, shall be at the Charterers' disposal, reserving only proper and sufficient space for Ship's officers, crew

73    tackle, apparel, furniture, provisions, stores and fuel. Charterers have the privilege of passengers as far as accommodation allow, Charterers

74    paying Owners ~~ Per day, per passenger for accommodations and meals. However, it is agreed that in case of any free at extra expenses are

75    incurred in the consequence of the carriage of passengers, Charterers are to bear such risk and expense. No passengers

76    8. That the Captain shall prosecute his voyages with the utmost despatch, and shall render all customary assistance with ship's crew and

77    boats. The Captain (although appointed by the Owners), shall be under the orders and directions of the Charterers as regards vessels employment and

78    agency; and Charterers are to load, stow, and trim tally, lash, unlash, secure and discharge the cargo at their expense under the supervision of the Captain, who is to sign Bills of Lading for

79    cargo as presented, in conformity with Mate's or Tally Clerk's receipts unless Charterers are making use of their authority to sign as per Clause 45.

80    9. That if the Charterers shall have reason to be dissatisfied with the conduct of the Captain, Officers, or Engineers, the Owners shall on

81    receiving particulars of the complaint, investigate the same, and, if necessary, make a change in the appointments.

82    10. That the Charterers shall have permission to appoint a Supercargo, who shall accompany the vessel and see that voyages are prosecuted

83    with the utmost despatch. He is to be furnished with free and available accommodation, and same fare as provided for Captain's table, Charterers paying at the

84    rate of $1.00 $15.00 per day. Owners to victual Pilots and Customs Officers, and also, when authorized by Charterers or their Agents, to victual Tally

85    Clerks, Stevedore's Foremen, etc., Charterers paying at the current rate per meal, for all such victualling as per Clause 58. Charterers to furnish Owners LOI as per Owners' P&I wordings prior to boarding super cargo*.

86    11. That the Charterers shall furnish the Captain from time to time with all requisite instructions and sailing directions, in writing, and the

87    Captain shall keep a full and correct Log of the voyage or voyages, which are to be patent to the Charterers or their Agents, and furnish the Char-

88    terers, their Agents or Supercargo, when required, with legible deck and engine a true copy of daily logs, in English Language, showing the course of the vessel and distance run and the con-

89    sumption of fuel.

90    12. That the Captain shall use diligence in caring for the ventilation of the cargo.

91    13. That the Charterers shall have the option of sublessing this charter for a further period of ...............................

92    .......................................................................................................................................................................................

93    on giving written notice thereof to the Owners or their Agents...............days previous to the expiration of the first named term, or any declared option.

94    That if required by Charterers, time not to commence before ......000f hours 15th December, 2004....and should vessel

95    not have given written notice of readiness on or before......2400 hours 27th December, 2004....but not later than 4 p.m Charterers or

96    their Agents to have the option of cancelling this Charter at any time not later than the day of vessel's readiness. Should the Owners anticipate that despite the exercise of due diligence, the vessel will not be ready to deliver by the cancelling date, they shall notify the Charterers thereof without delay stating the expected date of the vessel's readiness to deliver and asking whether the Charterers will exercise the option of cancelling the charter party, or agree to a new cancelling date. Such option must be declared by the Charterers within 48 running hours after the receipt of Owners' notice. If the Charterers do not exercise their option of cancelling then this charter shall be deemed to be amended such that the 7th (seventh) day after the new readiness date stated in the Owners' notification shall be the new cancelling date.

97    15. That in the event of the loss of time from deficiency and/or default of men or stores, fire, breakdown or damages to hull, machinery or equipment,

98    grounding, detention by average accidents to ship of cargo, drydocking for the purpose of examination or painting bottom. Or by any other cause

99    preventing the full working of the vessel, the payment of hire shall cease for the actual time hereby lost, and if upon the voyage the speed be reduced by

100   defect in or breakdown of any part of her hull, machinery or equipment, the actual time so lost, and the extra fuel consumed in consequence





ՎՀ-՜r-ᵒ՜৲ϿϿ  ᴀᴅ·Ⴍᴏ  ꜰʀᴏᴍ  ꜱʜʜᴇʟɪɴᴇ ʟʟʟ            ɪ̊ɪ  ͦ                            ᴘ.ᴇ4



10| thereof, and all directly related and supported with evidences extra expenses shall be deducted from the hire,
102        16. That should the Vessel be lost, money paid in advance and not earned (reckoning from the date of
        less or being last heard of) shall be

103 returned to the Charterers at once. The act of God, enemies, fire, restraint of Princes, Rulers and People, and all
        dangers and accidents of the seas

104 Rivers, Machinery, Bollers and Steam-Navigation, and errors of Navigation throughout this Charter Party, always
        mutually excepted.

105 The vessel shall have the liberty to sail with or without pilots, to tow and to be towed, to assist vessels in distress,
        and to deviate for the

106 purpose of saving life and property.

107        17. That should any dispute arise between Owners and the Charterers, the master in dispute shall be
        referred to three persons at London New-York;

108 one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any
        two of them, shall be final, and for

109 the purpose of enforcing any award, this agreement may be made a rule of the Court. The arbitrators shall be
        shipping commercial men conversant with shipping matters and members of L.M.A.A. (See clause 84),

110        18. That the Owners shall have a lien upon all cargoes, and all sub-freights and sub-hire for any amounts
        due under this Charter, including General Aver-

111 age contributions, and the Charterers to have a lien on the Ship for all monies paid in advance and not earned, and
        any overpaid hire of excess

112 deposit to be returned at once. Charterers will not suffer, nor permit to be continued, any lien or encumbrance
        incurred by them or their agents, which

113 might have priority over the title and interest of the owners in the vessel.

114        19. That all benefits and salvage shall be for Owners' and Charterers' equal benefit after deducting
        Owners' and Charterers' expenses and

115 Crews proportion. General Average shall be adjusted, stated and settled, according to Rules 1 to 15, inclusive,
        17 to 22, inclusive, and Rule F of

116 ~~York-Antwerp Rules 1974/1990 or any subsequent amendments in London, at such port or place in the United States~~
        ~~as may be selected by the carrier, and as to matters not provided for by those~~

117 ~~Rules, according to the laws and usages at the port of New York. In such adjustment disbursements in foreign~~
        ~~currencies shall be exchanged into~~

118 ~~United States money at the rate prevailing on the dates made and allowances for damage to cargo claimed in foreign~~
        ~~currency shall be converted at~~

119 ~~the rate prevailing on the last day of discharge at the port or place of final discharge of such damaged cargo from~~
        ~~the ship Average agreement of~~

120 ~~bond and such additional security, as may be required by the carrier, must be furnished before delivery of the goods.~~
        ~~Such cash deposit as the carrier~~

121 ~~or his agents may deem sufficient to additional security for the contribution of the goods and for any salvage and~~
        ~~special charges thereon, shall, if~~

122 ~~required, be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery. Such~~
        ~~deposit shall, at the option of the~~

123 ~~carrier, be payable in United States money and be remitted to the adjuster. When so remitted the deposit shall be~~
        ~~held in a special account at the~~

124 ~~place of adjustment in the name of the adjuster pending settlement of the General Average and refunds or credit~~
        ~~balances, if any, shall be paid in~~

125 ~~United States money.~~

126        In the event of accident, danger, damage, or disaster, before or after commencement of the voyage
        ~~resulting from any cause whatsoever,~~

127 ~~whether due to negligence or not for which, or for the consequence of which, the carrier is not responsible, by statute~~
        ~~contract or otherwise, the~~

128 ~~goods, the shipper and the consignee, jointly and severally shall contribute with the carrier in general average to the~~
        ~~payment of any sacrifices,~~

129 ~~losses, or expenses of a general average nature that may be made or incurred, and shall pay salvage and special~~
        ~~charges incurred in respect of the~~

130 ~~goods. If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully and in the same manner~~
        ~~as if such salving ship or~~

131 ~~ships belonged to strangers.~~

132 Provisions as to General Average in accordance with the above are to be included in all B/s of lading issued
        hereunder. It is understood that the charter hire is not to be contributed to General Average.

133        20. Fuel used by the vessel while off hire, also for sacking condensing water, or for grease and stoves to
        be agreed as to quantity, and the

134 cost of replacing same, to be allowed by Owners.

135        21. That as the vessel may be from time to time employed in tropical waters during the term of this Charter,



Vessel is to be docked etc

136 equipment, phone, bottom cleaned and painted whenever Charterers and Captain think necessary, at least once in
every six months, restering free

137 Time of last painting, and payment of the hire to be suspended until she is again in proper state for the service,

138 Vessel not to be drydocked while performing this Charter Party unless in case of emergency..............................

139 ......

140        22. Owners shall maintain the gear of the ship as fitted, providing gear (for all cranes derricks) capable of
handling lifts as specified in Clause 31. Owners also to provide on the vessel electric light for night work as on
board at all hatches simultaneously free of charge to the Charterers up to three tons, also

141 providing ropes, falls, slings and blocks. If vessel is fitted with derricks capable of handling heavier lifts, Owners are
to provide necessary gear for

142 same, otherwise equipment and gear for heavier lifts shall be for Charterers' account. Owners also to provide at
the vessel lanterns and etc for

143 night work, and excess to give use of electric light when so fitted, but any additional lights over those on board is to be
at Charterers' expense. The

144 Charterers to have the use of any gear on board the vessel.

145        23. Vessel to work night and day, Sundays and holidays included, if required by Charterers, and all cargo
gears to be at Charterers' disposal at all times simultaneously during loading and discharging operations
whether to be at Charterers' disposal during loading and discharging;

146 steamer to provide one winchman per hatch to work winches day and night, as required, Charterers agreeing to pay
officers, engineers, winchmen,

147 deck hands and donkeymen for overtime work done in accordance with the working hours and other stages in the
ship's articles. If the rules of the

148 port, or labor unions, prevent crew from driving winches, shore Winchmen to be paid by Charterers. In the event of
a disabled winch available, or

149 insufficient power to operate winches, Owners to pay for shore engine or engines, in lieu thereof, if required, and
pay any loss of time occasioned

150 thereby. See Clause 51

151        24. It is also mutually agreed that this Charter is subject to all the terms and provisions of and all the
exemptions from liability contained

152 in the Act of Congress of the United States, approved on the 13th day of February, 1893, and entitled "An Act relating
to Navigation of Vessels,

153 etc." In respect of all cargo shipped under this charter is or from the United States of America. It is further subject
to the following clauses, both

154 of which, are to be included in all bills of lading issued hereunder

155                                              U.S.A. Clause Paramount

156        This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the
United States, approved April

157        16, 1936, which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed
a surrender by the carrier of

158        any of its rights or immunities or an increase of any of its responsibilities or liabilities under said Act. If any
term of this bill of lading

159        be repugnant to said Act to any extent, such term shall be valid to that extent, but no further.

160                                              Both-to-Blame Collision Clause

161        If this ship comes into collision with another ship as a result of the negligence of the other ship and any act,
neglect or default of the

162        Master, Mariner, pilot or the servants of the Carrier in the navigation or in the management of the ship, the
owners of the goods carried

163        hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying ship or her owners
in so far as such loss

164        or liability represents loss of, or damage to, or any claim whatsoever of the owners of said goods, paid or
payable by the other or the

165        carrying ship or carrier to the owners of said goods and set off, recouped or recovered by the other or
non-carrying ship or her

166        set-off as part of their claim against the carrying ship or carrier.

167        25. The vessel shall not be required to enter any ice-bound port, or any port where lights or light ships have
been or are about to be with-

168 drawn by reason of ice, or where there is risk that in the ordinary course of things the vessel will not be able on
account of ice to safely enter the

169 port or to get out after having completed loading or discharging. See also Clause 51 paragraph 4

170        26. Nothing herein stated is to be construed as a demise of the vessel to the Time Charterers. The owners
to remain responsible for the





02-FFR-2005   15:57   FROM  ISGELLINE LLC                    10  #                          P.28

171  navigation of the vessel, insurance, crew, and all other matters, same as when trading for their own account.
172          27. A commission of 1.25 2.5 per cent is payable by the Vessel and Owners to DEEKAY SHIPPING
173  SERVICES, DUBAI & 1.25 per cent is payable to SUNHILL CHARTERING CO, LTD, SEOUL..............................
174  on hire earned and paid under this Charter, and also upon any continuation or extention of this Charter.
175          28. An address commission of 2.5 per cent payable to Charterers on the hire earned and paid under this
Charter.

Clauses 29 through 196 both inclusive, as attached, are to be fully incorporated in this Charter Party.

OWNERS:

CHARTERERS:
for and on behalf of Charterers
by their authority
for deekay shipping services

as brokers only.

P.O. Box: 32116
DUBAI - U.A.E.

## RIDER CLAUSES TO MV REGAL STAR / JANGHA MARINE CHARTER PARTY DATED 01ST DECEMBER 2004.

Clause 29. HIRE PAYMENT CLAUSE

Owners Bank Account Details for hire remittance:-

BENEFICIARY: THYMUS SHIPPING CORPORATION
US$ ACCOUNT NO. 04 48 13 22 55
ACCOUNT WITH: MASHREQ BANK, HOR AL ANZ BRANCH, DUBAI, U.A.E.
THROUGH: MASHREQ BANK, NEW YORK BRANCH, U.S.A.
A/C NO. 80 26 11 39 12 – CHIP UID 282631
FAVOURING: MASHREQ BANK, HEAD OFFICE, DUBAI, U.A.E.
REF: CHARTER HIRE – M/V. "REGAL STAR"/JANGHA MARINE CP DT 1/12/04

A. First 15 days Charter Hire + Bunker on delivery value + C/V/E to be paid within 3 banking days after vessel's delivery and Charterers receipt of owners hire invoice by fax/email.

B. Where there is any failure to make punctual and regular payment due to oversight or negligence or error or omission of Charterers' employees, bankers or agents or otherwise for any reason where there is absence of intention to fail to make payment as set out. Charterers shall be given by Owners 72 (seventy-two) hours written notice to rectify the failure, and where so rectified, the payment shall stand as punctual and regular payment. If there is failure of bank, Charterers to have 2 (two) working days grace to rectify the failure

C. In the event that the vessel is expected to be redelivered to the Owners prior to the expiry of the last 15 (fifteen) days period that would be covered by the next payment of hire. Charterers shall be entitled to effect payment of hire on the basis of the estimated time necessary to complete the service.

D. In the event that the Master requests delivery of cash money at the vessel, expenses involved in arranging and making such delivery of cash money to the vessel shall be borne by the Owners.

Clause 30.

Bunker on delivery to be IFO about 120 metric tons and MGO about 50 metric tons. Bunker on redelivery to be approximately same as on delivery. Charterers to pay for Bunker on Delivery quantities along with 1st charter hire. Bunker Prices: US$ 210/- per mt for IFO & US$ 440/- per mt for MGO. Bunker prices same on delivery / redelivery.

1/28

22-APR-2005  15:58  FROM  IRIDELINE LLC              TO  3                          P.02

## RIDER CLAUSES TO MV REGAL STAR / JANGHA MARINE CHARTER PARTY DATED 01ST DECEMBER 2004.

*The Charterers shall supply bunkers of a quality suitable for burning in the vessel's main engines and auxiliaries.*

*The Owners reserve their right to make claim against the charterers during the currency of the charter period and/or after completion of charter period for direct/relevant damage to the main engines and auxiliaries caused by the use of unsuitable fuels which to be proved to be supplied by charterers under this charter period. Further, if the fuels supplied prove unsuitable for burning in the vessels main engines and auxiliaries, the owners shall not be held responsible for any reduction in the vessel's speed performance and/or increased bunker consumption, nor for any time lost and any other consequences.*

*Clause 31. VESSEL'S DESCRIPTION / DETAILS.*

*1. Vessel's current name: "REGAL STAR"*
     *Previous name: "ST. AUBIN"*
*2. Flag: St. Vincent and the Grenadines*
*3. Call Sign: J 8 B 2 6 1 2*
     *Telex No. 437723610*
     *Mini-M Phone: 00873 763 450188*
     *Mini-M Fax: 00873 763 450190*
*4. Type: SDBC*
*5. Class: Lloyds Register/100A1 + LMC*
*6. Registration Number: 8201337*
*7. Year Built: 1984. Yard: GUANGZHOU SHIPYARD, GUANGZHOU, CHINA*
*8. G/NRT: INTL          : 12,539 / 6,143*
         *SUEZ          : 12,865.48 / 10,378.60*
         *PANAMA        : 13,035 / 9,628*
*9. LOA/LBP/Beam/Depth: 160 M / 150 M / 22 M / 12.50 M*
*10. Lakes Fitted: No.*
*11. Crew Nationality: Indians/Pakistanis/Bangladeshis/Indonesians*
     *Master's Name/Nationality: CAPT. I.K. JHA / Indian*
*12.                     DWT (MTS)        /     DRAFT*
     *SUMMER            18,411                 8.818*
     *TROPICAL          18,943                 8.999*
     *WINTER            17,847                 8.633*
*13. TPC/FWA: 29.95 / 199 MM*
*14. Constants: 250 MTS (EXCL Fresh Water)*
*15. Engine situated: AFT*
*16. Holds / Hatches: 5/5*
*17. Type of Hatch covers: Macgregor folding jackknife type*





2/23

02-APR-2003  13:50    FROM  INSHELINE LLC                  TO  #                          P.03

### RIDER CLAUSES TO MV REGAL STAR / JANGHA MARINE CHARTER PARTY DATED 01ˢᵀ DECEMBER 2004.

18. Cargo gear:
    Type: Cranes
    SWL: 14 MTS
    Location: 4 Cranes between #1&2, 2&3, 3&4, 4&5
    Outreach from s/side: 10 mtrs
    Combination: No.

19. Hold Capacities:    Grain / Bane:    23,865 CBM / 22,505 CBM
    No.1    4,180 / 3,966
    No.2    5,001 / 4,711
    No.3    5,002 / 4,672
    No.4    4,967 / 4,669
    No.5    4,712 / 4,484

20. Is vessel cargo batten fitted: No.

21. Is vessel Co2 fitted: yes.

22. Is vessel electrically ventilated: No.

23. Permissible loads per square meter:
    Tank top: Holds (1,3 & 5): 14.57 mt/m2. Holds (2&4): 8.90 mts/ m2
    Deck: 1.296 mt/m2
    Hatch cover: 1.70 mt/m2

24. Container fitted: No.

25. Hold/Hatch dimensions in meters:
    Holds:
    Length / Width – f./a / Height
    1 20.4 m / A 20 m F 10 m /
    2 21.6 m / 20 m
    3 21.6 m / 20 m
    4 21.6 m / 20 m
    5 21.5 m / A 14 m F 20 m
    Hatches:
    (1) 14 m x 11.20 m (2,3,4 & 5) 16 m x 11.20 m

26. Hatch covers height from tank top: 12.8 mtrs
    from main deck: 1.5 mtrs

27. Australian Hold Ladders: yes

28. Any obstructions in Holds: No

29. Ballast capacity in D/B tanks: 2924.4 MT
    W/tanks: 2252.7 MT
    Holds:    5127.55 MT

30. Speed & Consumption:
    Abt 11.5 Kts on abt 19.00 MTs IFO 180 CST + 2.50 MTS MGO – at Sea
    In Port Idle: abt 1.00 MT IFO 180 CST + abt 1.00 MT MGO
    Working: abt 1.00 MT IFO 180 CST + abt 2.50 MT MGO
    Speed/Consumption is described in Fair weather not exceeding Beaufort
    Scale 3, swell not exceeding Douglas Sea State 3 and no adverse currents.





3/28

OCT-KT-2005  15:59  FROM  TRADELINE LLC                    TO  9                    P.10

## RIDER CLAUSES TO MV REGAL STAR / JANGHA MARINE
## CHARTER PARTY DATED 01ˢᵀ DECEMBER 2004.

Vessel consumes IFO in bad weather, when manoeuvering, harbour/river
Steaming, in restricted waters and while slow steaming.

31. Fuel Tank Capacities basis 90 pct:
IFO 552 MT / 563.36 M3
MGO 120 MT / 144.48 M3
(capacities in MTS may slightly vary depending on the density)

32. F.W. Capacity: 321 MT
Consumption: 8 MT/PD

33. Distance from hatch opening to shipside: 5.4 mtrs
For'd b/head: 2 mtrs
After b/head: 3 mtrs

34. Distance from:
Bow to forward end of No.1 hatch: 17.6 mtrs
Stern to after end of last hatch: 39 mtrs

35. Last SS: 11/1999
DD passed: 02/2004

36. Is vessel fitted with stanchions to carry logs on deck and has full
compliment of deck lashing equipment: No.

37. Has the vessel traded to C.I.S Pacific ports in the last 12 months: No.

38. Can vessel exchange ballast water at sea: Yes

39. Are vessel's holds suitable for grab discharge: Yes
Grabs on board: No
Are vessel's tanktop/'decks suitable for use of fork lifts/bulldozers with
Rubber tyre/tracks but always in accordance with the deck strengths: Yes

40. Is vessel strengthened for heavy cargoes and able to do alternate hold
loading: Yes

41. P&I club: Intercoastal Shipowners' P&I BV, Rotterdam

42. H&M underwriters: Arab Orient Insurance Co., Dubai, U.A.E.

43. H&M value: US$ 4.00 Million

44. Head Owners: THYMUS SHIPPING CORP, MONROVIA, LIBERIA
Managers: TRADELINE, DUBAI, U.A.E.
Disponent Owners: NIL

Details all about.

Owners warrant that: -
- Vessel is a single deck bulk carrier suitable for carrying Charterers
  intended cargoes in all holds
- Vessel will have on board all valid trading certificates for the duration of
  this charter party
- Owners guarantee vessel is fully P&I covered with Intercoastal
  Shipowners P&I BV, Rotterdam and Owners guarantee vessel's class is a
  member of IACS and will remain so throughout the duration of this Charter
  Party





4/22

## RIDER CLAUSES TO MV REGAL STAR / JANGHA MARINE CHARTER PARTY DATED 01ST DECEMBER 2004.

- *Owners guarantee vessel is fully fitted for loading cargo(es) permitted to be carried in the Charter Party.*
- *Vessel will be fully classed throughout the duration of this Charter Party. Vessel's class is: Lloyds Register/100A1+LMC*
- *The Vessel's gears are tested/certified to work with lifts of minimum capacity as described by the Owners & serving all holds*
- *Vessel is not blacklisted by Arab authorities*
- *Vessel is in all respects eligible for trading to the ports, places or countries specified in charter party and that at all necessary times the vessel and/or owners shall have valid certificates, records or other documents required for such trade*
- *Vessel will be fully hull & machinery insured for the duration of the charter party voyage*
- *Vessel is not blacklisted/boycotted or arrested due to vessel's flag/ownership/crew employment/past trading in countries under this charter party.*
- *Vessel's holds/hatches are free of walkways/centerline bulk heads/iron rods or any other obstructions*
- *Vessel is free of encumbrances and maritime liens*
- *Vessel is covered by ITF or equivalent*
- *Vessel is fully suitable for grab loading/discharging*
- *Vessel shall not change ownership and/or class without charterers' written consent*
- *Vessel will not be scheduled for break up or sold for scrap during this charter. Charterers are granted a maritime lien on the vessel and are entitled to deduct from any sums due to the owners for all damages arising from such breach of this specific warranty.*
- *Vessel & Owners are fully ISPS compliant*

Clause 32.

*Charterers to have the benefit of any return insurance premium receivable by Owners from their Underwriters, as and when received from Underwriters, by reason of the vessel being in port for a minimum period of 30 (thirty) days if on full hire for this period and pro-rata for the time actually on hire.*

Clause 33.

*On-hire and off-hire surveys for bunker and condition to be held jointly by Owners and Charterers. The 'Cost' to be equally shared but in Owners time at delivery port or first port of call and Charterers time at redelivery port. No time to be deducted from hire unless on-hire survey hindering normal loading operation.*





5/28

## RIDER CLAUSES TO MV REGAL STAR / JANGHA MARINE CHARTER PARTY DATED 01ST DECEMBER 2004,

### Clause 34.

Both parties to have the option of canceling this Charter Party provided no cargo on board with reasonable notice, if war breaks out between any two of the following countries to such an extent as to render continuation of the Charter Party impossible: U.S.A., France, Republic of Korea and India and Pakistan.

### Clause 35.

Should the vessel put back whilst on voyage by reason of any accident or breakdown or deviation upon the course of voyage caused by sickness of or any accident to the crew or any person on board the vessel other than person travelling at the request of Charterers, or by reason of the refusal of the Captain or crew to perform their duties, the hire shall be suspended from the actual time of putting back until she is again in the same position or regain the line of voyage, whichever is the shorter distance, and voyage resumed there from. Bunkers consumed during the period shall be for Owners' account.

### Clause 36

Any damage caused by Stevedores during the currency of this charter shall be reported by the Master to the Charterers or their Agents, in writing, within 24 hours of the occurrence and in case of hidden damage, same to be reported as soon as discovered, but always latest 24 hours after departure from last discharging port of the voyage of occurrence and such damage shall have been entered in vessel's log books. The master shall use his best efforts to obtain written acknowledgement by responsible parties causing damage unless damage should have been made good in the meantime. Stevedores damaging affecting sea-worthiness/class or the proper working of the vessel shall be repaired by the Charterers in their time prior vessel's departure. If stevedore damage does not affect seaworthiness/class of the vessel then the damage occurred to be repaired in concurrence with Owners repairs which to be ascertained by mutually agreed surveyor and at Charterers time and costs. Said damages to be assessed before vessel's departure from the port of redelivery and the costs to be agreed between Master/Owners/Charterers. In any case the Charterers shall pay for stevedore damage whether or not payment has been made by stevedores to Charterers if Owners undertake to accept redelivery with liabilities established.

### Clause 37

Vessel to be delivered with valid deratization or deratization exemption certificate on board, and if this does not cover the whole period of Time Charter and fumigation is necessary, cost of same and detention to be for Owners' account,





6/28

UE THR-EUUJ  18.EU   FRUM  IRHUSLINE LLC                  !U  4                           P.13

## RIDER CLAUSES TO MV REGAL STAR / JANGHA MARINE CHARTER PARTY DATED 01ST DECEMBER 2004.

*except as provided for in Clause No.2.*

*Clause 38*

*Owners and Master to undertake best efforts to co-operate with Charterers for best stowage of cargo. Owners and Master also undertake to cooperate with Charterers in taking necessary steps for cargo fumigation. If necessary at Charterers' time, risk and expense. If hospitalization and hotel accommodation is required for the crew due to fumigation, same to be for Charterers account.*

*Clause 39*

*Vessel to possess the necessary certificates to comply with safety and health regulations and current requirements at all ports of call.*

*Clause 40*

*Charterers to have the option of holding a superficial inspection of the vessel at any time. Owners or Master giving every facility to carry it out.*

*Clause 41*

*BIMCO STANDARD WAR RISKS CLAUSE FOR TIME CHARTERS, 1993 Code Name: "CONWARTIME 1993"*

*(1) For the purpose of this Clause, the words*

> *(a) "Owners" shall include the ship owners, bareboat charterers, disponent owners, managers or other operators who are charged with the management of the Vessel, and the Master; and*

> *(b) "War Risks" shall include any war (whether actual or threatened), act of war, civil war, hostilities, revolution, rebellion, civil commotion, warlike operations, the laying of mines (whether actual or reported), acts or piracy, acts of terrorists, acts of hostility or malicious damage, blockades (whether imposed against all vessels or imposed selectively against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever), by any person, body, terrorist or political group, or the Government of any state whatsoever, which, in the reasonable judgement of the Master and/or the Owners, may be dangerous or are likely to be or to become dangerous to the Vessel, her cargo, crew or other persons on board the vessel.*





7/28

02-APR-2005  16:02  FROM  RAHUELINE LLC          TO  #          P.14

## RIDER CLAUSES TO MV REGAL STAR / JANGHA MARINE CHARTER PARTY DATED 01ˢᵗ DECEMBER 2004.

(2) The Vessel, unless the written consent of the Owners be first obtained, shall not be ordered to or required to continue to or through, any port, place, area or zone (whether of land or sea), or any waterway or canal, where it appears that the Vessel, her cargo, crew or other persons on board the Vessel, in the reasonable judgement of the Master and/or the Owners, may be, or are likely to be, exposed to War Risks.

Should the Vessel be within any such place as aforesaid, which only becomes dangerous, or is likely to be or to become dangerous, after her entry into it, she shall be at liberty to leave it.

(3) The Vessel shall not be required to load contraband cargo, or to pass through any blockade, whether such blockade be imposed on all vessels, or is imposed selectively in any way whatsoever against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever, or to proceed to an area where she shall be subject, or is likely to be subject to a belligerents right of search and/or confiscation.

(4) (a) The Owners may effect war risks insurance in respect of the Hull and Machinery of the Vessel and their other interests (including, but not limited to, loss of earnings and detention, the crew and their Protection and Indemnity Risks), and the premiums and/or calls therefore shall be for their account.

(b) If the Underwriters of such insurance should require payment of premiums and/or calls because, pursuant to the Charterers' orders, the Vessel is within, or is due to enter and remain within, any area or areas which are specified by such Underwriters as being subject to additional premiums because of War Risks, then such premiums and/or calls shall be reimbursed by the Charterers to the Owners upon request of Owners or latest on or entering War risk area.

(5) If the Owners become liable under the terms of employment to pay to the crew any bonus or additional wages in respect of sailing into an area which is dangerous in the manner defined by the said terms, then such bonus or additional wages shall be reimbursed to the Owners by the Charterers upon request of Owners or latest on or entering War risk area.

(6) The Vessel shall have liberty: -

(a) To comply with all orders, directions, recommendations or advice as to departure, arrival, routes, sailing in convoy, ports of call, stoppages, destinations, discharge of cargo, delivery, or in any other way whatsoever, which are given by the Government of the Nation under





8/28

## RIDER CLAUSES TO MV REGAL STAR / JANGHA MARINE CHARTER PARTY DATED 01st DECEMBER 2004.

whose flag the Vessel sails, or other Government to whose laws the Owners are subject, or any other Government body or group whatsoever acting with the power to compel compliance with their orders or directions;

(b) To comply with the order, directions or recommendations of any war risks underwriters who have the authority to give the same under the terms of war risks insurance;

(c) To comply with the terms of any resolution of the Security Council of the United Nations, any directives of the European Community, the effective orders of any other Supranational body which has the right to issue and give the same, and with national laws aimed at enforcing the same to which the Owners are subject, and to obey the orders and directions of those who are charged with their enforcement;

(d) To divert and discharge at any other port any cargo or part thereof which may render the Vessel liable to confiscation as a contraband carrier;

(e) To divert and call at any other port in change the crew or any part thereof or other persons on board the Vessel when there is reason to believe that they may be subject to internment, imprisonment or other sanctions.

(7) If in accordance with their rights under the foregoing provisions of this Clause, the Owners shall refuse to proceed to the loading or discharging ports, or any one or more of them, they shall immediately inform the Charterers. No cargo shall be discharged at any alternative port without first giving the Charterers notice of the Owners' intention to do so and requesting them to nominate a safe port for such discharge. Failing such nomination by the Charterers within 48 hours of the receipt of such notice and request, the Owners may discharge the cargo at any safe port of their own choice.

(8) If in compliance with any of the provisions of sub-clauses (2) to (7) of this Clause anything is done or not done, such shall not be deemed a deviation, but shall be considered as due fulfillment of this Charter party.

Clause 42

Vessel's holds on delivery to be clean/swept/washed down by fresh water and dried up so as to receive Charterers intended cargo in all respects, free of salts, rust scales and previous cargo residue, to the satisfaction of Charterers independent surveyor. If vessel fails to pass hold inspection as above the vessel





9/28

## RIDER CLAUSES TO MV REGAL STAR / JANGHA MARINE CHARTER PARTY DATED 01ˢᵗ DECEMBER 2004.

should be placed off-hire from the time of failure till the vessel pass the same inspection again. Time to count pro rata for the number of holds accepted if Charterers elect to use space of accepted holds for loading before passing of all holds by the surveyors.

Vessel to be redelivered with clean swept holds but Charterers to have the option to redeliver the vessel without cleaning holds with Charterers paying lump sum US$ 3,250/- including removal of debris/dunnage/lashing materials etc.

Clause 43

Owners advise Master's name. Owners to give advance notice to Charterers with full name of new Master when Owners decide to change Master.

Clause 44

Charterers undertake to keep Owners and Master informed during the period as regards the itinerary of the vessel and the name of their agents at port of call.

Clause 45

Charterers agents at the various ports of call to take care of routine vessel's business including crew changes (Owners agree to pay Charterers' agents the specific fee for the crew change) and medical attention, water supply, delivery of cash without charging Owners any agency fee unless clearly agreed for the service rendered, but only the actual cost of any services and actual expenses incurred. For important matters, Owners to appoint their own agents.

Clause 46

BILLS OF LADING:

If required by the charterers, master to authorize charterers or their agents to sign on his behalf, Bills of Lading in strict conformity with the mates' receipts without prejudice to this charter party. Charterers to be fully responsible and indemnify the Owners in case of any omissions and/or discrepancies between Bills of Lading and Mates receipts. No liner/no through bills of lading to be issued.




10/28

22-MAR-2005   18:03   FROM  TRADELINE LLC                    TO  #                        P.17

## RIDER CLAUSES TO MV REGAL STAR / JANGHA MARINE CHARTER PARTY DATED 01ST DECEMBER 2004.

### L.O.I. CLAUSE:

If original bills of lading unavailable at disport, entire cargoes should be released against charterers' single letter of indemnity in owners p&I. club wordings, with only Charterers' signature. Clear copies of relevant bills of lading to be attached to the Letter of Indemnity.

### Clause 47

Owners warrant that vessel's hatch covers are to be watertight all throughout this Charter period and if any hatch covers found defective, same to be rectified at Owners time and expenses to Charterers satisfaction. Charterers also have the right to carry out hose test on all hatches at any time during this charter.

### Clause 48

### Owners' P & I club: S.M.U.A.
Charterers to have the benefit of Owners' P & I Club so far as the club rules permit. Not withstanding anything that may be contained in this Charter Party, to the contrary, it is expressly agreed that the Owners shall remain responsible for, and indemnify the Charterers against all claims arising in connection with loss of life, personal injury or similar claims where Owners are liable.

### Clause 49

If the vessel is off-hire for a consecutive period of 20 (twenty) days, Charterers have the right to cancel this Charter Party without any further obligations under this contract on the part of the Charterers, provided no cargo remaining on board.

### Clause 50

Any taxes/dues/levies and charges on vessel/flag and/or Charter hire a/o freight(s) and/or sub hires and/or sub-freights and/or bunkers/lubes and/or provisions, arising out of cargoes carried and/or port(s)/country(ies) visited under this charter, except those levied by the Government authorities of the Country of Owners' domicile or the vessel's flag, to be for the Charterers' account.

### Clause 51

Cargo gear to be in a fully efficient state as designed during the currency of time charter.



11/28

02-144-2005  16:03  FROM  THUBELINE LLC                    TD  #                    P.18

## RIDER CLAUSES TO MV REGAL STAR / JANGHA MARINE CHARTER PARTY DATED 01ST DECEMBER 2004.

In the event of breakdown of cargo gears by reason of disablement of insufficient power or otherwise, the hire to be reduced pro-rata for the actual period of such insufficiency in proportion to actual working number of cargo gears.

If Charterers elect to continue work on hatch or hatches affected by breakdown by hiring shore appliances, Owners are to pay for shore appliances - always after obtaining Owners prior approval of the cost - but in such case Charterers are to pay full hire for all time shore appliances are working. Any stevedoring and/or labour charges additionally accruing due to breakdown of vessel's equipment including costs of standby stevedore labour to be for Owners' account.

### Clause 52

In case of loss of time due to boycott, picket at any port or place by the shore and/or port labour and/or the tug boat(s) and/or the pilot(s) and/or by Governmental Authority directly attributable to Ownership, vessel then to be off-hire for any time lost thereby and the cost of bunkers consumed during the period to be for Owners' account, provided vessel is not able to render her services.

### Clause 53

Cargo claims as between the Owners and the Charterers shall be settled in accordance with the International Club New York Produce Exchange Agreement of February 1970, as amended 1996, or any subsequent modification or replacement thereof.

### Clause 54

Any delay, expenses and/or fines incurred on account of smuggling, if caused by Master, Officers and/or crew to be for Owners' account. If caused by Charterers or their agents or representatives to be for Charterers' account.

### Clause 55

All negotiations and eventual fixture to be kept private and confidential.

### Clause 56

Owners to allow Charterers to discharge cargoes without presentation of original Bills of Lading by providing with Letter of Indemnity to be signed by Charterers only which wording to be provided by Owners P & I club together with fax copy of Bills of Lading.

12/28

DE ALR-2283  16:04   FROM  IRMELINE LLC              TO  4              P.39

### <u>RIDER CLAUSES TO MV REGAL STAR / JANGHA MARINE CHARTER PARTY DATED 01ST DECEMBER 2004.</u>

Clause 57

Owners warrant that tank top to be flat except sloped parts on sides and suitable for grab discharging/bull dozer operation subject to tank top strength.   No obstructers/pillars in vessel's holds.

Clause 58

Owners or Master to cable to Charterers expected time of delivery and expected quantities of IFO and MDO remaining on board at time of delivery upon fixing

Clause 59

For the purpose of computing hire payment, the time on delivery/redelivery to be based on G.M.T. both ends, laydays/canceling to be local time basis.

Clause 60

BIMCO Standard Law & Arbitration Clause 1998 – English Law, London Arbitration

This contract shall be governed by and construed in accordance with English law and any dispute arising out of or in connection with this Contract shall be referred to arbitration in London in accordance with the Arbitration Act 1996 or any statutory modification or re-enactment thereof save to the extent necessary to give effect to the provisions of this Clause.

The arbitration shall be conducted in accordance with the London Maritime Arbitrators Association (LMAA) Terms current at the time when the arbitration proceedings are commenced.

The reference shall be to three arbitrators. A party wishing to refer a dispute to arbitration shall appoint its arbitrator and send notice of such appointment in writing to the other party requiring the other party to appoint its own arbitrator within 14 calendar days of that notice and stating that it will appoint its arbitrator as sole arbitrator unless the other party appoints its own arbitrator and gives notice that it has done so within the 14 days specified. If the other party does not appoint its own arbitrator and give notice that it has done so within the 14 days specified, the party referring a dispute to arbitration may, without the requirement of any farther prior notice to the other party, appoint its arbitrator as sole arbitrator and shall advise the other party accordingly. The aware of a sole




13/28

UZ-FEB-2003  10-04   FROM  IMMIELINE LLL              IU #              P.20

## RIDER CLAUSES TO MV REGAL STAR / JANGHA MARINE CHARTER PARTY DATED 01ST DECEMBER 2004.

arbitrator shall be binding on both parties as if he had been appointed by agreement.

Nothing herein shall prevent the parties agreeing in writing to vary these provisions to provide for the appointment of a sole arbitrator

Not withstanding anything to the contrary in this Charter Party, the parties agree that all arbitration where the amount in issue in the dispute(s) is less than USD 50,000 shall be conducted according to the small claims procedure 1989 (S.C.P) of the London Maritime Arbitrators Association (as amended from time to time)

Clause 81

CARGO EXCLUSIONS:

Vessel to be employed in carrying lawful harmless merchandise only, always excluding all cargoes of corrosive nature, logs, pitch, salt, nitrate, livestock, explosives (black powder blasting caps, bombs, dynamite, int, arms, detonators, ammonium nitrate, ammunitions, nuclear material, acids or any other dangerous, HBI, DRI, injurious, inflammable goods, asphalt, tar, radioactive material, calcium carbide, cement in bulk, creosoted goods, resin, ferrosilicon, naphtha, copra, calcium hyphochorite, kryptonite, hides, sunflower expellers, bones, charcoal in gunny bags, livestocks, locomotives, logs, solutions, quebcracho extracts, sponge iron, direct reduced iron, hot briquetted iron, pesticides, motor spirit, gasoline, cottonseed expellers, fishmeal, fluorspar, motor spirit, nitrate of soda, oil cakes, oily pieces, oily expellers, petroleum or petroleum products in bulk (except ordinary calcined or green petcoke), sponge iron, nuclear products and/or their wastes, yachts, zinc ashes, radio-isotopes. Resins, sulphur, sulphate in bulk, sodium sulphate, turnings, motor blocks, oily scrap, spent, exide, products containing phenol and cargoes for which vessel required appendix B certificate.

Charterers warrant that concentrates shipped under this charter party are non-hazardous and non-dangerous, for carriage according to applicable safety regulations including IMO code(s). The cargoes are to be loaded, stowed, trimmed, discharged strictly in accordance with IMO and local regulations/department of trade regulations and any other government regulations at ports of call or places of transit. Moisture content of the cargoes to be within safe limits for sea transport. Certificate(s) relating to moisture content of the concentrates to be handed to the master prior to loading.

All cargoes carried under this charter to be loaded, stowed, carried and discharged in accordance with recommendations of IMO code of safe practice in



14/26

## RIDER CLAUSES TO MV REGAL STAR / JANGHA MARINE
## CHARTER PARTY DATED 01ST DECEMBER 2004.

accordance with IMO/local authority recommendations for such cargo and to
Master's entire satisfaction.

In case of loading petroleum coke:-
Charterers to carry cargo petroleum coke (whether it be full or part cargo) subject
to the following conditions:-
  1) The petroleum coke mentioned herein is limited to the type of non-
     hazardous/non-dangerous green delayed type and/or calcined type.
  2) If charterers exercise such option, charterers undertake to use as few
     holds as possible provided vessel's stability trip and stress permitting.
  3) Such cargo to be loaded/stowed/trimmed/discharged strictly according to
     latest IMO and/or any other latest regulations/rules applicable to such
     cargo.
  4) Should any additional/special wash down of holds before loading be
     reasonably recommended/proposed/required by the Master or Shippers,
     charterers to undertake to arrange the same at their expenses, time and
     risks. After discharging of such cargo, charterers to arrange at their
     expense, time and risk any additional/special wash down of holds
     including using chemicals as Master reasonably considers necessary.
     Charterers may request the vessel's crew to perform above services,
     paying lumpsum US$ 500/- per hold, provided local regulations permit.
  5) Any extra expenses resulting therefrom/incurred thereby and any
     detention through any of the above causes to be for charterers' account.
  6) Petcoke not to be carried in consecutive voyages.
  7) Petcoke not to be the last cargo prior to redelivery.

In case of loading scrap:-
Scrap to be shredded and/or HMS 1 and 2 or other scrap or similar/better quality,
but in any case not worse quality, always excluding motor blocks and turnings
and oil scrap. First layer of scrap in each hold not to be released until touching
tank top. Thereafter sufficient loads of cargo to be lowered as close as possible
to the bottom of each hold, so as to provide a proper flooring and cushion to
Master's satisfaction. Plates and structurals, if any, always to be lowered into
vessel's holds. Charterers and/or their servants to do due diligence when
loading and discharging in order to prevent pieces of scrap from falling on
vessel/vessel's deck. Charterers to arrange, at their time and expenses, holds
survey before loading and after discharging to ascertain damages to the holds.
Should electromagnets be used during loading and discharging, then the time,
risk and expenses for recalibrating vessel's compass (if necessary) to be for
Charterers' account. Only one voyage with scrap allowed during the entire
duration of c/p and scrap not to be the last cargo prior to redelivery.

15/28

## RIDER CLAUSES TO MV REGAL STAR / JANGHA MARINE CHARTER PARTY DATED 01ˢᵀ DECEMBER 2004.

*P&I nuclear clause:*
*Notwithstanding any other provisions contained in this charter, it is agreed that nuclear fuels or radioactive products or waste are specifically excluded from the cargo permitted to loaded or carried under this charter party.*

*Heavy coils:-*
*If required by charterers, owners confirm that heavy coils may be loaded line for line in as many tiers as is necessary but always within vessel's permissible tanktop strengths and to Master's satisfaction with regards to stress, trim and stability requirements. Coils to be loaded in accordance with IMO and in compliance with local load/discharge port authorities regulations.*

*Vessel not to be called upon to stow by use of "Block California Stow Method".*

*Bulk pig iron:*
*In case of loading pig iron, first few layers of cargo in each hold not to be released until touching tank top. Thereafter, sufficient loads of cargo to be lowered as close as possible to the bottom of each hold, so as to provide a proper flooting and cushion to master's satisfaction. Charterers and/or their servants to exercise due diligence when loading and discharging such cargoes to prevent damages to the vessel. Should electromagnets be used during loading and discharging, then the time, risk and expenses for recalibrating vessel's compass (if necessary) to be for Charterers' account.*

*Embargoes:-*
*The charterers undertake not to load cargoes for a port where there is an existing embargo or boycott against the flag and nationality of this vessel which in existence prior to Charterers' declared intention to call such port. Charterers trading of the vessel not to expose owners to blacklisting.*

*TRADE EXCLUSIONS:*
*Vessel to be employed in lawful trade for the carriage of intention cargoes only always afloat, always accessible, always within institute warranty limits via safe ports, safe berths, safe anchorages, within suez-japan range, where the vessel can safely lie always afloat, but always specifically excluding Albania, Angola (including cabinda), Australia, New Zealand, Burma, Cambodia, Cuba, CIS pacific ports, East African Countries, West African Countries, Ethiopia, Haiti, Indian Coastal Trading, Israel and its controlled territories, Iraq, Kampuchea, Lebanon, Libya (including Gulf of Sidera, Sirte), Liberia, Montenegro, Namibia, Nicaragua, Nigeria, Orinoco River, North Korea, Serbia, Somalia, Syria, Turkish occupied Cyprus, Yemen, Sudan, USA, Canada, Zaire, all former Yugoslavia States (including Slovenia and Croatia), and any Countries against whom U.S./U.N sanctions may apply or may be imposed from time-to-time and all states*

16/28

02-APR-2003  15:00   FROM  IRHODELINE LLC                      ID #                      P.23

## RIDER CLAUSES TO MV REGAL STAR / JANGHA MARINE CHARTER PARTY DATED 01ST DECEMBER 2004.

banned under the National Authorities under which vessel is registered and all war and/or war like zones. Orders of Owners war risk underwriters always to be followed.

The vessel not to be ordered to nor bound to enter any ice-bound place or any place where lights, lightships, marks and buoys are likely to be withdrawn by reasons of ice on vessel's arrival or where the risk is at ordinarily the vessel will not be able on account of ice to reach the place or to get out after having completed loading or discharging. The vessel not to bo obliged to force ice nor to follow ice-breakers when inwards bound. If on account of ice the Master considers it dangerous to remain at the loading or discharging place for fear of the vessel being frozen in and/or damaged, he has the liberty to sail to a convenient open place and await the Charterers' fresh instructions. Detention through any of the above causes to be for the Charterers' account. Conwartime 1993, unamended to apply. All war risk premium/crew war bonus/blocking and strapping to Charterers' account.

Charterers not to trade vessel directly between People's Republic of China to Taiwan and Vice Versa.

Clause 62

Gangway watchmen, if any, at loading and/or discharging ports to be for account of party ordering same. If gangway watchmen are compulsory according to local regulations, same to be for Charterers account.

Clause 63

The vessel to have the liberty of using diesel oil when entering and leaving port and for maneuvering in shallow/narrow waters.

Clause 64

With regards to oil pollution, Owners confirm that vessel will have valid IOPP certificate on board.

Clause 65

Should the vessel be captured or seized or detained or arrested by any authority or by any legal process during the currency of this Charter Party, the payment of hire shall be suspended until the time of her release, unless such capture or seizure or detention or arrest is occasioned by any personal act or omission or default of the Charterers or their agents. Any expenses incurred by and/or during



17/28

## RIDER CLAUSES TO MV REGAL STAR / JANGHA MARINE CHARTER PARTY DATED 01ST DECEMBER 2004.

the above capture or seizure or detention or arrest shall be for Owners' account provided Charterers' use of the vessel is actually prevented, unless caused by

Charterers or their agents, in which case to be for Charterers' account and vessel to remain on full hire.

### Clause 66

Charterers to ensure bunker suppliers cooperate with ship's staff and sign sample bottles.

### Clause 67

Opening and closing of hatches to be always done by crew members free of expense to Charterers, if permitted by local port regulations provided available at the time and in case any delay and additional expenses caused by defect of hatch opening/closing to be for Owners' account.

### Clause 68

Owners confirm vessel is not blacklisted in ports of call under this charter party.

### Clause 69

Charterers to pay Owners lump sum US$ 1,000/- per month or pro-rata for covering costs of cable/entertainment/victualling.

### Clause 70 DOUBLE BANKING CLAUSE

The Charterers shall have the right, where and when it is customary and safe for vessels of similar size and type to do so, to order the Vessel to go, lie or remain alongside another vessel or vessels of any size or description whatsoever or to order such vessels to come and remain alongside at such safe dock, wharf, anchorage or other place for transshipment, loading or discharging of cargo and/or bunkering.

(a) The Charterers shall pay for and provide such assistance and equipment as may be required to enable any of the operations mentioned in this clause safely to be completed and shall give the Owners such advance notice as they reasonably can of the details of any such operations.





18/28

OZ ri K ∂∂∂∂   10·07   FROM   IRIEUELINE LLC           TU  ⌐           P.2b

### RIDER CLAUSES TO MV REGAL STAR / JANGHA MARINE CHARTER PARTY DATED 01ST DECEMBER 2004.

*(b) Without prejudice to the generality of the Charterers' rights under (a) and (b), it is expressly agreed that the Master shall have the right to refuse to allow the Vessel to perform as provided in (a) and (b) if in his reasonable opinion it is not safe so to do.*

*(c) The Owners shall be entitled to insure any deductible under the Vessel's hull policy and the Charterers shall reimburse the Owners any additional premium(s) required by the Vessel's Underwriters and/or the cost of insuring any deductible under the Vessel's hull policy.*

*(d) The Charterers shall further indemnify the Owners for any costs, damage and liabilities resulting from such operation. The Vessel shall remain on hire for any time lost including periods for repairs as a result of such operation.*

Clause 71

*Normal quarantine time and expenses for vessel entering port(s) to be for Charterers' account. But any time of detention and expenses for quarantine due to pestilence, illness etc. of Master, Officers or crew to be for Owners' account.*

Clause 72

*Owners to warrant that vessel is single deck self-trimming type bulk carrier, suitable for carrying full and homogeneous (single grade) cargoes of grain in all holds without requiring any grain fitting/bagging/strapping/securing and additional trimming for untrimmed ends and vessel to have on board valid grain loading booklet in accordance with SOLAS 1974 regulations and IMCO resolution a 264(viii) as adapted in 1974 and any subsequent amendments, furthermore, vessel to have on board approved table of heeling moments for filled holds-untrimmed ends, in accordance with IMCO BC XIX/INF 4.*

*The cargo must be loaded as per the grain-loading booklet. All expenses incurred due to those documents not being on board are to be for the Owners' account. Master to cooperate best to load cargo with natural segregation of cargo when preliminary stowage is presented.*

Clause 73

*Charterers guarantee vessel to remain in seaworthy trim for shifting between loading port(s) and berth(s) and between discharging port(s) and berth(s) to Master's satisfaction. Master shall not request bagging/strapping unreasonably without any clear reason related to vessel's seaworthy and trim.*





19/28

## RIDER CLAUSES TO MV REGAL STAR / JANGHA MARINE CHARTER PARTY DATED 01ST DECEMBER 2004.

Clause 74

Vessel has never called/traded C.I.S. Pacific ports in last 12 months.

Clause 75

Owners guarantee that the vessel can safely undertake voyage in ballast without carrying solid ballast but with fuel and water ballast only.

Clause 76

Charterers have the option of supplying ocean routes advice to master during voyage(s) at Charterers' expense. The Master shall comply with reporting procedures. However, the master to remain responsible for the safe navigation and choice of route. The vessel shall be capable of steaming in good weather at about (as described) during the currency of this charter party. For the purpose of this charter party "good weather conditions" shall be defined as weather conditions in winds not exceeding beaufort force 3. evidence of weather reports to be taken from ship's deck log and ocean routes, discrepancies between the deck logs and ocean routes report and dates then the ocean routes report to be taken as ruling. Otherwise master's reports will be binding.

Clause 77

Master to endeavour to make vessel arrive at discharge port with even keel and lowest possible draft. Master to advise stowage plan provided charterers have advised the Master the full details of cargo, stowage factor, load/discharge ports and port rotation and drafts at the load and discharge ports, etc.

Clause 78

Owners guarantee that the vessel is not blacklisted by any Arab league countries.

Clause 79

Owners warrant vessel is suitable for grab discharge. Owners confirm grain fitted with vessel cleanliness, suitable for the carriage of bulk grain.

Clause 80

Owners confirm the vessel's holds are to be clear of any fittings/super-structures such as car deck curtain plates container fitting whatsoever.



20/23

## RIDER CLAUSES TO MV REGAL STAR / JANGHA MARINE CHARTER PARTY DATED 01ST DECEMBER 2004.

Clause 81

Charterers liberty to load more than one cargo in the same hold, but Owners not to be responsible for admixture of or contamination of cargoes carried in same hold on that account. All separation to be for Charterers account.

Clause 82 Concentrates loading clause

Charterers warrant that concentrates shipped under this charter party are non-hazardous and non-dangerous, for carriage according to applicable safety regulations including IMO code(s). The cargoes are to be loaded, stowed, trimmed, discharged strictly in accordance with IMO and local regulations/department of trade regulations and any other government regulations at ports of call or places of transit. Moisture content of the cargoes to be within safe limits for sea transport. Certificate(s) relating to moisture content of the concentrates to be handed to the master prior to loading.

Clause 83

If vessel does not give any garbage and garbage removal cost is compulsory then same to be for Charterers account.

Clause 84. NAABSA Clause

Charterers have the option to trade NAABSA where it is customary. However, same always to be subject to Owners/Master's approval which shall not be unreasonably withheld. Vessel not to manoeuver or shift while she is safely aground and further vessels not to be forcibly taken out while the vessel is safely aground.

Clause 85.

Owners to advise notice on fixing followed by 7/5/3/2/1 days notices of delivery.

Clause 86. Bimco Standard ISM Clause.

From the date of coming into force of the International Safety Management (ISM) code in relation to the vessel, and thereafter during the currency of this Charter Party, the Owners shall procure that both the vessel and the company (as defined in the ISM Code) shall comply with the requirements of the ISM Code. Upon request the Owners shall provide a copy of the relevant document of Compliance (DOC) and Safety Management Certificate (SMC) to Charterers. Except as otherwise provided in this Charter Party, loss, damage, expenses or



21/26

## RIDER CLAUSES TO MV REGAL STAR / JANGHA MARINE CHARTER PARTY DATED 01ST DECEMBER 2004:

delay caused by failure on the part of the Owners or the company to comply with the ISM Code shall be for the Owners' account.

Clause 87.

LMAA clauses to apply for disputes not exceeding USD 50,000/-

Clause 88.

Owners to warrant that vessel is a single deck self trimming bulk carrier (self trimming always mean trimming by Athwardship and not by fore and aft) and can load a full and complete cargo in each hold according to latest Solas regulations, subject to no draft restriction at both ends.

Clause 89.

With regards to oil pollution, Owners warrant a valid certificate of financial responsibility in compliance with requirements of U.S. water quality improvement act of 1970 and OPA 90 and any amendments thereto. (Owners will arrange for such certificate when required).

Clause 90.

Charter party to be governed and construed in accordance English law and arbitration in London.

Clause 91.

General Average / Arbitration in London. English law to apply.

Clause 92.
Deck Loading Clause

Deck cargo to be loaded in accordance with vessel's strength and stability and to master's discretion at Charterers time/risk and expenses and to be claused suitably in Bills of Lading. Cargo loaded on deck should not affect the load density assuming 80% moisture content in cargo loaded on deck. Charterers to indemnify Owners and remain accountable for any damage caused to the vessel, its crew and/or any person and/or any other property due to the loading of such cargo onto the deck.




22/23

## RIDER CLAUSES TO MV REGAL STAR / JANGHA MARINE CHARTER PARTY DATED 01ST DECEMBER 2004.

### Clause 93

Charterers to weld pad eyes on deck/hold at charterers time/expenses and same to be removed prior to redelivery but Charterers option to redelivery vessel without removing pad eyes paying USD 8.00 per pad eyes.

### Clause 94

Owners warrant that vessels holds are clear of any fittings/superstructures such as car deck curtain plates whatsoever.

### Clause 95

Charterers have the option to load intended cargo on deck / hatch cover at Charterers time, expenses, risk and responsibility. In accordance with vessel's deck/hatch cover strength and vessel's stability at masters discretion and Bills of Lading for deck cargoes to be marked as follows:- "shipped on deck at Charterers, shippers' and receivers' risk, expenses and responsibility, without any liability on the part of the vessel, or her owners or master, for any loss, damage, expenses or delays, whatsoever caused.

### Clause 96

Intermediate hold cleaning:

The crew, if required by the Charterers and permitted by authorities/local labour, to clean holds between voyages to the best of their ability provided weather conditions permit, but not to be responsible for subsequent approval of loading, if holds are not ready on arrival at loading port.  Vessel to remain on hire continuously whilst crew or shore labour continue cleaning.  For this operation, charterers to pay owners with hire US$ 400/- per hold cleaned, vessel never to be off hire because of failure to pass hold cleanliness survey after initial acceptance for first cargo under this charter.

### Clause 97

Owners confirm that vessel is fully fitted for Panama/Suez canals in accordance with latest requirements of the relevant authorities.

### Clause 98.

Should vessel be placed off-hire during the currency of this Charter Party for reason on behalf of Owners/vessel Charterers have the option of adding such off-hire period to charter period which option must be declared by the Charterers at least 20 days prior to redelivery.

23/28

## RIDER CLAUSES TO MV REGAL STAR / JANGHA MARINE CHARTER PARTY DATED 01ˢᵀ DECEMBER 2004.

### Clause 99.

Charterers have the option to break Institute Warranty limits in fair season/weather during the period of this charter-party, subject to owner's prior approval, which is not to be unreasonably withheld. Charterers to pay owners net additional insurance premium incurred as a result of Charterers exercising the above option, on hull and machinery and loss of hire insurance as per original vouchers from Owners underwriter, United India Insurance Co. Ltd.

### Clause 100.

Owners to provide "International Ship Security Certificate" (ISSC) with charterers, if required.

### Clause 101.

BIMCO Y2K clause to be incorporated in the charter party. BIMCO ISPS clause to be incorporated in the charter party.

### Clause 102.

All documents/certificates to be valid/kept on board by Owners including compliance with ISM & ISPS regulations carrying an accredited SMC/ISM/ISPS certificates issued by International recognized Classification Society.

### Clause 103.

Additional war risk premium, if any, to be for Charterers' account but to be unexceeding Lloyds of London rate & to be supported by original Invoices from the underwriters.

### Clause 104.

Charterers warrant that the vessel will not be engaged in any trade which would result in vessel being blacklisted by any Country.

### Clause 105.

Owners guarantee that vessel's holds are to be clear of any fittings/super structures such as car deck curtain plates, container fitting.

### Clause 106.

Charterers to load cargoes as per IMO/IMDG code of safe practice for carriage of solid bulk cargoes and regulation. Vessel always to be left in safe trim/stability





24/28

## RIDER CLAUSES TO MV REGAL STAR / JANGHA MARINE
## CHARTER PARTY DATED 01ST DECEMBER 2004.

*and other conditions that would be required for safe navigation within the port(s)
as well as on sea passage(s) at Charterers time and expenses/risks.*

*Clause 107.
Charterers not to effect any deductions, whatsoever, towards Owners expenses
from hire payments, without Owners prior approval.*

*Clause 108.
Conwartime 93, unamended, to be included in the c/p.
BIMCO'S double banking clause to be included in the c/p.
BIMCO'S ISM/ISPS clause to be included in the c/p.*

*****END*****

## NEW BOTH TO BLAME COLLISION CLAUSE.

*If the liability for any collision in which the vessel is involved while performing this
Charter Party falls to be determined in accordance with the laws of the United
States of America, the following clause shall apply:*

*"If the ship comes into collision with another ship as a result of the negligence of
the other ship and any act, neglect or default of the master, mariner, pilot or the
servants of the Carrier in the navigation or in the management of this ship, the
Owners of the goods carried hereunder will indemnify the Carrier against all loss
or liability to the other or non-carrying ship or her Owners insofar as such loss or
liability represents loss of, or damage to, or any claim whatsoever of the owners
of said goods, paid or payable by the other or non-carrying ship or her Owners to
the Owners of said goods and set off, recouped or recovered by the other or non-
carrying ship or her Owners as part of their claim against the carrying ship or
Carrier.*





25/28

## RIDER CLAUSES TO MV REGAL STAR / JANGHA MARINE CHARTER PARTY DATED 01ST DECEMBER 2004.

*The foregoing provisions shall also apply where the Owners, Operators, or those in charge of any ship or ships or objects other than, or in addition to, the colliding ships or objects are at fault in respect to a collision or contract.*

### NEW JASON CLAUSE.

*"In the event of accident, danger, damage or disaster before or after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequences of which, the carrier is not responsible by statute, contract, or otherwise, the goods, shippers, consignees or Owners of the goods shall contribute with the carrier in general average to the payment of any sacrifices, losses or expenses of a general average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the goods. If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully as if such salving ship or ships belonged to strangers. Such deposit as the carrier or his agents may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the goods, shippers, consignees or Owners of the goods to carrier before delivery"*

### U.S.A. CLAUSE PARAMOUNT.

*This Bill of Lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved 16 April 1936, which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the carrier of any of its rights or immunities or an increase of any of its responsibilities or liabilities under said Act. The provisions stated in said Act shall (exit as may be otherwise specifically provided herein) govern before the goods are loaded on and after they are discharged from the ship and throughout the entire time the goods are in custody of the carrier*

*The carrier shall not be liable in any capacity whatsoever for any delay, non-delivery or mis-delivery, or loss of or damage to the goods occurring while the goods are not in the actual custody of the carrier.*

### CHAMBER OF SHIPPING NUCLEAR CLAUSE.

*Notwithstanding any other provision contained in this charter, it is agreed that nuclear fuels or radioactive products or where are specifically excluded from the cargo permitted to be loaded or carried under this Charter Party.*

 

26/28

## RIDER CLAUSES TO MV REGAL STAR / JANGHA MARINE CHARTER PARTY DATED 01ST DECEMBER 2004.

*This exclusion does not apply to radioisotope used or intended to be used for any industrial, commercial, agriculture, medical or scientific purpose, provided Owners' prior approval has been obtained to the loading thereof.*

### ISPS CLAUSE FOR TIME CHARTER PARTIES

(A)   (i) *From the date of coming into force of the International Code for the Security of ships and of Port Facilities and the relevant amendments to Chapter XI of SOLAS (ISPS Code) in relation to the Vessel and thereafter during the currency of this Charter Party, the Owners shall procure that both the Vessel and "the Company" (as defined by the ISPS Code) shall comply with the requirements of the ISPS and/or any applicable equivalent local legislation (hereafter the "ISPS Code") relating to the Vessel and "the Company". The Owners shall provide a copy of the relevant International Ship Security Certificate (or the interim International Ship Security Certificate) to the Charterers. The Owners shall provide the Charterers with full style contact details of the Company Security Officer (CSO) and the identity of the Ship Security Officer.*

(ii) *Except as otherwise provided in this Charter Party, loss, damage, expense or delay, caused by failure on the part of the Owners or "the Company" to comply with the requirement of the ISPS Code or this Clause shall be for the Owners' account.*

(B)   (i) *The Charterers shall provide the CSO and the Ship Security Officer (SSO), as identified by the Owners or the Master with their full style contact details and, where sub-letting is permitted under the terms of this Charter Party, shall ensure that the contact details of all sub-charterers are likewise provided to the CSO and the SSO/Master. Furthermore, the Charterers shall ensure that all sub-charter parties they enter into during the period of this Charter Party containing the following provision:*

*"The Charterers shall provide the Owners with their full style contact details and, where sub-letting is permitted under the terms of the charter party, shall ensure that the contact details of all sub-charterers are likewise provided to the Owners".*

(ii) *Except as otherwise provided in this Charter Party, loss, damage, expense or delay, excluding consequential loss, caused by failure on the part of the Charterers to comply with this Clause shall be for the Charterers' account.*



27/28

### RIDER CLAUSES TO MV REGAL STAR / JANGHA MARINE CHARTER PARTY DATED 01ST DECEMBER 2004.

(c) Notwithstanding anything else contained in this Charter Party all delay, costs or expenses arising out of or related to security regulations or measures required by the port facility or any relevant authority or any relevant authority in accordance with the ISPS Code including, but not limited to, security guards, launch services, port security fees or taxes and inspections, shall be for the Charterers' account, unless such costs or expenses result from Owners' negligence and/or the Vessel having called not under Charterers' orders in the previous ten (10) voyages at a port which was not required to comply with the ISPS Code or did not have an approved port facility security plan ("PFSP"). All measures required by the Owners to comply with the Ships Security Plan shall be for the Owners account.

(d) If either party makes any payment which is for the other party's account to this Clause, the other party shall indemnify the paying party.

OWNERS:

CHARTERERS:
For and on behalf of Charterers
By their authority
For Geekay Shipping Services

As brokers only

28/28

# ENCLOSURE 2

Winter Scott
Solicitors

...ssful Receiving message:

Annex I

Receive Message

Message No.          : R0050304.003
Message Ref. No.     : 00547462
LES                  : Xantic (NED)
Priority             : Normal
Message Size         : 1034 characters
Receive Date & Time  : 05-03-04  12:03(UTC)

SEC/SO.
13

NL BURUM LES SEMAPXEYPDY  4-MAR-2005 12:03:24 547462

JANGHA K35209
SUB MV REGAL STAR/TOP PRIVATE AND CONFIDENTIAL MS

REFNO: YJUNG00243  05/03/2005

TO : MASTER OF MV REGAL STAR
FM : JANGHA MARINE CORPORATION SEOUL

RE : MV REGAL STAR

==TOP PRIVATE AND CONFIDENTIAL==

GOOD DAY CAPT.

1. PLS NOTE THAT PLS DO NOT RECEIVE ANY ................ED SEA QUEST
   AND KEEP VSL'S P................TION I...............FURTHER OUR
   INSTRUCTION................NOT SAL...............AGENT
   INSTRUCTION FROM U................

2. IF YOU GET ANY INSTRUCTION ......... SEA QUEST, PLS PASS IT
   TO US IMMEDIATELY AND WAIT FOR OUR INSTRUCTION.

3. PLS DO NOT DISCLOSE THIS MSG TO OTHER PARTIES.

4. PLS CONFIRM SAFELY RECEIPT OF THIS MSG BY RETURN.

B.RGDS/TY JUNG

JANGHA MARINE CORP. SEOUL
TEL : 82-2-8074-8500(REP)
       82-2-8076-8533(DIR)
FAX : 82-2-730-9416/7
MOB : 82-11-9620-4272
E-MAIL : TYJUNG.JANGHA.CO.KR
          BTZ3.JANGHA.CO.KR

THIS MESSAGE MIGHT BE INCOMPLETE.

# ENCLOSURE 3

**Winter Scott**
Solicitors

suresh

Annex - 14

From:      "Regal Star - 763450191" <regalstar@ex.mail65.com.sg>
To:        <TYJUNG@JANGHA.CO.KR>; <BIZ3@JANGHA.CO.KR>
Cc:        <suresh@tradelinellc.ae>; <cader@tradelinellc.ae>
Sent:      Saturday, March 06, 2005 1:05 PM
Subject:   INSTRUCTIONS FROM SEAQUEST

TO:JANGHA MARINE CORP. (ATTN.:MR.T.Y. JUNG)
CC:TRADELINE LLC      (ATTN.:MR.K.V.SURESH / MR.S.N.A.ABDUL CADER)
FM:MASTER/REGAL STAR
DT:05.03.05
MSG:384/05
SUB:INSTRUCTIONS FROM SEAQUEST

DEAR SIR,

GOOD EVENING

AA)KINDLY NOTE VOYAGE INSTRUCTIONS HAVE BEEN SENT FROM SEAQUEST TO THE
VESSEL A SHORT WHILE AGO.AS PER YR INSTRUCTIONS,COPY OF THE MESSAGE IS
BEING SENT AS A SEPERATE MESSAGE FROM THE VESSEL.KINDLY CONFIRM IT'S
RECEIPT.

BB)ALSO,WE ARE FAXING YOU 4 PAGES OF FAXED MESSAGES FROM SEAQUEST
AGENTS,PATVOLK.KINDLY CONFIRM THEIR RECEIPT.

CC)AS PER YOUR INSTRUCTIONS,VESSEL IS NOT RESPONDING TO SEAQUEST OR
THEIR AGENTS AND AWAITING YOUR FURTHER INSTRUCTIONS

DD)KINDLY ADVISE.

BRGDS/MASTER

4/21/2005

# ENCLOSURE 4

Winter Scott
Solicitors

'05-03-13  04:29(UTD)
Successful Receiving message.

Annex. 2

Receive Message

Message No.           : R00B0313.001
Message Ref. No.      : 00B00759
LES                   : Xantic (NED)
Priority              : Normal
Message Size          :   853 characters
Receive Date & Time   : 05-03-13   04:29(UTD)

NL BURUM LES SUOKANG K36013 13-MAR-2005 04:27:17 600759

JANGHA K35209
/SUB MV REGAL STAR/JANGHA

REFNO:TYJUNG00273

TO : MASTER OF MV REGAL STAR SEOUL
FM : JANGHA MARINE

  URGENT URGENT.

RE : MV REGAL STAR

GOOD DAY CAPT.
REGARDING YR VSL'S BERTHING SCHEDULE
WE UNDERSTAND VIA THE VSL'S BERTHING SCHEDULE
IS 1700LT 13TH MARCH.

THIS REGARDS THERE MUST FOLLOW CHARTER HIRE PAYMENT IN TIME.
THUS PLS WAIT FOR YOUR SHIP'S INSTRUCTION AT ANCHORAGE.

CONFIRM SAFTY RECEIPT OF THIS MESSAGE REMAIN.

B.REGD/TY JUNG.

JANGHA MARINE CORP. SEOUL
TEL : 82-2-2075-8500(REP)
      82-2-2075-8533(DIR)
FAX : 82-2-730-9418/7
MOB : 82-11-9620-4272.
E-MAIL : TYJUNG.JANGHA.CO.KR.
         BIZ3.JANGHA.BDMIR

THIS MESSAGE MIGHT BE INCOMPLETE.

Receive Message

Message No.            : R0050313.002
Message Ref. No.       : 00614343
LES                    : Xantic (NED)
Priority               : Normal
Message Size           :   788 characters
Receive Date & Time    : 05-03-13  07:29(UTC)

NL BURUM LES SFOKANG K36006 13-MAR-2005 07:27:33 614343

Annex-3

JANGHA K35209
/SUB MV REGAL STAR

REFNO:TYJUNG00274   12/03/2005

TO : MASTER OF MV REGAL STAR
FM : JANGHA MARINE CORPORATION SEOUL

RE : MV REGAL STAR

REMINDER.

GOOD DAY CAPT.
TKS FOR YR KIND TELCON.
PLS NOTE THAT CHTRS HAVE FAILED TO ARRANGE CHRS HIRE PAYMENT.
THUS VSL HAVE TO HOLD SUR FURTHER INSTRUCTION TILL ROVING CHARTER H
RE FROM CHTRS.

PLS CONFIRM SAFTY RECEIPT OF THIS MSG BY RETURN.

TKS IN ADV.

B.RGDS/TY JUNG

JANGHA MARINE CORP. SEOUL.
TEL : 82-2-2070-6500(REP)
      82-2-2070-6523(DIR)
FAX : 82-2-730-9412/7
MOB : 82-11-9620-4278
E-MAIL : TYJUNG.JANGHA.CO.KR
         BIZ@JANGHA.CO.KR

THIS MESSAGE MIGHT BE INCOMPLETE.

Annex-4p

06-03-12  03:07(UTC)
Successful Receiving message.

Receive Message

Message No.          : R0050312.001
Message Ref. No.     : 00493150
LES                  : Xantia (NED)
Priority             : Normal
Message Size         : 1361 characters
Receive Date & Time  : 05-03-12  03:07(UTC)

NL BURUM LES SUOKANG K35209 12-MAR-2005 03:05:26 493150

JANGHA K35209
/SUB RE : MV. REGAL STAR / JANGHA GROUP

REFNO:SMHEB00058

1U : MASTER OF MV SE....
FM : JANG....

RE....

MANY TKS FOR V....

.... APPROVAL ....
BERTHING SI.... REQUEST FAILED TO PBY ....
CHARTER HERE IN TIME....

IN ADDITION, PLS ADVISE US IMMEDIATELY AND FOLLOW OUR
INSTRUCTION IN CASE THERE IS ANY CALL INSPECTION FROM
LOCAL ABSNT OR MARINE SURVEYOR FOR VSL'S BERTHING.

FYG, YR GD VSL IS PRESENTLY AT UPPER BERTHING CAP.
13-14 MARCH, THUS, IF ANY CHANGE, PLS ADVISE US OF THE TIME.

PLS KEEP THIS MSG PRIVATE N CONFIDENTIAL AND AWAIT OUR
F'THER INSTRUCTION.

IF ANY URGENCY, PLS GET IN CONTACT WITH BLOW DETAILS
AFTER OFFICE HOURS.

- MR. TY JUNG(A.MGR) : +82-.....
- MR. SM HEO(MGR)    : +82-11-.....
- MR. HS LEE(D.G. MGR) : +82-11-9300-....

PLS CNFM YR GD ACKNOWLEDGEMENT OF THIS MSG BY RTN.

REGARDS,

SM HEO / BIZ TEAM 3
TEL) +82-2-2076-2532
FAX) +82-2-730-9416/7
HDH) +82-11-9195-3251
EMAIL) BIZ3 JANGHA.CO.KR

THIS MESSAGE MIGHT BE INCOMPLETE.

# ENCLOSURE 5

Winter Scott
Solicitors

27
Donole-

suresh

| | |
|---|---|
| From: | "Regal Star - 763450191" <regalstar@ex.mail65.com.sg> |
| To: | <TYJUNG@JANGHA.CO.KR>; <BIZ3@JANGHA.CO.KR> |
| Cc: | <suresh@tradelinellc.ae>; <cader@tradelinellc.ae> |
| Sent: | Sunday, March 13, 2005 5:52 PM |
| Subject: | PILOT & INCLUSION IN CONVOY CANCELLED |

TO:JANGHA MARINE CORP. (ATTN.:MR.T.Y. JUNG)
CC:TRADELINE LLC      (ATTN.:MR.K.V.SURESH/MR.S.N.A.ABDUL CADER)
FM:MASTER/REGAL STAR
DT:13.03.05
MSG:432/05
SUB:PILOT & INCLUSION IN CONVOY CANCELLED

DEAR SIR,

AA)PLEASE NOTE SANDHEADS PILOT STATION CALLED UP THE VESSEL ON
13TH/1800hrs & REQSTD THE VSL TO PROCEED TO SAGAR ROADS TO PICK UP PILOT
OR ELSE CONSIDER PILOT & INCLUSION IN CONVOY CANCELLED FOR THE VESSEL
TODAY.

BB)AS ADVISED BY YOU,MASTER HAS CONVEYED TO THEM THAT VSL HAS TO AWAIT
CHARTERER JANGHA MARINE'S INSTRUCTIONS PRIOR PICKING UP ANCHOR &
PROCEEDING TO THE PILOT STATION.THIS DELAY IS DUE TO FAILURE IN PAYMENT
OF CHARTERHIRE BY THE SUB-CHARTERER SEAQUEST, SINGAPORE, WHOSE AGENTS
AT
HALDIA ARE PATVOLK.
SINCE THESE INSTRUCTIONS HAVE NOT BEEN RECEIVED UNTIL
13TH/1806hrs,THEREFORE VESSEL CANNOT PROCEED IN THE CONVOY TO THE PILOT
STATION TODAY.

BRGDS/MASTER

# ENCLOSURE 6

**Winter Scott**
Solicitors

Annex-6

05-03-15  13:04(UTC)
Successful Receiving message.

Receive Message

Message No.          : R0050315-009
Message Ref. No.     : 00295699
LES                  : Xantic (NED)
Priority             : Normal
Message Size         :   799 characters
Receive Date & Time.: 05-03-15  13:04(UTC)

NL BURUM LES SENFPPEYGF 15-MAR-2005 13:02:10 295699

JANGHA K35909
/SUB MV REGAL STAR JANGHA MARINE

REFNO:TYJUNBO

TO : MASTER OF REGAL STAR
FM : JANGHA MARINE CORPORATION SEOUL

RE : MV REGAL STAR

GOOD DAY, DEAR CAPT.

PLS NOTE THAT                                        WOUND FOR
PARADIP FOR

PLS DO NOT                     TO OWRS/SEA QUEST/CHTRS LOCAL
AGENT/SHIPPER.

PLS CONFIRM THE

B.RGDS/TY JUNG .

JANGHA MARINE CORP. SEOUL
TEL : 82-2-2076-9500
       82-2-2076-      (DIR)
FAX : 82-2-730-9414
MOB : 82-11-9820-6272
E-MAIL : TYJUNG.JANGHA.CO.KR
         9125.JANGHA.CO.KR

THIS MESSAGE MIGHT BE INCO

# ENCLOSURE 7

**Winter Scott**
Solicitors

Receive Message

Message No.         : R0050316.001
Message Ref. No.    : 00967353
LES                 : Xantic (NED)
Priority            : Normal
Message Size        :  1557 characters
Receive Date & Time : 05-03-16  02:59(UTC)

Annex-7

NL BURUM LES SIOKANG K36005 16-MAR-2005 02:56:48 767353

JANGHA K35209
/SUB MV REGAL STAR/SAILING INSTRUCTION

REFNO:TYJUNG00279   16/03/2005

TO : MASTER OF MV REGAL STAR
FM : JANGHA MARINE CORPORATION SEOUL

RE : MV REGAL STAR/SAILING INSTRUCTION.

GOOD DAY CAPT.

WE MUCH PLSD TO ADV THAT YR GD VSL'S NEXT EMPLOYMENT WAS FIXED,
YR GD VSL TO BE TIME CHARTERED OUT TO JADE FORTUNE INVESTMENT
INC BVI . JADE FORTUNE WILL GIVE THEIR SAILING INSTRUCTION IN FULL
L
ATER
AND PLS FOLLOWS THEIR INSTRUCTION ACCORDINGLY.

THIS REGARDS PLS REFER TO HEREUNDER DESCRIBED TERMS FOR NEXT EMPLOY
M
ENT.
TAKING THIS OPPORTUNITY, WE WISH YOU AND YR CREW MBR ON BOARD VON V
O
YAGE
AND INVITE YR KEEN ATTENDTION.

 MAIN TERMS OF TIME CHARTER PARTY (T/C OUT)

     CHARTERERS    : JADE FORTUNE INVESTMENT INC, BVI
     DELIVERY       : DLOSP 1SP HALDIA ATDNSHINC
     LAYCAN         : 0001LT 16TH MARCH/2400LT 17TH MARCH
     REDELIVERY    : DLOSP 1 SP BANGLADESH  ATDNSHINC
     B.O.D          : ABT 120-140MT IFO / ABT 40-50MT MDO
     B.O.R          : SAME AS ABOVE

 JADE FORTUNE INVESTMENT INC BVI  WILL GIVE THEIR SAILING INSTRUCTI
O
N IN
 FULL AND PLS FOLLOW THEIR INSTRUCTION ACCORDINGLY

B.RGDS/TY JUNG

JANGHA MARINE CORP. SEOUL
TEL : 82-2-2076-8500(REP)
      82-2-2076-8533(DIR)
FAX : 82-2-730-9415/7

# ENCLOSURE 8

Winter Scott
Solicitors



G800068

**SONALI BANK**
**FOREIGN EXCHANGE DEPARTMENT**
**REMITTANCE SECTION**
**LOCAL OFFICE, DHAKA.**

NO.LO/RM'TG/JR-31/2005
DATED: 23.04.05

TO,
THE REGISTRAR
SUPREME COURT OF BANGLADESH
DHAKA.

<u>CAUTION TO ACCEPTOR</u>

BEFORE ACTING THE GUARANTEE PLEASE GET THE GENUINENESS OF THE SAME CONFIRMED FROM THE ISSUANCE BRANCH OF THE BANK, OTHERWISE THE BANK SHALL NOT BE LIABLE FOR <u>ANY LOSS CAUSED DUE TO MISUSE.</u>

SUB: OUR GUARANTEE NO.31/2005 DT. 23.04.05 FOR USD. 4,00,000/= (US$ FOUR HUNDRED THOUSAND) ONLY FVG. YOURSELVES A/C. M/S. THYMUS SHIPPING CORPORATION OWNER OF THE VESSEL M.V. REGAL STAR IN RESPECT OF ADMIRALTY SUIT NO.4 OF 2005.

DEAR SIR,

AT THE REQUEST OF OUR FOREIGN CORRESPONDENT MASHREQ BANK PSC, DUBAI, U.A.E. WE ISSUE OUR GUARANTEE AS FOLLOWS :-

HEREAS THE PLAINTIFF, SEA QUEST SHIPPING PTE LTD., SINGAPORE HAS FILED THE ABOVE-NOTED SUIT IN THIS HON'BLE HIGH COURT DIVISION UNDER ADMIRALTY JURISDICTION AGAINST M.V. REGAL STAR NOW BERTHED AT MONGLA PORT AND OTHERS AS DEFENDANTS ON 31.03.2005 FOR A DECREE FOR AN AMOUNT OF USD 1,500,716.00, AND WHEREAS THE HON'BLE HIGH COURT DIVISION UNDER ADMIRALTY JURISDICTION ON 31.03.2005 WAS PLEASED TO ORDER IN THE ABOVE SUIT FOR ARREST OF M.V. REGAL STAR AND DETENTION OF THE SAME UNLESS SUFFICIENT AND PROPER SECURITY IS FURNISHED BY OR ON BEHALF OF THE VESSEL, AND WHEREAS THE OWNERS OF THE VESSEL M.V. REGAL STAR, THYMUS SHIPPING CORPORATION, LIBERIA FILED WRITTEN OBJECTIONS AGAINST THE PLAINTIFF'S APPLICATION FOR ARREST OF THE VESSEL AND APPLICTION FOR REDUCTION OF THE BANK GUARANTEE AMOUNT FOR RELEASE OF THE VESSEL M.V. REGAL STAR FROM ARREST ON BEHALF OF THE DEFENDANT NOS.1 AND 2.

AND WHEREAS UPON HEARING OF THE APPLICATION FOR REDUCTION OF THE BANK GUARANTEE AMOUNT THE HON'BLE HIGH COURT DIVISION BY ORDER DATED 18.04.2005 WAS PLEASED TO REDUCE THE AMOUNT OF BANK GUARANTEE TO USD 400,000.00 (UNITED STATES DOLLARS FOUR HUNDRED THOUSAND ONLY) FOR RELEASE OF THE VESSEL M.V. REGAL STAR, AND WHEREAS WITHOUT PREJUDICE TO ALL DEFENCES AVAILABLE TO M.V. REGAL STAR AND HER OWNERS, THYMUS SHIPPING CORPORATION AND THEIR RIGHTS TO FILE AND RAISE ALL LEGAL AND FACTUAL OBJECTIONS TO THE CLAIM OF THE PLAINTIFF IN THE SUIT AS WELL AS APPLICATION FOR ARREST OF THE VESSEL AND ALSO THE PROVISIONS OF SECURITY AND TO MINIMISE FURTHER LOSSES, THE OWNERS OF THE VESSEL M.V. REGAL STAR, THYMUS SHIPPING CORPORATION AGREE TO FURNISH SECURITY BY WAY OF BANK GUARANTEE IN THIS HON'BLE COURT FOR USD400,000.00 (UNITED STATES DOLLARS FOUR HUNDRED THOUSAND) ONLY FOR RELEASE OF THE VESSEL M.V. REGAL STAR FROM ARREST IN THE ABOVE SUIT.

NOW, THEREFORE THE GUARANTOR BANK STANDS SURETY FOR THE VESSEL M.V. REGAL STAR AND HER OWNERS, THYMUS SHIPPING CORPORATION AND UNDERTAKES TO DEPOSIT IN THIS HON'BLE COURT A SUM OF USD400,000.00(UNITED-STATES DOLLARS FOUR HUNDRED THOUSAND) ONLY OR

CONTD.....P



ত  ৫০১১১৬২                          PAGE NO-2

LESSER AMOUNT WHENEVER CALLED UPON TO DO SO BY THIS HON'BLE COURT IN THE EVENT A DECREE IS PASSED AGAINST THE VESSEL M.V. REGAL STAR AND HER OWNERS, THYMUS SHIPPING CORPORATION OR THE CLAIM IS SETTLED AMICABLY BETWEEN THE PLAINTIFF AND THE VESSEL'S INTERESTS.

IN WITNESS WHEREOF WE, SONALI BANK, LOCAL OFFICE, DHAKA AS THE GUARANTOR BANK DO HEREBY EXECUTE THIS BANK GUARANTEE ON THIS THE 23ᴿᴰ DAY OF APRIL, 2005 WHICH IS TO REMAIN IN FORCE TILL THE SAID ADMIRALTY SUIT AND OTHER PROCEEDINGS IN CONNECTION THEREWITH IS DISPOSED OF OR FOR TWELVE (12) MONTHS FROM THE DATE HEREOF WHICHEVER DATE IS EARLIER BUT NOT BEYOND 23.04.2006 AND IS EXTENDABLE FOR FURTHER POERIOD OR POERIODS AS PER ORDER OF THE COURT IF THE SAID ADMIRALTY SUIT AND OTHER PROCEEDINGS IN CONNECTION THEREWITH IS NOT DISPOSED OF BEFORE 23ᴿᴰ DAY OF APRIL, 2006. NOTWITHSTANDING ANYTHING CONTAINED HEREINBEFORE, OUR LIABILITY UNDER THIS GUARANTEE IS RESTRICTED TO USD400,300.00 (UNITED STATES DOLLARS FOUR HUNDRED THOUSAND ONLY) AND SHALL REMAIN IN FORCE UNTIL THE ADMIRALTY SUIT AND OTHER PROCEEDINGS IN CONNECTION THEREWITH IS DISPOSED OF OR FOR TWELVE (12) MONTHS FROM THE DATE HEREOF WHICHEVER DATE IS EARLIER BUT NOT BEYOND 23.04.2006 AND IS EXTENDABLE FOR FURTHER POERICD OR PERIODS AS PER ORDER OF THE COURT IF THE ADMIRALTY SUIT AND OTHER PROCEEDINGS IN CONNECTION THEREWITH IS NOT DISPOSED OF BEFORE 23ᴿᴰ DAY OF APORIL, 2006. IN CASE THIS IS NOT DONE BY THE DEFENDANT, THE BANK SHALL PLACE THE GUARANTEED AMOUNT IN FAVOUR OF THE BENEFICIARY WITHIN 45(FORTYFIVE) DAYS FROM THE DATE OF EXPIRY.

UNLESS THE CLAIM IN WRITING IS PRESENTED TO US WITHIN NINETY (90) DAYS OF THE DISPOSAL OF THE ADMIRALTY SUIT AND OTHER PROCEEDINGS IN CONNECTION THEREWITH ALL RIGHTS UNDER THIS BANK GUARANTEE SHALL BE FORFEITED AND WE SHALL BE RELEASED AND DISCHARGED FROM ALL LIABILITIES THEREUNDER, WHETHER OR NOT THIS BANK GUARANTEE IS SURRENDERED OR RETURNED TO US.

FURTHER THIS BANK GUARANTEE SHALL BE CANCELLED AUTOMATICALLY AFTER EXPIRY OF NINETY (90) DAYS OF RECEIPT BY US A CERTIFIED TRUE COPY OF THE ORDER OF COURT PURSUANT TO THE ADMIRALTY SUIT AND OTHER PROCEEDINGS IN CONNECTION THEREWITH.

YOURS FAITHFULLY,


AUTHORISED SIGNATURE
Md. Rafiqul Islam Khan
Signature No. 1525


AUTHORISED SIGNATURE
ABDUL HADI
Sr. Principal Officer
SONALI BANK
P.A. No. 1078

# ENCLOSURE 9



James King

From:        GLOBUS-DRY [dry@globusmarine.com]
Sent:        26 April 2005 08:51
To:          dry@globusmarine.com; suresh@tradelinellc.ae
Subject:     Clean Recap MV REGAL STAR / PROMINENT SHIPPING – TCT VIA YANGOON >WCI-
             CP DD 26.4.05

GLOBUS
809 NEW DELHI HOUSE,27 BARAKHAMBA ROAD,NEW DELHI-110001 PH  :91 11 23325404 / 23312284
/ 23310376  DIR:91 11 23356323 , FAX:91 11
23312617
CHARTERING  :DRY@GLOBUSMARINE.COM
POST FIXTURE:OPERATIONS@GLOBUSMARINE.COM
MOB:91 9810115337 / 91 9810050482  AOH:91 129 2513332 (PH/FAX), /91 11
26284957
BRANCHES  IN MUMBAI,KANDLA,GOA

TO :TRADELINE/MR.SURESH

'FM:GLOBUS NEW DELHI

RE: MV REGAL STAR / PROMINENT SHIPPING - TCT VIA YANGON TO WCINDIA -CP DD
26.4.05

VSL IS CLEAN    FIXED VIDE FLWNG RECAP:

MV REGAL STAR
VESSEL's DESCRIPTION/DETAILS:-

1.VESSEL'S CURRENT NAME : "REGAL STAR"
   PREVIOUS NAME : "ST. AUBIN"
2.FLAG: ST. VINCENT AND THE GRENADINES
3.CALL SIGN : J 8 B 2 6 1 2
  TELEX NO. 437723610
  MINI-M PHONE : 00873 763 450188
  MINI-M FAX  : 00873 763 450190
4.TYPE: SDBC
5.CLASS: LLOYDS REGISTER/100 A1+LMC
6.REGISTRATION NUMBER: 8201337
7.YEAR BUILT: 1984 .YARD: GUANGZHOU SHIPYARD, GUANGZHOU, CHINA
8.G/NRT : INTL      : 12,539 / 6,143
               SUEZ   : 12,865.48/10,378.60
               PANAMA: 13,035/9,628
9.LOA/ LBP/BEAM/DEPTH : 160 M / 150 M / 22  M / 12.50 M 10.LAKES FITTED :NO 11.CREW
NATIONALITY : INDIANS/PAKISTANIS/BANGLADESHIS/INDONESIANS
         MASTER'S NAME/NATIONALITY :
12.                       DWT   /    DRAFT
                         (MTS)        (MTRS)

     SUMMER       18,411      8.816
     TROPICAL     18,943      8.999
     WINTER       17,847      8.633
13.TPC/FWA: 29.95 / 199 MM
14.CONSTANTS: 250 MTs (EXCL FW)
15.ENGINE SITUATED: AFT
16.HOLDS/HATCHES: 5 / 5
17.TYPE OF HATCH COVERS: MACGREGOR FOLDING JACKNIFE TYPE 18.CARGO GEAR:
               TYPE : CRANES
               SWL : 14 MTs
               LOCATION:.....4 cranes Betwn #1&2,2&3,3&4,4&5.
               OUTREACH FM S/SIDE:  10 MTRS
               COMBINATION: NO
   19.HOLD CAPACITIES :     GRAIN / BALE : 23,865 CBM / 22,505 CBM

1

```
                    NO. 1          4,180 / 3,966
                    NO. 2          5,001 / 4,711
                    NO. 3          5,002 / 4,672
                    NO. 4          4,967 / 4,669
                    NO. 5          4,712 / 4,484
```

20.IS VESSEL CARGO BATTEN FITTED: NO
21.IS VESSEL CO2 FITTED - YES
22.IS VESSEL ELECTRICALLY VENTILATED: NO 23.PERMISSIBLE LOADS PER SQUARE METER
    TANK TOP : HOLDS (1,3 & 5) : 14.67 MT / M2 (HOLDS 2&4) 8.90 MTs/M2
    DECK : 1.296 MT / M2
    HACVR : 1.70 MT / M2
24.CONTAINER FITTED: NO
25.HOLD/HATCH DIMENSIONS IN METERS:
      HOLDS:
      LENGTH/WIDTH-F/A/HEIGHT
      1 20.4m /a 20m f 10 m /
      2  21.6m /20 m /
      3 21.6m / 20 m /
      4 21.6m / 20 m /
      5 21.5m / a 14m f 20m
      HATCHES:
      (1) 14 M X 11.20 M (2, 3, 4 & 5) 16 M X 11.20M 26.HATCHCOVERS HEIGHT FROM TANK
TOP: 12.8 MTRS
                        FROM MAIN DECK : 1.5 MTRS 27.AUSTRALIAN HOLD LADDERS: YES
28.ANY OBSTRUCTIONS IN HOLDS: NO 29.BALLAST CAPACITY IN D/B TANKS: 2924.4 MT
                              W/TANKS:   2252.7  MT
                              HOLDS:     5127.55 MT

30.SPEED N CONSUMPTION:
    ABT 11.50 KTS ON ABT 19.00 MTS IFO 180 CST + 2.50 MTS MGO - AT SEA
    IN PORT IDLE : ABT 1.00 MT IFO 180 CST + ABT 1.00 MT MGO
    WORKING : ABT 1.00 MTS IFO 180 CST + ABT 2.50 MTS MGO
    SPEED/CONSUMPTION IS DESCRIBED IN FAIR WEATHER NOT EXCEEDING BEAUFORT SCALE 3,
SWELL NOT
    EXCEEDING DOUGLAS SEA STATE 3 AND NO ADVERSE CURRENTS. VESSEL CONSUMES IFO IN BAD
WEATHER,
    WHEN MANOEUVERING,HARBOUR/RIVER STEAMING, IN RESTRICTED WATERS AND WHILE SLOW
STEAMING.
31.FUEL TANK CAPACITIES BASIS 90 PCT:
    IFO 552 MT/563.36 M3
    MGO 120 MT/144.48 M3
    (CAPACITIES IN MTs MAY SLIGHTLY VARY DEPENDING ON THE DENSITY) 32.F.W. CAPACITY:
321 MT
    CONSUMPTION: 8 MT/PD
33.DISTANCE FROM HATCH OPENING TO SHIPSIDE: 5.4  MTRS
    FOR'D B/HEAD: 2 MTRS
    AFTER B/HEAD: 3 MTRS
34.DISTANCE FROM:
    BOW TO FORWARD END OF NO.1 HATCH: 17.6 MTRS
    STERN TO AFTER END OF LAST HATCH: 39 MTRS 35.LAST SS  : 11/1999
              DD PASSED : 02/2000
36.IS VESSEL FITTED WITH STANCHIONS TO CARRY LOGS ON DECK AND HAS FULL COMPLIMENT OF
DECK LASHING
    EQUIPMENT: NO
37.HAS THE VESSEL TRADED TO AND C.I.S. PACIFIC PORTS IN THE LAST 12 MONTHS :
NO
38.CAN VESSEL EXCHANGE BALLAST WATER AT SEA: YES 39.ARE VESSEL'S HOLDS SUITABLE FOR
GRAB DISCHARGE:  YES
    GRABS ONBOARD : NO
    ARE VESSEL'S TANKTOP/T'DECKS SUITABLE FOR USE OF FORK LIFTS/BULLDOZERS WITH
RUBBER TYRE/TRACKS
    BUT ALWAYS IN ACCORDANCE WITH THE DECK STRENGTHS:  YES 40.IS VESSEL STRENGTHENED
FOR HEAVY CARGOES AND ABLE TO DO ALTERNATE HOLD LOADING:YES 41.P&I CLUB: INTERCOASTAL
SHIPOWNERS' P&I BV, ROTTERDAM 42.H&M UNDERWRITERS : ARAB ORIENT INSURANCE CO., DUBAI,
UAE 43.H&M VALUE : USD 4.00 MILLION 44.HEADOWNERS : THYMUS SHIPPING CORP., MONROVIA,
LIBERIA
    MANAGERS : TRADELINE, DUBAI, UAE.
    DISPONENT OWNERS : NIL,
"DETAILS ALL ABOUT"


PLEASE ADVISE

2

VSL'S DWAT ON 9M FW :  MTS .
TPC ON 9M FW DRAFT :  MTS
VSL TO PROVIDE POWER FR SMALL GRAPPLES AT DISCH PORT .


++
A/C PROMINENT SHIPPING SINGAPORE

-ONE TCT AA AA, ALWAYS VIA SAFE BERTHS, SAFE ANCHORAGES, SAFE PORTS, ALWAYS WITHIN
IWL, WITH  PULSES AND LOGS, INCLUDING ON DECK AND/OR HATCHCOVERS, 'FROM YANGON TO
WCINDIA,

-LDNG OF LOGS ON DECK/HACVRS PERMITTED ALWAYS SUBJECT TO DECK/HACVRS STRENGTHS, BUT
ENTIRELY AT  THE CHRTRS/SHPRS RISK N RESPONSIBILITY N CHRTRS TO ARRANGE FOR
LASHING/SECURING/DUNNAGING TO THE  SATISFACTION OF THE MASTER AND PRACTICE OF THE
TRADE .ANY LASHINGS ON BD TO AVAILABLE FR CHRRS USE FREE OF EXPENSE TO THE CHRRS.

- BILLS OF  LADING FOR DECK CARGOES TO BE WITHOUT RE MARKS: NEVER  CONLINE BL IS
 USED.(PRINTED CLAUSE AT THE BACK -SAYS DECK CARGO IS ON SHIPPERS RISK)

-CARGO SHIPPED ON DECK TO BE AT CHARTERERS, SHIPPERS' RISK

-LAYCAN:1200HRS - 2400HRS LOCAL TIME 26TH APRIL 2005 BSS PILOT BOARDING TIME AT MONGLA
ANCHORAGE -DELIVERY DLOSP MONGLA ATDNFHINC

-REDELIVERY : DLOSP 1SP WEST COAST INDIA NEW MANGALORE -KANDLA  RANGE ATDNSHINC FICO,

-DURATION ABT 32-40DAYS WOG.

-HIRE USD 11000 PDPR PAYABLE EVERY 15 DAYS IN ADVANCE. LAST HIRE TO BE PAID AS PER THE
EST . REDELIVERY DATE .

-1ST HIRE TO BE PAID  ALONG WITH VALUE OF IFO TO BE CONSUMED FR THE VOYAGE
AS PER MASTERS ESTIMATE AT USD 330 PMT WITH IN 3BD OF DELIVERY

-ILOHC USD 3250

-CVE USD 1000PM PR

-BUNKERS CLAUSE:
BOD :ABT 280MT IFO AND ABT 25MT MGO
BOR: IFO AS ON BOARD AND MGO :ABT SAME AS ON DELIVERY.
CHRRS TO PAY ALONG WITH FIRST HIRE VALUE OF ESTIMATED CONSUMPTION OF IFO REQUIRED FR
THE VOYAGE AT USD 330 PMT.CHRRS TO REPLENISE MGO ENROUTE AT YANGON. .PRICES FR MGO
BENDS TO BE AS PER ACTUALS PURCHASED AT YANGON -CHOPT TO ISSUE SWITCH  BILLS OF LADING
AGAINST CHRRS LOI IN OWNERS PNI CLUB WORDING  .1ST SET TO BE RETURNED TO THE OWNERS
WITHIN 30DAYS OF  COMPLETION OF LOADING .

-OWNERS TO ALLOW DISCH OF CARGO WITHOUT PRODUCTION OF ORIGINAL BILLS OF LADING AGAINST
CHRRS LOI IN OWNERS PNI CLUB WORDING.

-NO SUB-LETTING PERMITTED.

-BIMCO's ISPS CLS TO BE INCLUDED IN THE C/P.  .

- 2.5% ADCOM +1.25 TO GLOBUS

-OWISE  BSS CHRRS EXECUTED CP  MV REGAL STAR / PROMINENT CP DD 11.8.03 WHICH TO BE
LOGICALLY AMMENDED AS PER MAINTERMS AGREED
+
BRGRDS/CAPT.A.BAHL

3

# ENCLOSURE 10

Winter Scott
Solicitors

suresh

Annex I

From:     "GLOBUS-DRY" <dry@globusmarine.com>
To:       "SURESH-TRADELINE" <suresh@tradelinellc.as>
Sent:     Monday, April 25, 2005 12:44 PM
Subject:  Re: MV Regal Star -- ore ex Ed > China

GLOBUS
809 New Delhi House,27 Barakhamba Road,New Delhi-110001
PE :91 11 23325404 / 23312284 / 23310376  DIR:91 11 23356323 , FAX:91 11
23312617
chartering  : dry@globusmarine.com
post fixture: operations@globusmarine.com
Mob:91 9810115331 / 91 9810050482  AOH:91 129 2513332 (PH/FAX) /91 11
26284957
Branches  in Mumbai,Kandla,Goa

mr suresh/capt.bahl

Re: MV Regal Star

Please consider
--

acct: n& h maritime
10000mt--20000mt  ore in bulk owners optin
Lycan: 1th--10th ,may,2005
Haldia,india/Jintang or tianjin,china
L/d rate: 5000mt shinc/8000mt shine , 12hrs tt bends
fit: invite owners best float bss 1/1
com: 2.5% addcom + 1.25 pct to globus
subject details

fit idees : usd 23 pmt

plsd to hear

best regards
capt.a.bahl

*Handwritten annotations in right margin:*

Dubafront of
-- Total Bunker Abt. 24 days.
-- T/c yield: US$ 8,250/-
-- per day  sub all going well

-- Laycan to Commerce from
   1st may, which
   means a couple of
   days awaiting. This would
   have reduced the TC
   yield further.

-- CARGO INTAKE:
   Around 16000 mts
   in view of draft
   restrictions at Haldia.

9/1/2005

ANNX 2

## suresh

From:      "GLOBUS-DRY" <dry@globusmarine.com>
To:        "SURESH-TRADELINE" <suresh@tradelineilc.ae>
Sent:      Tuesday, April 26, 2005 8:09 AM
Subject:   RE: MV REGAL STAR - UNIWELL


GLOBUS
309 New Delhi House,27 Barakhamba Road,New Delhi-110001
PH :91 11 23325404 / 23312284 / 23310376  DIR:91 11 23356323 , FAX:91 11 23312617
chartering : dry@globusmarine.com
post fixture operations@globusmarine.com
Mob:91 9810115331 / 91 9810050482  AOH:91 129 2513332 (PH/FAX) /91 11 26284057
Branches  in Mumbai,Kandla,Goa


FM : GLOBUS
TO: TRADELINE
ATTN .: MR SURESH

RE: MV REGAL STAR - UNIWELL

PLEASE CONSIDER

A/C UNIWELL

10,000 -20,000 MT BLK IRON ORE
HALDIA / ZHINJIANG, YANZTZE RIVER
LAYCAN 1-10 MAY ( TRY SLIGHTLY EARLY )
LOADING 8000 MT/DISCH 8000 MT SHEX UU
3.75 PCT ADDCOM + 1.25 PCT TO GLOBUS

ALT CAN TRY TCT

DWT ABT 20/28,000 MT GRD/GRB
DELY HALDIA
LAYCAN 1-10 MAY
TCT VIA EC INDIA TO CHINA INT BLK ORE
EST DUR ABT 25-30 DS WOG
REDELY SP/IP EGB INT CHINA
3.75 PCT ADDCOM + 1.25 PCT TO GLOBUS


BEST REGARDS
CAPT.A.BAHL

— LATER DATES.

→ In view of the
voyage Rates / TC
Rates Indicated by
others. did not expect
these chartered to
talk anything different.

9/1/2005

ANNEX 3

## suresh

From:      "GLOBUS-DRY" <dry@globusmarine.com>
To:        "SURESH-TRADELINE" <suresh@tradelinello.ae>
Cc:        "GLD" <dry@globusmarine.com>
Sent:      Monday, April 25, 2005 11:39 AM
Subject:   Re : MV Regal Star / Sarat Chaterjee

GLOBUS
809 New Delhi House,27 Barakhamba Road,New Delhi-110001
PH :91 11 23325404 / 23312284 / 23310376  DIR:91 11 23356323 , FAX:91 11
23312617
chartering : dry@globusmarine.com
post fixture: operations@globusmarine.com
Mob:91 9810115331 / 91 98100504E2 AOH:91 129 2513332 (PH/FAX) /91 11
26284957
Branches in Mumbai,Kandla,Goa

fm : globus
to : tradeline
atin .: mr suresh

Re : MV Regal Star / Sarat Chaterjee

Charterers " Sarat Chaterjee " can indicate USD 8K PDPR for this vessel for
a trip with iron ore to fareast ( 3.75 pct addcom + 1.25 pct to globus)

Please advise.

Best regards
capt.a.hahl

9/1/2005

Anita Lp

## suresh

From:      "GLOBUS-DRY" <dry@globusmarine.com>
To:        "SURESH-TRADELINE" <suresh@tradelinellc.ee>
Sent:      Friday, April 22, 2005 8:12 AM
Subject:   Re: MV Regal Star / Unithai

GLOBUS
809 New Delhi House,27 Barakhamba Road,New Delhi-110001
PH :91 11 23325404 / 23313284 / 23310376  DIR:91 11 23356323 , FAX:91 11 23312617
chartering : dry@globusmarine.com
post fixture: operations@globusmarine.com
Mob:91 9810115331 / 91 9810050482  AOH:91 129 2513332 (PH/FAX) /91 11 26284057
Branches  in Mumbai,Kandla,Goa

fm : globus
to : tradeline
attn .: mr suresh

Re: MV Regal Star / Unithai

Have close charterers " Unithai" showing interest in the vessel, Please advise if owners would consider

–
a/c unithai
one tc with general cargos
Duration abt 15/20 days wog
delivery : passing Singapore
Redelivery : 1 sp Fareast
3.75 pct addcom + 1.25 pct to globus
subject details

–

Awaiting yours

Best Regards
Capta.bahl

– Asking for delivery
in Singapore. Around
six days Ballent
passage from MONGLA.
Charterers Ideas were
not given but passumed
it would not be too be
far from what others
were talking.

9/1/2005

Annex 5.

## suresh

From:   "GLOBUS-DRY" <dry@globusmarine.com>
To:     "Suresh" <suresh@tradelinellc.ae>; "GLD" <dry@globusmarine.com>
Sent:   Monday, April 25, 2006 2:46 PM
Subject: regal star/ sarawagi

mr.suresh/cpt.bahl

regal star /sarawagi

a/c sarawagi
15-29000/10
iron ore in bulk
haldia/lianyungang
2days ld/8000mt shinc disch
vsl dates
3.75 atl

ideas usd 19

brgrds

*(handwritten right margin):*
DURATION would be
around 23 days.
→ Would hv loaded
  around 16000 MTS
  due draft restriction.

→ At usd 19/- the
  T/c yreld would
  hv been approx usd
  5,947/-

---

GLOBUS
809 New Delhi House,27 Barakhamba Road,New Delhi-110001
PH :91 11 23312284 / 23310376 /23325404 DIR:91 11 23356323 , FAX:91 11
23312617
chartering : dry@globusmarine.com
post fixture: operations@globusmarine.com
Mob:91 9810115331 / 91 9810050482  AOH:91 129 2513332 (PH/FAX) /91 11
26284957
Branches in Mumbai,Kandla,Goa

9/1/2005

~~~ ... ~~~ ... .... .... .... .... ....                    Annex 6

## suresh

From:       "suresh" <suresh@tradelinell.ae>
To:         "suresh" <suresh@ceekay.ae>
Sent:       Monday, April 25, 2005 6:16 PM
Subject:    M/V "REGAL STAR"/BC - FIRM OFFER

25/APR/05

DS / KVS

Re: M/V "REGAL STAR"/BC - FIRM OFFER

PLEASED TO OFFER FIRM AS FOLLOWS FOR REPLY HERE LATEST BY 1000 HRS IST ON 26-APR-05 :-

1.VESSEL'S CURRENT NAME : "REGAL STAR"
  PREVIOUS NAME : "ST. AUBIN"
2.FLAG: ST. VINCENT AND THE GRENADINES
3.CALL SIGN : J 8 3 2 6 1 2
  TELEX NO. 437723613
  MINI-M PHONE : 00873 763 450188
  MINI-M FAX : 00873 763 450190
4.TYPE: SDBC
5.CLASS: LLOYDS REGISTER/100 A1+LMC
6.REGISTRATION NUMBER: 8201337
7.YEAR BUILT: 1984 .YARD; GUANGZHOU SHIPYARD, GUANGZHOU, CHINA
8.G/NRT : INTL    : 12,539 / 6,143
          SUEZ    : 12,865.48/10,378.60
          PANAMA: 13,035/9,628
9.LOA / LBP/BEAM/DEPTH : 160 M / 150 M / 22 M / 12.90 M
10.LAKES FITTED :NO
11.CREW NATIONALITY : INDIANS/PAKISTANIS/BANGLADESHIS/INDONESIANS
   MASTER'S NAME/NATIONALITY :
12.              DWT  /  DRAFT
              (MTS)    (MTRS)
   SUMMER    18,411    8.816
   TROPICAL  18,943    8.999
   WINTER    17,847    8.633
13.TPC/FWA: 29.95 / 159 MM
14.CONSTANTS: 250 MTs (EXCL FW)
15.ENGINE SITUATED: AFT
16.HOLDS/HATCHES: 5 / 5
17.TYPE OF HATCH COVERS: MACGREGOR FOLDING JACKNIFE TYPE
18.CARGO GEAR:
        TYPE : CRANES
        SWL : 14 MTs
        LOCATION:....4 cranes Betwn #1&2,2&3,3&4,4&5.
        OUTREACH FM S/SIDE: 10 MTRS
        COMBINATION: NO
19.HOLD CAPACITIES :    GRAIN / BALE : 23,865 CBM / 22,505 CBM
            NO. 1    4,180 / 3,966
            NO. 2    5,001 / 4,711
            NO. 3    5,002 / 4,572
            NO. 4    4,967 / 4,569
            NO. 5    4,712 / 4,484
20.IS VESSEL CARGO BATTEN FITTED: NO
21.IS VESSEL CO2 FITTED - YES
22.IS VESSEL ELECTRICALLY VENTILATED: NO

*(handwritten right side:)*
This was a possibility.
Chartered freight ideas
were US$ 22/- or so
(as per brokers).
At this rate it would
hv given a TC yield
of US$ 9,700/- or so,
but for a duration of
abt 24 days.

( This was owners
offer ).

9/1/2005

01-SEP-2003  16:33  FROM .INSIDELINE LLC             TO  #              P.07

Annex 6

23.PERMISSIBLE LOADS PER SQUARE METER
   TANK TOP : HOLDS (1,3 & 5) : 14.07 MT / M2 [HOLDS 2&4) 3.90 MTs/M2
   DECK : 1.296 MT / M2
   HACVR : 1.70 MT / M2
24.CONTAINER FITTED: NO
25.HOLD/HATCH DIMENSIONS IN METERS:
   HOLDS:
   LENGTH/WIDTH-F/A/HEIGHT
   1 20.4m /a 20m f 10 m /
   2 21.6m /20 m /
   3 21.6m / 20 m /
   4 21.6m / 20 m /
   5 21.5m / a 14m f 20m
   HATCHES:
   (1) 14 M X 11.20 M (2, 3, 4 & 5) 16 M X 11.20M
26.HATCECOVERS HEIGHT FROM TANK TOP: 12.8 MTRS
            FROM MAIN DECK : 1.5 MTRS
27.AUSTRALIAN HOLD LADDERS: YES
28.ANY OBSTRUCTIONS IN HOLDS: NO
29.BALLAST CAPACITY IN D/B TANKS: 2934.4 MT
              W/TANKS: 2252.7 MT
              HOLDS:  5127.55 MT
30.SPEED N CONSUMPTION:
   ABT 11.50 KTS ON ABT 19.00 MTS IFO 180 CST + 2.50 MTS MGO - AT SEA
   IN PORT IDLE : ABT 1.00 MT IFO 180 CST + ABT 1.00 MT MGO
   WORKING : ABT 1.00 MTS IFO 180 CST + ABT 2.50 MTS MGO
   SPEED/CONSUMPTION IS DESCRIBED IN FAIR WEATHER NOT EXCEEDING BEAUFORT SCALE 3.
SWELL NOT
   EXCEEDING DOUGLAS SEA STATE 3 AND NO ADVERSE CURRENTS. VESSEL CONSUMES IFO IN BAD
WEATHER,
   WHEN MANOEUVERING,HARBOUR/RIVER STEAMING, IN RESTRICTED WATERS AND WHILE SLOW
STEAMING.
31.FUEL TANK CAPACITIES BASIS 90 PCT:
   IFO 552 MT/563.36 M3
   MGO 120 MT/144.48 M3
   (CAPACITIES IN MTs MAY SLIGHTLY VARY DEPENDING ON THE DENSITY)
32.F.W. CAPACITY: 321 MT
   CONSUMPTION: 8 MT/PD
33.DISTANCE FROM HATCH OPENING TO SHIPSIDE: 5.4 MTRS
   FOR'D B/HEAD: 3 MTRS
   AFTER B/HEAD: 3 MTRS
34.DISTANCE FROM:
   BOW TO FORWARD END OF NO.1 HATCH: 17.6 MTRS
   STERN TO AFTER END OF LAST HATCH: 39 MTRS
35.LAST SS : 11/1999
      DD PASSED : 02/2004
36.IS VESSEL FITTED WITH STANCHIONS TO CARRY LOGS ON DECK AND HAS FULL COMPLIMENT OF
DECK LASHING
   EQUIPMENT: NO
37.HAS THE VESSEL TRADED TO AND C.I.S. PACIFIC PORTS IN THE LAST 12 MONTHS : NO
38.CAN VESSEL EXCHANGE BALLAST WATER AT SEA: YES
39.ARE VESSEL'S HOLDS SUITABLE FOR GRAB DISCHARGE: YES
   GRABS ONBOARD : NO
   ARE VESSEL'S TANKTOP/TDECKS SUITABLE FOR USE OF FORK LIFTS/BULLDOZERS WITH RUBBER
TYRE/TRACKS
   BUT ALWAYS IN ACCORDANCE WITH THE DECK STRENGHTS: YES
40.IS VESSEL STRENGTHENED FOR HEAVY CARGOES AND ABLE TO DO ALTERNATE HOLD
LOADING:YES
41.P&I CLUB: INTERCOASTAL SHIPOWNERS' P&I BV, ROTTERDAM
42.H&M UNDERWRITERS : ARAB ORIENT INSURANCE CO., DUBAI, UAE

                                                      9/1/2005

Annex - 6

43.H&M VALUE : USD 4.00 MILLION
44.HEADOWNERS : THYMUS SHIPPING CORP., MONROVIA, LIBERIA
     MANAGERS : TRADELINE, DUBAI, UAE.
     DISPONENT OWNERS : NIL
"DETAILS ALL ABOUT"
For
=ACCT M/s ISG, MADRAS
 PLS ADV CHRTS FULLSTYLE/REFS/FEW MOST RECENT FIXTURES
=CARGO : 17000 MTs/10 PCT MOLOO BULK BARYTES
=LOADPORT : 1SB 1SP MADRAS
=DISPORT : 1SB 1SP UMM AL QUWEIN, UAE, WHERE CHRTS GTEE 9.50 M ARRVL DRAFT
=LOADRATE : 4500 MTs PWWD SHEX UU
=DISRATE : 3500 MTs PWWD FHEX UU
=AT LOADPORT TIME NTC UU FROM 1200 NOON ON SATURDAYS OR 1700 HRS ON DAYS
PRECEDING HOLIDAYS TILL
 0800 HRS ON MONDAYS OR FIRST WORKING DAY AFTER HOLIDAYS, IUATUTC.
=AT DISPORT, TIME NTC UU FROM 1200 NOON ON THURSDAYS OR 1700 HRS ON DAYS PRECEDING
HOLIDAYS TILL 0800
 HRS ON SATURDAYS OR FIRST WORKING DAY AFTER HOLIDAYS. IUATUTC.
=LAYCAN : 29-APR/05-MAY-06
=FREIGHT : US$ 24.50 PMT FIOST BSS 1/1
=100 PCT FRT LESS COMMISSION TO BE PAID TO OWNERS NOMINATED BANK IN U.S. DOLLARS
WITHIN 3 BANKING
 DAYS AFTER COMPLETION OF LOADING AND SIGNING AND RELEASING OF Bs/L MARKED FREIGHT
PAYABLE AS PER
 C/P, PROVIDED Bs/L IN CONFORMITY WITH THE MR AND C/P TERMS ARE PRESENTED TO THE
MASTER FOR
 SIGNATURE WITHOUT CAUSING DELAYS TO THE SAILING OF THE VESSEL, OTHERWISE ANY
DELAYS IN RELEASE OF
 Bs/L NOT TO DELAY THE PAYMENT OF FREIGHT. IN CASE CHARTERERES REQUIRE FREIGHT
PREPAID Bs/L, SAME TO
 BE KEPT IN AGENTS' CUSTODY AND TO BE RELEASED UPON RECEIPT OF FULL FREIGHT INTO
OWNERS NOMINATED
 BANK ACCOUNT.
=BOTH ENDS NOR TO BE TENDERED DURING OFFICE HRS. OFFICE HRS ARE
 -AT LDPORT 0800 HRS TO 1730 HRS MONDAYS THROUGH FRIDAYS AND 0800 HRS TO 1200 NOON
ON SATURDAYS.
 -AT DISPORT : 0800 HRS TO 1730 HRS SATURDAYS THROUGH WEDNESDAYS AND 0800 HRS TO
1200 NOON ON
 THURSDAYS.
=BOTH ENDS NOR CAN BE TENDERED W/W/WAV BY CABLE/FAX/VHF/TELEX/EMAIL.
=BOTH ENDS LAYTIME TO START COUNTING AS 0800/1300 HOURS CLAUSE GENCON C/P.
=BOTH ENDS, TIME USED PRIOR TO COMMENCEMENT OF LAYTIME TO COUNT
=ONCE ON DEMURRAGE, ALWAYS ON DEMURRAGE.
=LAYTIME NON-REVERSIBLE.
=OWNERS AGENTS BENDS
=VSL FREE OF DAP/EXINS
=DEMM; US$ 6000/- PDPR HD WTS BENDS.
=DEMURRAGE/DESPATCH, IF ANY, TO BE SETTLED WITHIN 15 DAYS FROM THE DATE OF
COMPLETION OF
 DISCHARGING AND SUBMISSION OF TIMESHEETS. FAXED COPIES OF DOCUMENTS TO BE
TREATED SUFFICIENT FOR
 SETTLEMENT. DEMURRAGE/DESPATCH TO BE SETTLED BETWEEN OWNERS AND CHARTERERS
REGARDLESS OF
 CHARTERERS TERMS WITH SHIPPERS AND/OR RECEIVERS.
=T/D ON CARGO/FRT TO CHRTS ACCT
=T/D ON VSL TO OWNERS' ACCT
=SUB CHRTS RECONFIRMATION WITH ALL APPROVALS TO BE LIFTED LATEST BY COB INDIA ON 26-
APR-05
=OWISE SUB DTLS BSS CHRTS FULLY EXECUTED PROFORMA C/P
=2.50 PCT ADCOM + 1.25 PCT BROKERAGE COMMISSION TO CEEKAY SHIPPING, DUBAI ON F/D/D

9/11/2005

Annex 6

END

PLEASED TO RECEIVE CHARTERERS' CLOSEST COUNTER ON TIME.

BRGDS
TRADELINE/AS MANAGERS

9/1/2005

TOTAL P.09

# ENCLOSURE 11

Winter Scott
Solicitors

20-JUN-2005  20:23  FROM  TRADELINE LLC              TO  #                    P.01

## M.V.REGAL STAR
(CIP DD 01.12.2004)

### FINAL HIRE STATEMENT

| | |
|---|---|
| CHARTERERS | M/S.JANGHA MARINE, SEOUL, KOREA |
| DELIVERED | AT 1800 HRS GMT ON 27.12.2004 |
| REDELIVERED | AT 1230 HRS GMT ON 26.04.2005 |
| TOTAL HIRE-DAYS | 119.77083 DAYS |
| LESS : OFF-HIRE | 1.43750 DAYS (AS PER ANNEXURE - I) |
| TOTAL ON-HIRE DAYS | 118.33333 DAYS |
| CHARTER HIRE | $   12,500.00 PDPR |
| ADD. COMMISSION | 2.5% TO CHARTERERS |
| BROKERAGE | 1.25% TO SUNHILL CHARTERING, SEOUL, KOREA |
| C/VE | $    1,000.00 PMPR |
| ILOHC | $    3,250.00 LUMPSUM |
| INTERMEDIATE CLEANING | $    2,000.00 |

TOTAL DURATION                                                118.33333

| | | |
|---|---|---:|
| CHARTER HIRE | $ | 1,479,166.63 |
| C/VE | $ | 3,944.44 |
| ILOHC | $ | 3,250.00 |
| INTERMEDIATE HOLD CLEANING (JEDDAH) | $ | 2,000.00 |
| INTERMEDIATE HOLD CLEANING (HALDIA) | $ | 2,000.00 |
| DIFF. IN HIRE DUE TO SHORT RE-DELIVERY NOTICE (AS PER ANNEXURE - II) | $ | 32,083.00 |
| AGENCY EXPENSES INCURRED DUE TO ARREST OF VESSEL (ANNEXURE - III) | $ | 5,284.00 |
| ADDITIONAL PORT CHARGES DUE TO ARREST OF VESSEL (ANNEXURE - IV) | $ | 13,550.00 |
| BUNKERS ON DELIVERY | | |
| IFO 125.500 MTS @ US$ 210/- PMT | $ | 26,565.00 |
| MGO 52.600 MTS @ US$ 440/- PMT | $ | 23,144.00 |
| | $ | 1,589,914.07 |

| | | | | |
|---|---|---:|---|---:|
| LESS: | | | | |
| 2.50% ADDCOMM TO CHARTERERS | $ | 36,979.17 | | |
| 1.25% BROKERAGE TO M/S.SUNHILL CHARTERING | $ | 18,489.58 | | |
| OFF-HIRE BUNKER: (AS PER ANNEXURE - I) | | | | |
| IFO 15.800 MTS @ US$ 210/- PMT | $ | 3,318.00 | | |
| MGO 3.600 MTS @ US$ 440/- PMT | $ | 1,584.00 | | |
| BUNKERS ON RE-DELIVERY: | | | | |
| IFO 196.300 MTS @ US$ 210/- PMT | $ | 41,223.00 | | |
| MGO 27.800 MTS @ US$ 440/- PMT | $ | 12,232.00 | $ | 113,825.75 |
| | | | (A) $ | 1,476,088.32 |

| | | | | |
|---|---|---:|---|---:|
| REMITTANCE | 04.01.2005 | $ 230,645.25 | | |
| REMITTANCE | 12.01.2005 | $ 121,486.11 | | |
| REMITTANCE | 27.01.2005 | $ 182,943.25 | | |
| REMITTANCE | 15.02.2005 | $ 180,933.25 | | |
| REMITTANCE | 26.02.2005 | $ 180,943.25 | | |
| REMITTANCE | 14.03.2005 | $ 180,943.25 | | |
| REMITTANCE | 29.03.2005 | $ 182,943.25 | (B) $ | 1,320,517.61 |

| | | |
|---|---|---:|
| BALANCE DUE TO OWNERS (A - B) | $ | 155,270.71 |

E. & O.E.

20-JUN-2005  20:24  FROM TRADELINE LLC          TO  8          P.22

## M.V."REGAL STAR"
### (C/P DATED 01.12.2004)

### ANNEXURE - I

### OFF-HIRE STATEMENT

| DATE | DAY | FROM | TO | DAYS | HRS | MIN | REMARKS |
|------|-----|------|-----|------|-----|-----|---------|
| 15.03.2005 | TUE | 1600 | 2400 | 00 | 08 | 00 | |
| 16.03.2005 | WED | 0000 | 2400 | 01 | 00 | 00 | |
| 17.03.2005 | THU | 0000 | 0230 | 00 | 02 | 30 | |
| | | | | 01 | 10 | 30 | |

OFF-HIRE DAYS        1.43750   DAYS

### OFF-HIRE BUNKER :

IFO
BUNKER ON DEPARTURE HALDIA, INDIA ON 15.03.2005          138.80000
BUNKER ON ARRIVAL HALDIA, INDIA ON 17.03.2005          123.00000

OFF-HIRE IFO          15.80000

MGO
BUNKER ON DEPARTURE HALDIA, INDIA ON 15.03.2005          60.60000
BUNKER ON ARRIVAL HALDIA, INDIA ON 17.03.2005          57.00000

OFF-HIRE MGO          3.60000

28-JUN-2005  20:24  FROM  TRADELINE LLC                TO #                    P.03

## M.V.REGAL STAR
(C/P DD 01.12.2004)

### ANNEXURE - II

CHARTERERS EXPRESSED INTENTION OF RE-DELIVERING THE VESSEL ON 20.04.2005 AFTER HEARING THAT
OWNERS WERE ARRANGING TO RELEASE THE VESSEL.

VESSEL SAILED ON 26.04.2005

AS PER C/P, CHARTERERS TO GIVE 20 DAYS RE-DELIVERY NOTICE, THEREFORE CHARTERERS ARE IN
BREACH OF THE C/P FOR NOT GIVING RE-DELIVERY NOTICES TO OWNERS AS PER THE C/P. HENCE OWNERS
HAD TO FIX THE VESSEL AT THE PRAVAILING MARKET RATE AND ARE CLAIMING THE DIFFERENCE IN HIRE
FROM THE CHARTERERS, AS FOLLOWS:

| CHARTERERS | M/S.JANGHA MARINE, SEOUL, KOREA | | | |
|---|---|---|---|---|
| TOTAL ON-HIRE DAYS | 20.000 DAYS | | | |
| CHARTER HIRE | $    12,500.00 PDPR | | | |
| ADD. COMMISSION | 2.5% TO CHARTERERS | | | |
| | | | | |
| CHARTER HIRE | | | $ | 250,000.00 |
| LESS: | | | | |
| ADDRESS COMMISSION | | $    6,250.00 | | |
| | | $    6,250.00 | $ | 250,000.00 |
| | | $  243,750.00  (A) | | |

| CHARTERERS | M/S.PROMINENT SHIPPING, HONG KONG | | | |
|---|---|---|---|---|
| TOTAL ON-HIRE DAYS | 20.000 DAYS | | | |
| CHARTER HIRE | $    11,000.00 PDPR | | | |
| ADD. COMMISSION | 2.5% TO CHARTERERS | | | |
| BROKERAGE | 1.25% TO GLOBUS | | | |
| CHARTER HIRE | | | $ | 220,000.00 |
| LESS: | | | | |
| ADDRESS COMMISSION | | $    5,500.00 | | |
| BROKERAGE | | $    2,750.00 | | |
| | | $    8,250.00 | $ | 220,000.00 |
| | | $  211,750.00  (B) | | |

DIFFERENCE IN HIRE RECEIVABLE FROM CHARTERERS (A - B)          $    32,000.00

# EXHIBIT 8

歐華律師行
香港中環花園道一號中銀大廈四十一樓

**Dibb Lupton Alsop**
41/F, Bank of China Tower
1 Garden Road
Central
Hong Kong
DX 009157 Central 1
T +852 2103 0882
F +852 2810 1345
W www.dlapiper.com

**By Airmail & By Fax (44 1279 77 1968)**
Alan Oakley Esq.
Hoy's Farm
Upwick Green, Albury
Ware, Hertfordshire, SG11 2LD
United Kingdom

**Your reference**

**Our reference**

NM.1890-1

**By Airmail & By Fax (44 1444 876941)**
William Robertson Esq.
The Atlas Room
37 Woodpecker Crescent, Burgess Hill,
West Sussex RH15 9XY
United Kingdom

19 January 2006

Dear Sirs,

**Regal Star C/P dated 1 December 2004**
**Claimants : Thymus Shipping Corp**
**Respondents : Jangha Marine Corp**

1.  Paragraph 1 of the Claim Submissions is admitted.

2.  Paragraph 2 of the Claim Submissions is admitted.

3.  Save that it is admitted that the Respondents sub-chartered the vessel to Sea Quest Shipping Pte Ltd for a time charter trip of about 50-70 days, paragraph 4 of the Claim Submissions is denied.

4.  No admissions are made as to paragraph 4 of the Claim Submissions save that the enclosures are admitted.

5.  Save that it is admitted that the Respondents ordered the Master to wait and later to leave Haldia without loading cargo, no admissions are made as to paragraph 5 of the Claim Submissions.

6.  No admissions are made as to paragraph 6 of the Claim Submissions. The Respondents withdrew the vessel from the sub-charter due to the failure of Sub-Charterers to pay hire and subsequently fixed the vessel for a voyage to Bangladesh.

合伙人
夏建業 陳霆 陳承杰 陶望森
戴顕信 段祈慈 涵敬廉 高恩本 貿福煒
巴國榮達 ' 馬松培 高國俯
段電賢 盧漢生 李布哉 温可 潘忠古

顧問律師
陳立牧 邕漏睿 鄧B和 麥聯厚 李在偉

'圃际公诚人
"中国司法机菌抬公诚人

Regulated by the Law Society of Hong Kong.

**Partners:**
Jason D Carmichael, Kevin Chan, Roy S Y Chan, Christopher J D Clarke, Justin C Davidson, Claudia de Bedin, King Tak Fung, Sohail Gohinpour, Andrew C T Lui, Mabel M Lui², Nicholas Mallard, Prudence J Mitchell, Ivan C K Ng, Suzanne M Pearson, Ronald K N Sum, Horace Wenn, John Yeep

**Consultants:**
Daniel Chan, Gigi K C Cheah, Stewart Crowther, K Mimi Dang, Steven Dewhurst, JC Lee, Kevin J Murphy

¹Notary Public
²China-appointed Attesting Officer

Dibb Lupton Alsop is part of DLA Piper Rudnick Gray Cary, a global organisation.

Hong Kong switchboard
+852 2103 0808

Alan Oakley Esq.
William Robertson Esq.
Regal Star
C/P dated 1 December 2004
Continuation    2
19 January 2006

7. Save that is admitted that the vessel was arrested at Mongla, paragraph 7 of the Claim Submissions is denied. The vessel was arrested pursuant to a spurious claim brought against the Claimants upon allegations made by Sea Quest Shipping Pte Ltd as to the existence of a contract between themselves and the Claimants and that the contract had been breached by the Claimants in consequence of which losses were allegedly suffered, which allegations were fabricated and as to which the Respondents have no concern or responsibility. The Respondents rely upon the documents filed at court in Bangladesh and disclosed by the Claimants under cover of Winter Scott's letter of 6 December 2005.

8. Paragraph 8 of the Claim Submissions is admitted.

9. Paragraph 9 of the Claim Submissions is denied. There was no "encumbrance" as contemplated within the meaning of clause 18 of the charter as the arrest was not incurred by the Respondents or their agents. The arrest was granted by the court in respect of a spurious claim brought by a third party against the Claimants and was effected by a rogue court in consequence of that spurious claim. The arrest was not effected by reason of or in consequence of the employment of the vessel by the Respondents. The Respondents rely upon the documents filled at Court in Bangladesh. The Respondents cannot be held responsible for rogue actions of third parties and third world courts in circumstances involving no fault on the part of the Respondents or their agents. The Respondents were not obliged to provide security. Whilst the circumstances of the rogue arrest were unfortunate, the responsibility for the arrest consequent upon pursuit of such a spurious claim cannot be laid upon the Respondents. The cause of the arrest was not the employment of the vessel but the pursuit of a fabricated claim, namely the allegation of privity of contract between Sea Quest Shipping Pte Ltd and the Claimants.

10. As to paragraph 10 of the Claim Submissions, it is admitted and averred that the Respondents declined to provide security. There was no obligation upon the Respondents to provide security. The Claimants failed to promptly provide security and, by reason thereof, failed to act reasonably to mitigate their alleged losses.

Alan Oakley Esq.
William Robertson Esq.
Regal Star
C/P dated 1 December 2004
Continuation    3
19 January 2006

## Particulars

(1)  The Claimants were themselves under a duty to provide security promptly upon the arrest of the vessel in order to enable the vessel to promptly resume trading.

(2)  The Claimants could have provided security within 12 hours of the arrest in order to enable the vessel to resume trading and could have thereafter disputed the spurious claim in the court of Bangladesh in order to defeat the claim and obtain release of the security.

(3)  Further, in so far as the Respondents could have been under a duty to provide security for the claim, which is denied, the Respondents declined to do so, whereupon the duty fell upon the Claimants to mitigate their alleged losses.

(4)  In all material respects, the Claimants failed to act reasonably to mitigate their alleged losses by the prompt provision of security.

11.  As to paragraph 11 of the Claim Submissions, no admissions are made as to the facts and matters alleged in the first and second sentences and it is denied that the Respondents failed to give notice as alleged or at all and the final sentence of the paragraph is denied.

12.  Paragraph 12 of the Claim Submissions is denied.    The Respondents submit that the market rate for the vessel at the relevant time was US$12,500 or more and thus that there can be no loss as alleged or at all and/or that the Claimants failed to act reasonably to mitigate alleged losses.

13.  Paragraph 13 of the Claim Submissions and the Claimants' Final Hire Statement are denied.  We enclose herewith the Respondents' Final Statement of Account pursuant to which a balance of US$165,450.52 is due and owing to the Respondents.

14.  Paragraph 14 of the Claim Submissions is admitted and averred. The vessel was unable to perform any service required of her during the period of arrest and was off-hire.

Alan Oakley Esq.
William Robertson Esq.
Regal Star
C/P dated 1 December 2004
Continuation    4
19 January 2006

15. Save for the quotation from Clause 65 of the Charterparty, paragraph 15 of the Claim Submissions is denied. Clause 65 of the Charterparty has no application to the facts of the arrest which was occasioned by reason of the prosecution of a spurious claim as referred to in paragraph 9 above and not by reason of personal act or omission of the Respondents or their agents.

16. Paragraph 16 of the Claim Submissions is denied. The arrest was occasioned by the pursuit of a spurious claim brought by Sea Quest Shipping Pte Ltd against the Claimants, alleging the existence of a contract between these persons.

17. Paragraph 17 of the Claim Submissions is denied.

18. Paragraph 18 of the Claim Submissions is denied. There was no breach of clause 18 of the Charterparty.

19. No admissions are made as to paragraph 19 of the Claim Submissions and the Claimants are put to strict proof of all allegations therein.

20. Paragraph 20 of the Claim Submissions is denied.

21. Paragraph 21 of the Claim Submissions is denied.    The Bangladeshi proceedings arose in consequence of rogue action brought spuriously against the vessel by a third party and not in consequence of the employment of the vessel by the Respondents. The consequences of this rogue action were unfortunate but are not the responsibility or liability of the Respondents.

22. Paragraph 22 of the Claims Submissions is denied.

23. The Respondents counter-claim the balance of account in accordance with their Final Hire Statement.

24. Specifically, the Respondents counter-claim : -

     (1)    US$165,450.52 and/or damages;

Alan Oakley Esq.
William Robertson Esq.
Regal Star
C/P dated 1 December 2004
Continuation 5
19 January 2006

    (2)    interest; and

    (3)    costs.

Yours faithfully,

Dibb Lupton Alsop
Solicitors for the Respondents
Encl.

c.c.    Winter Scott (By Fax No.44 20 7626 5591)
        Attn: Mr. Glenn Winter/Mr. James King
        Your Ref: JCK/175-5

# JANG HA MARINE CORPORATION

7TH FL, HANARO BLDG. NO.194-4, INSA-DONG, CHONGRO-KU, SEOUL, KOREA
TEL : 82-2-2076-8500   FAX : 82-2-730-9416/7   e-mail : jangha@jangha.co.kr   TELEX : K 35209 JANGHA

## STATEMENT OF ACCOUNT

REF NO : MV REGAL STAR

TO: THYMUS SHIPPING CORPORATION          DATE  : 12TH SEP., 2005

| ITEM | DESCRIPTION | | |
|------|-------------|---|---|
| RE | FINAL HIRE STATEMENT OF MV REGAL STAR | ILOHC | 3250 |
| DELIVERY TIME | DLOSP MUMBAI 1800GMT 27TH DEC., 2004 | INTERMEDIATE | 5000 |
| BOD | IFO : 126.5MT   MDO : 52.6MT | C.V.E/MONTH | 1000 |
| REDELIVERY | DLOSP MONGLA 1230GMT 26TH APR., 2005 | | |
| BOR | IFO : 196.3MT   MDO : 53.5MT | | |

| TOTAL DURATION | 119.770833 | DAYS |
|---|---|---|
| NET DURATION | 96.958333 | DAYS |
| TOTAL OFF-HIRE | 22.812500 | DAYS |

| ITEM | DESCRIPTION | | | | Cr | Dr |
|------|-------------|---|---|---|-----|-----|
| HIRE | USD | 12500 | X | 119.770833 | $1,497,135.42 | |
| | FM | 2004-12-27 18:00 | GMT | | | |
| | TO | 2005-04-26 12:30 | GMT | | | |
| LESS ADD COMM | 2.50% | | | | | $37,428.39 |
| BROKERAGE | 1.25% | | | | | $18,714.19 |
| OFF HIRE | DUE TO OWNERS' MATTER AT HALDIA | | | | | |
| | USD | 12500 | X | 1.437500 | | $17,968.75 |
| | FM | 2005-03-15 16:00 | | | | |
| | TO | 2005-03-17 02:30 | | | | |
| OFF HIRE | DUE TO ARREST AT MONGLA | | | | | |
| | USD | 12500 | X | 21.375000 | | $267,187.50 |
| | FM | 2005-04-05 3:30 | | | | |
| | TO | 2005-04-26 12:30 | | | | |
| REFUND ADD COM | 2.50% | | | | $7,128.91 | |
| REFUND BROKER | 1.25% | | | | $3,564.45 | |
| C.V.E | | 1000 | | | $3,992.36 | |
| REFUND C.V.E | | 1000 | | | | $760.42 |
| B.O.D | IFO | 126.500 | USD | 210 | $26,565.00 | |
| | MDO | 52.600 | USD | 440 | $23,144.00 | |
| B.O.R | IFO | 196.300 | USD | 210 | | $41,223.00 |
| | MDO | 53.520 | USD | 440 | | $23,548.80 |
| OFF-BUNKER | IFO | 15.80 | MT | 210 | | $3,318.00 |
| | MDO | 3.60 | MT | 440 | | $1,584.00 |

| INTERMEDIATE | HOLD CLEANING AT JEDDAH | $2,000.00 | |
| | HOLD CLEANING AT HALDIA | $2,000.00 | |
| ILOEC | AT MONGLA | $3,250.00 | |
| ON-SITE SURVEY FEE | | | $100.00 |
| OWNER EXPENSE | WATCHMAN USD252+PW USD88+CREW CHANGE USD 1045 | | $1,385.00 |
| HIRE PAYMENT | 1ST | 30TH DEC 04 | | $230,677.25 |
| | 2ND | 11ST JAN 05 | | $181,491.61 |
| | 3RD | 26TH JAN 05 | | $182,968.75 |
| | 4TH | 14TH FEB 05 | | $180,968.75 |
| | 5TH | 25TH FEB 05 | | $180,968.75 |
| | 6TH | 14TH MAR 05 | | $180,968.75 |
| | 7TH | 28TH MAR 05 | | $182,968.75 |
| TOTAL | | | $1,568,780.14 | $1,734,230.65 |
| BALANCE DUE TO CHARTERER | | | $0.00 | ($165,450.52) |
| GRAND TOTAL | | | $1,568,780.14 | $1,568,780.14 |

# EXHIBIT 9

26-APR-2006  19:22  FROM                        TO . 0035229101345        P.02/36

## Winter Scott
### Solicitors

19-21 Great Tower Street
London EC3R 5AR
Telephone: +44 (0)20 7648 2460
Fax: +44 (0)20 7626 5591
DX: 518 London/City
E-mail: firstinitialsurname@winterscott.co.uk

| | | |
|---|---|---|
| William Robertson Esq. | **Our Ref:** | JCK/175-5 |
| The Atlas Room | **Your Ref:** | WR/04/2808/mw |
| 37 Woodpecker Crescent | | |
| Burgess Hill | | |
| West Sussex | | |
| RH15 9XY | | |

Alan Oakley Esq.
Hoy's Farm
Upwick                                    Date:            26 April 2006
Ware
Hertfordshire
SG11 2LD

Re: "REGAL STAR"

We refer to Charterers' Submissions of Defence and Counterclaim, and should be grateful if the Tribunal would accept this letter as Owners' Submissions of Reply and Defence to Counterclaim.

1. We note that Charterers' defence to this claim is that the arrest of the vessel was in respect of a "spurious" claim brought against Owners by Sea Quest, it being alleged that this claim was spurious as it relied upon the existence of a contract between Owners and Sea Quest; effectively, Charterers are arguing that the arrest had nothing at all to do with them.

2. This is wholly incorrect. In this regard, we attach a copy of the application for the arrest as *Enclosure 1*. The Tribunal will note that the Charterers are named as fifth defendants, and described as *"Agent of owner of M.V. REGAL STAR"*. Indeed, Charterers are stated as being Owners' brokers in paragraph 2(c) of the application for arrest.

3. However, as admitted in paragraph 3 of Submissions of Defence and Counterclaim, Charterers sub-chartered the vessel to Sea Quest. We attach as *Enclosure 2* a copy of the List of Documents filed by Sea Quest to support the arrest, together with items 1 (charter) and 2 (payment receipt) from that list. The Tribunal will note that the charter that Sea Quest are claiming was breached was dated 16th February 2005; this must be the charter between Charterers and Sea Quest. The Tribunal will also note that the payment receipt names Charterers are beneficiary.

4. The question then arises as to how Sea Quest could have believed (if indeed this was their belief) that Charterers were only acting as brokers: either Charterers expressly told Sea Quest that they were only acting as Owners' brokers, or Charterers never identified the intended disponent owners under the Sea Quest fixture, and allowed Sea Quest to believe that Charterers themselves were only acting as brokers.

---

Partners: Glenn Winter  Ken Scott  Michael Ellis  Damian Wilkox  Tim Houghton
Associates: Richard Verney (not admitted)  James King
Regulated by the Law Society                          VAT No GB 819417416

5. Of course, if Charterers did advise Sea Quest that they were only acting as Owners' brokers, this would constitute an extremely serious misrepresentation on Charterers' part. In the circumstances, we obviously expect Charterers to disclose all the pre and post fixture correspondence between themselves and Sea Quest. We also understand that the Master was requested by Charterers over the telephone to say to anyone who asked, that there was no charter between Owners and Charterers; this is obviously rather suspicious, and supports an inference that Charterers were attempting to conceal their involvement. We reserve the right to produce witness evidence from the Master to this effect in due course.

6. We further note that there is presently an ongoing London Arbitration reference between Charterers and Sea Quest, and should be grateful if the Tribunal would Order Charterers to disclose all the pleadings exchanged between the parties in that reference, as these are also relevant to this point.

7. Pending consideration of that disclosure, it should be obvious that if Charterers did not make it clear to Sea Quest that they were actually disponent owners of the vessel, and not brokers, then an arrest of Owners' vessel on the basis that Owners, not Charterers, were Sea Quest's contractual counterpart, was a consequence of the way in which Charterers marketed and/or employed the vessel. Accordingly, the arrest was "incurred" by Charterers.

8. Turning to the allegation that the arrest was "spurious", we attach as *Enclosure 3* a copy of the Court's decision allowing the arrest to continue until security of US$400,000 (much reduced from the initial request of US$1,000,000) was provided.

9. We would respectfully draw the Tribunal's attention to several important points:

   (a) Firstly, the Court referred to Owners' Bangladeshi lawyers' arguments that Owners were not privy to the contract between Charterers and Sea Quest, and were accordingly not liable to pay Sea Quest's claims.

   Having heard these arguments, the Court nevertheless decided that the arrest should continue until security was provided. There was insufficient evidence before the Court for it to reach a decision on the correct contractual party, and indeed that would be a matter for a Tribunal in another jurisdiction. As the Court had considered the opposing arguments and evidence, it therefore cannot be said that the arrest was spurious, or the actions of a "rogue court". It is not for this Tribunal to decide that the Bangladeshi Court is a "third world" court producing "spurious" decisions and ordering "rogue" arrests when it had clearly considered all the arguments and evidence put before it, and allowed the arrest to continue until security was provided.

   Indeed, the Court specifically stated that "prima-facie it appears that [Sea Quest] has made over payments to one of the defendants..." Charterers were one of the defendants to the application, and the payment receipts submitted to the Court showed Charterers as beneficiary. The Court therefore clearly viewed it as a strong possibility that Charterers, whom evidence showed to have received monies, had the benefit of "over payments" from Sea Quest, giving rise to the application for, and continuation of, arrest.

   This is clear evidence that the arrest was "incurred" or "occasioned" by Charterers.

   (b) Secondly, in case it is being argued by Charterers that the arrest was a spurious or rogue decision as the property under arrest was not owned by the party against

whom the claim should properly have been made, we would point out that it is hardly unusual or in some way anomalous for an innocent party's property to be arrested or attached in respect of a claim against another party.

For example, a lien may be exercised against cargo for hire due from a time charterer to his owners. That does not mean that the lien is spurious or invalid. Assuming that the charter lien clause has been effectively incorporated into the relevant bill, the entirely innocent cargo owner can do nothing about this. He must resort to proceeding against charterers to recover any losses suffered as a result. To take another example, under Belgian Law an *"innocent"* vessel can be arrested in respect of a claim against her time charterers; this is effectively the position in this case, again demonstrating that the Bangladeshi arrest was in no way spurious, but simply the result of the way in which Charterers marketed and/or employed the vessel.

Indeed, if it is the case that, in Bangladesh, a vessel can be arrested in respect of a claim against her time charterers, then Charterers are liable for the consequences of that arrest pursuant to the implied indemnity in clause 8; see, for example, *The Island Archon* [1994] 2 Lloyd's Rep. 227. Owners never agreed to bear the risk of their vessel being arrested as a result of a claim against Charterers (particularly where this may have been exacerbated by Charterers failing to identify themselves as disponent owners to their sub-charterers).

(c) Thirdly, Charterers were named in the arrest order as a defendant, and they were notified of the Court proceedings by Owners. However, at no stage did Charterers make it clear to the Court that there were not, in fact, brokers, and were actually the disponent owners of the vessel. In fact, in correspondence with Owners' P&I Club, Charterers demanded that Owners not produce the charter between Owners and Charterers to the Court; this, allied with Charterers' statements in several of the enclosures attached to Owners' Submissions of Claim that correspondence between them should not be disclosed to Sea Quest, and Charterers' request to the Master to withhold the fact of there being a charter between Owners and Charterers, supports an inference that Charterers had deliberately not advised Sea Quest that they were disponent owners, and did not wish Sea Quest to know the true contractual position.

10. It is therefore absolutely clear that the arrest of the vessel was *"incurred by [Charterers] or their agents"*. As such, putting up security to allow the vessel to continue was in the first instance Charterers' responsibility.

11. In order to remove any possible remaining doubt that the arrest was Charterers' responsibility, we refer again to the application for arrest, attached as *Enclosure 1*. Paragraph 2 of the application make it clear that the complaint giving rise to the arrest was that:

*"the vessel arrived at the port of Paradip on March 16, 2005 without loading the cargo from the port of Haldia"* (sub-paragraph (j))

*"That this the defendants committed wilful breach under the Charter Party Agreement causing huge financial loss to the plaintiff in that because of such breach on the part of the defendants the plaintiff has defaulted in the contract of carriages entered into between the plaintiff and the supplier for carrying the iron [o]re..."* (sub-paragraph (k))

12. We would emphasise at this stage that the application refers to *"defendants"* (Charterers being named as a defendant), and to *"the Charter Party Agreement"*. As noted above, as

Owners had no charter with Sea Quest, this can only refer to the charter between Charterers and Sea Quest. We would further emphasise that Charterers have also admitted that they gave orders for the vessel to leave Haldia without loading any cargo, and that they withdrew the vessel from Sea Quest due to Sea Quest's failure to pay hire (paragraphs 5 and 6 of the Submissions of Defence and Counterclaim).

13. The application continues with a breakdown of the monies being claimed, and an assertion (in paragraph 3) that as the vessel was about to leave the port, Sea Quest's claim in respect of "wilful breach under the Charter Party Agreement" may be unsettled. Again, this can only refer to the charter between Charterers and Sea Quest. Accordingly, paragraph 5 continued "That in the facts and circumstances herein above, it is necessary for the ends of justice that warrant of arrest be issued against the defendant vessel before it leaves the jurisdiction of this Hon'ble Court."

14. It was on this basis that the vessel was arrested. Accordingly, we submit that there can be absolutely no doubt that the arrest was "incurred" by Charterers, as:

   (a) Charterers have admitted that there was a charter between themselves and Sea Quest; however, there was no contractual relationship between Owners and Sea Quest;

   (b) Charterers have admitted that Sea Quest failed to pay hire under that sub-charterparty;

   (c) Charterers have admitted that they ordered the vessel to leave Haldia without loading any cargo, and the evidence shows that they gave these instructions (which Owners were obliged to follow) due to Sea Quest's failure to pay hire;

   (d) The evidence of the Bangladeshi Court documents shows that Sea Quest arrested the vessel due to "wilful breach under the Charter Party Agreement"; the charter they are referring to can only be that with Charterers, and the breach referred to was that of leaving Haldia without loading the cargo.

15. As to paragraph 10 of the Submissions of Defence and Counterclaim, it is denied that Owners failed to act reasonably to mitigate their losses. The primary duty to put up security was on Charterers, pursuant to clause 18. In view of that clause, and knowing that Sea Quest had arrested the vessel by reason of their orders to the Master to leave Haldia without loading Sea Quest's cargo, it was not for Charterers to "wash their hands" of the problems they had created.

16. In particular, as to paragraph 10(2), Charterers themselves could and should have provided security within 12 hours of the arrest, but failed to do so.

17. As to paragraph 10(3), it can hardly be the case that, as soon as one party refuses to carry out their charterparty obligations, the other party is immediately under a duty to perform those obligations for them. This must be particularly so where the obligation in question involves putting up security for just over US$1 million; the innocent party, who may be unable quickly to raise security in that amount, is entitled to a reasonable period to persuade the party in breach to perform; see, for example, Clippens Oil Co v. Edinburgh and District Water Trustees [1907] AC 291 at 303:

   "In my opinion the wrongdoer must take his victim talem qualem, and if the position of the latter is aggravated because he is without the means of mitigating it, so much the worse for the wrongdoer, who has got to be answerable for the consequences flowing from his tortious act."

4

18. In this case, Owners acted entirely reasonably in spending a few days attempting to persuade Charterers to perform their charter obligations. Once it became absolutely clear that Charterers would not be performing their charter obligations, Owners took steps to mitigate their loss by dealing with the Bangladeshi Court themselves. Owners therefore reasonably mitigated their losses, and in this regard, we would respectfully refer the Tribunal to the comments of Lord Macmillan in *Banco de Portugal* v. *Waterlow* [1932] AC 452 at 506:

> "Where the sufferer from a breach of contract finds himself in consequence of that breach placed in a position of embarrassment the measure which he may be driven to adopt in order to extricate himself ought not to be weighed in nice scales at the instance of the party whose breach of contract has occasioned the difficulty. It is often easy after an emergency has passed to criticise the steps which have been taken to meet it, but such criticism does not come well from those who have themselves created the emergency."

19. As to paragraph 11, we note that Charterers have denied that they failed to give the required 20-day notice. Owners put Charterers to strict proof that they gave this notice.

20. As to paragraph 12, we note that Charterers have failed to submit any evidence supporting their allegation that the market rate for the vessel at the relevant time was US$12,500 or more. The only evidence before the Tribunal therefore supports a rate of US$11,000 (actually, rather less than this, demonstrating that Owners properly mitigated their losses), and we would ask the Tribunal to find accordingly.

21. It is denied that there is any balance due to Charterers, as alleged in paragraph 13 or at all.

22. As to paragraphs 14 to 17, it is denied for the reasons set out previously and above that the arrest of the vessel did not result from the personal act, omission or default of Charterers or their agents.

23. As to paragraph 21, it is denied for the reasons set out previously and above that the arrest of the vessel was not in consequence of the employment of the vessel by Charterers.

24. Paragraphs 23 and 24 are denied.

Yours faithfully.

WINTER SCOTT
Enc.
cc.

DLA
Fax: 00 852 2810 1345
For the kind attention of Nicolas Mallard Esq., ref. NM.1890-1

5

# "REGAL STAR"

## ENCLOSURES TO OWNERS' SUBMISSIONS OF REPLY AND DEFENCE TO COUNTERCLAIM



# "REGAL STAR"

# ENCLOSURE 1

**Winter Scott**
Solicitors

26-APR-2006  18:04  FROM                              TO  0085229121345        P.29/36



1795
30-3-05

## IN THE SUPREME COURT OF BANGLADESH

### HIGH COURT DIVISION

(ADMIRALTY JURISDICTION)

ADMIRALTY SUIT NO. 04 OF 2005

**IN THE MATTER OF:**

An application for arrest of defendant No.

1 vessel, M. V. REGAL STAR

**AND**

**IN THE MATTER OF:**

Sea Quest Shipping Pte Ltd

Suite # 27-12

10 Anson Road International Plaza

Singapore

Represent by its Authorised

Representative in Bangladesh

Mr. Noor Hossain

Son of Late Hakim Ali Howlader

Apartment No. D

House No. 15 (7th Floor)

Road No. 17

Banani, Dhaka-1213

2

Plaintiff

-Versus-

01. M. V. REGAL STAR

A vessel now berth at Mongla Port

P.S. Bandar

Mongla, Bagerhat

02. Thymus Shipping Corporation

80 Broad Street

Monrovia, Liberia

Owner of M. V. REGAL STAR

A vessel now berth at Mongla Port

P.S. Bandar

Mongla, Bagerhat

03. Master of M. V. REGAL STAR

A vessel now berth at Mongla Port

P.S. Bandar

Mongla, Bagerhat

04. Trade Line LLC

3

859 Office Tower

Al-Ghurair Centre

Deira, Dubai, UAE

Operator of M. V. REGAL STAR

A vessel now berth at Mongla Port

P.S. Bandar

Mongla, Bagerhat

05. Jang Ha Haulins Corporation
7th Floor, Hakwo building No. 144-1 Seoul, Korea
Agent of Owner of M. V. REGAL STAR, now berthed at
Mongla, Bagerhat

06. Fortune Shipping Lines

Local Agent

M. V. REAL STAR

A vessel now berth at Mongla Port

P.S. Bandar

Mongla, Bagerhat

<u>Principal Defendants</u>
<u>/Principal Opposite-parties</u>

07. The Chairman

Mongla Port Authority

P.S. Bandar

Mongla, Bagerhat

08. The Harbour Master

Mongla Port Authority

P.S. Bandar

Mongla, Bagerhat

09.    The Commissioner of Customs
       Mongla Customs House

       P.S. Bandar          Khulna

       Mongla, Bagerhat
10.    The Superintendent of Police
       Bagerhat          Proforma Defendants
                         / Proforma Opposite-parties

To:

Mr. Justice Md. Ruhul Amin, performing the function the Chief Justice of
Bangladesh and his companion Justices of the Hon'ble Supreme Court.

                        The humble petition on behalf of the

                        plaintiff/petitioner most respectfully

**SHEWETH:**

01.    That the plaintiff/petitioner has filed the above suit for recovery of US$
       1,000,716.00 from principal defendants/opposite-parties No. 1 to 5.

02.    That the brief background of the case is as follows:

5

a) That the plaintiff is a company incorporated in Singapore and carries on shipping businesses. The plaintiff is represented in Bangladesh through its authorised representative.

b) That the defendant No. 1 is an ocean going Motor Vessel flying Vincent Flag now berth at Mongla Port, P.S. Bandar, Mongla, Bagherhat. The defendant No. 2 is the owner of the defendant No. 1 vessel and represented in Bangladesh by its local agent the defendant No. 5 Fortune Shipping Lines, the defendant No. 3 is the Master of the defendant No. 1 vessel and the defendant No. 4 is the operator of the defendant No. 1 vessel.

c) That the plaintiff after negotiation though its broker Fleet Ship Marine (M) Sdn Bhd entered into Charter Party Agreement with defendant No. 2 who negotiated through its broker Jang Ha Marine Corporation for time charter of the defendant vessel M. V. REGAL STAR for a period of about 50-70 days to be re-delivered to the owner within May 6, 2005 at a hire of US$ 14,000.00 per day on pro rata basis. Pursuant to the Charter Party Agreement the plaintiff paid an amount of US$ 281,766.00 to the defendant No. 2 on 03.03.2005 and 04.03.2005 being 15 days hire and value of

6

bunkers. The vessel was to be delivered by the owner to the charterer on February 25, 2005 at the port of Haldia, India.

d)  That upon charter of the defendant vessel the plaintiff entered into contract of carriage with West Bengal Essantial Commodities Supplier Corporation Limited, Kolkata, India for carriage of 18,000 metric tons of Iron ore from India to China.

e)  That the defendant vessel arrived at the port of Haldia, India and issued Notice of Readiness on February 25, 2005 to the plaintiff. The plaintiff sent voyage instructions of the vessel to the master vide e-mail dated March 5, 2005 in the following manner:

    aa)  vessel fixed one tp trip via sps sbs ec india/china

    bb)  delivery:        dlosp haldia, east coast india,

    cc)  redelivery:      dlosp 1sp china

    dd)  quantity:        upto vessel's full capacity of iron ore
                 fines

    ee)  load port's menu: cargo to be loaded from two east coast India ports. 1st load port is haldia where you will load cargo up to permissible draft and then you will proceed to 2nd load port at paradip, east coast India for loading balance cargo of iron ore

7

ff)  discharge ,port's name: to be nominated (we will
declare d/port's name immediate after sailing from
Singapore)

gg)  load port's agent details:

at haldia (1st load port)        patvolk, paradip, India

tel: 91-3224-252726/253524

e-mail: kgp-pathal@sanchatnet.in

mob: 91-9832! 10408

at paradip(2nd load port)      patvolk, paradip, India

tel: 91-6722-222180/222280

fax: 91-6722-222580

e-mail: palvoikpdp @sify.com

pic: mr. Sanjav nayak

mob: 91-9863041341

soh: 91 6722 222721

hh)  discharge port agent's details: to be nominated (you
will be informed later on cable)

ii)  bunkering port: aft completion of loading cargo at
paradip port you will proceed with her full speed
towards s'pore for bunkering

8

jj)   bunker supplier/agent's in s'pore: to be nominated (we
will revert upon sailing from paradip port)

kk)   aft completion of bunker in s'pore you will proceed
towards china without any delay at full speed

ll)   charterer's details: seaquest shipping pte ltd, Singapore

tel: 65-62263342/62262214

fax: 65-62262646

e-mail: seaquest@seaquest.sg

ple: mr. shah

mobile: 65-97654108

mm)   you will send us vsl's day to day position along with
her rob position. Also you will send us her every noon
position.

nn)   you will send us vsl's eta notices to the chtrs/agent
both load & discharge & bunker port agent time to time

oo)   cargo to be ascertained at both ends by load and light
draft survey, so you hv to be much careful during
survey and co-operate with the surveyor.

pp)   you   will   issue   a   authorization   letter   for
signing/releasing bs/l to load port agent with the
following format

9

"I master of ..........hereby authorizes m/s...............to sign and release ba/l for port of loading ...............on my behalf subject compliance of following conditions:

01) the quantity of cargo to be in strict conformity with mate's receipt.

02) prior release of ba/l, approval must be obtained from t/o-seaquest, singapore

we hope to get yo/yr crew membebk full support and co-operation during her currency of voyage.

f) That the plaintiff arranged payment of an amount of US$ 18,950.00 only on account of pilotage, port dues, berth hire, inward & outward mooring, taxes, Draught survey, light dues, agency fees, etc. for the defendant vessel at the port of Haldia.

g) That the defendant vessel was equipped with the gear having lifting capacity of 14 metric tons. But the port regulation of Haldia required any vessel to be equipped with gear having lifting capacity not less than 20 MT SWL and any vessel having lifting capacity below the said requirement could only be allowed to berth with the assistance of shore crane (TMIL Crane). Since the defendant vessel was equipped with the gear having lifting capacity of 14 metric tons, the vessel could not berth as she needed

10

shore crane (TMIL CRANE) which was not available before
March 10, 2005. Accordingly, the Estimated Time for Berthing
(ETB) of the defendant vessel was fixed approximately on March
12, 2005, which was subsequently re-fixed on March 15, 2005. As
such there was no scope of berthing before March, 15 2005. The
said fact is evident from the e-mail dated 03.03.2005 and Berthing
·Prospect dated 06.03.2005 of the vessels 'at the port of Haldia '
communicated by Patvolk Haldia to the plaintiff.

h) That in addition to the above, although the owner declared the
lifting capacity to be 14 MT, but the port authority of Haldia
informed that the defendant vessel's lifting capacity was only 4
MT and the defendant vessel was blacklisted by the Haldia Port
Authority because in a previous call to Haldia the vessel was
in port for about 30 days due to her low capacity lifting gear.

i) That since due to self-defect of the defendant vessel she could not
berth, the plaintiff put the vessel off hire. However, the agent of
the plaintiff at Haldia arranged special berthing of the defendant
vessel on March 12, 2005. But when the Pilot tried to board the
vessel on March 12, 2005 to berth the vessel the master of the
vessel refused to allow the Pilot to board for berthing. Because of
this the Port Authorities cancelled the berthing schedule and

26-APR-2006  19:06  FROM                    TO  0065228101345          P.19/36

11

informed that they will only allocate new berthing schedule when the master would confirm in writing that he is ready to berth. But the master stopped all communications with the plaintiff or its agent.

j) That while the plaintiff and its agent was waiting for master's confirmation the plaintiff was informed by its agent at the port of Paradip that the vessel arrived at the port of Paradip on March 16, 2005 without loading the cargo from the port of Haldia.

k) That thus the defendants committed wilful breach under the Charter Party Agreement causing huge financial loss to the plaintiff in that because of such breach on the part of the defendants the plaintiff has defaulted in the contract of carriages entered into between the plaintiff and the supplier for carrying the iron ore. The supplier has already threatened the plaintiff of lodging claim for the loss sustained by the supplier.

l) That as such the plaintiff is entitled to get refund of the advance amount of US$ 281,766.00 paid by the plaintiff to the defendant No. 1 and the defendants are jointly and/or severally liable to refund the said amount to the plaintiff.

12

m) That the plaintiff is also entitled to the amount of US$ 18,950.00 only on account of pilotage, port dues, berth hire, inward & outward mooring, taxes, Draught survey, light dues, agency fees, etc incurred by the plaintiff at the port of Haldia for the defendant vessel.

n) That in addition due to breach of the Charter Party Agreement the plaintiff has suffered substantial consequential loss which has been preliminary assessed at US$ 700,000.00 only.

o) Thus the total claim of the plaintiff comes to US$ 1,000,950.00 (US Dollar one million nine hundred fifty) only in the following manner:

| Sl | Description | Amount |
|----|-------------|--------|
| 1. | On account of refund of the hire and value of bunkers paid by the plaintiff to the defendant | US$ 281,766.00 |
| 2. | On account of pilotage, port dues, berth hire, inward & outward mooring, taxes, Draught survey, light dues, agency fees, etc incurred by the | US$ 18,950.00 |

13

| | plaintiff at the port of Haldia for the defendant vessel | |
|---|---|---|
| 3. | On account of consequential loss | US$ 700,000.00 |
| | Total | US$ 1,000,716.00 |

The defendants jointly and/or severally are liable to pay the above amount to the plaintiff.

p) That the defendant vessel is now at Mongla Port. The defendants are in the process of obtaining port clearance for the sail of the vessel. It is submitted that at any moment the vessel will leave the territorial waters of Bangladesh whereupon the legitimate claim of the plaintiff will remain unrealised and unsettled.

q) It is stated that the defendants are jointly and/or severally liable to pay US$ 1,000,716.00 (US Dollar one million seven hundred sixteen) only to the plaintiff on account of refund of advance payment and compensation. As the plaintiff have failed to recover their dues from the defendant vessel and or other defendants it has been compelled to file this suit to recover the said amount from the defendants with compensation @15% per annum. The said claim is enforceable under Admiralty Jurisdiction of this Hon'ble Court.

14

03.    That the defendant vessel is now within the territorial waters of
       Bangladesh and is now moored at Mongla Port. It has completed
       discharge of the cargo and is waiting for the port clearance. As soon as
       the clearance is obtained the vessel will leave the port and will leave
       Bangladesh and go out of jurisdiction of Bangladesh without settling the
       claim of the plaintiff/petitioner. In such event the plaintiff stands to loose
       their legitimate claim. The owners/opposite parties do not have any other
       property in Bangladesh other than this vessel. In the event a decree is
       passed against the defendants there will be no property against which the
       decree can be enforced.

04.    The defendants have received hints of this suit and are trying to collect
       port clearance certificates from the Agent hurriedly and to leave the port
       hurriedly.

05.    That in the facts and circumstances stated herein above, it is necessary for
       the ends of justice that a warrant of arrest be issued against the defendant
       vessel before it leaves the jurisdiction of this Hon'ble Court.

06.    That in the event the defendants/opposite parties furnish sufficient
       security in favour of the plaintiff/petitioner to the satisfaction of this
       Hon'ble Court, the said vessel may be released from the order of arrest.

15

07.    That unless a warrant of arrest is issued against the defendant vessel the plaintiff/petitioner will never be able to recover their legitimate dues and shall suffer irreparable loss and will be seriously prejudiced.

08.    That the application has been filed bona fide.

Wherefore it is humbly prayed that your Lordships would graciously be pleased to:

(a) pass an order for the arrest and detention of M. V. REGAL STAR now berthed at Mongla Port before it sails out from Mongla Port and attach the same before judgement in this Admiralty Suit;

(b) further issue a Warrant of Arrest for the vessel M. V. REGAL STAR and be served on her Master to be taken into and held in custody of the Marshal of the Admiralty Court as security for payment of the decretal



16

amount, if any passed by this Court in

favour of the plaintiff/petitioner;

(c) to release the vessel M. V. REGAL

STAR from arrest, detention and

attachment in the event of the

principal defendants Nos. 1 to 6

furnishing sufficient and proper

security in favour of the plaintiff to

the satisfaction of the Hon'ble Court;

and/or

(d) pass any other or further order or

orders as your Lordship may deem fit

and proper

AND for this act of kindness plaintiff/petitioner as in duty bound shall ever pray.

**AFFIDAVIT**

I, Mr. Noor Hossain, son of Late Hakim Ali Howladar, Apartment No. D,

House No. 15 (7ᵗʰ Floor), Road No. 17, Banani, Dhaka-1213, aged about 37

# "REGAL STAR"

## ENCLOSURE 2



**Winter Scott**
Solicitors



দুই    দুই          সাছলাদেশ
টাকা   টাকা          কোর্ট ফি

1796
30·9·05

## IN THE SUPREME COURT OF BANGLADESH

## HIGH COURT DIVISION

### (ADMIRALTY JURISDICTION)

### ADMIRALTY SUIT NO. 04 OF 2005

Sea Quest Shipping Pvt Ltd

PLAINTIFF

Versus

M. V. REGAL STAR and others

DEFENDANTS

## LIST OF DOCUMENTS (FAXED COPY) FILED BY THE PLAINTIFF

| SL. | DESCRIPTION | DATES | PAGES |
|-----|-------------|-------|-------|
| 1. | Terms and Conditions of Charter Party | 16.02.2005 | 1 - 2 |
| 2. | Payment Receipt | 03.03.2005 04.03.2005 | 3 - 5 |
| 3. | Voyage Instruction | 05.03.2005 | 6 - 7 |
| 4. | Berthing Prospect | 06.03.2005 | 8 |
| 5. | Correspondences | Various dates | 9 - 26 |

(Morshed Ahmed Khan)

## Sea Quest

From:       "Michael Lwee" <michael@fleetshipmarine.com>
To:         "Wrc" <fixing@seaquest.sg>
Cc:         "Wrc" <wrc@seaquest.sg>
Sent:       Wednesday, February 16, 2005 2:37 PM
Subject:    Fw: MV REGAL STAR / SEA QUEST

F -i FLEET SHIP MARINE (M) SDN BHD

V RC/MIKIE

GOOD DAY,

RE : MV. REGAL STAR / SEA QUEST

PLS REFER TO OUR EMAILS AND TELCONS, OWNERS CNFMD CHARTS LAST AND PLEASED TO RE-CAP
AS AGREED SO FAR BETWEEN CHARTS / OWNERS ASF : -

M/V REGAL STAR
S DBC  ST. VINCENT AND THE GRENADINES FLAG
1 984 BLT CLASS: LLOYDS REGISTER/100 A1+LMC
GRT/NRT 12,539 / 6,143
L DA/LBP/BEAM/DEPTH : 160 M/150 M/22 M/12.50 M
SUMMER DWT 18,411 MTS ON 8.815 MTR SW
7 PC/FWA: 28,95 / 199 MM
CONSTANTS: 250 MTs (EXCL FW)
HOLDS/HATCHES: 5 / 5
TYPE OF HATCH COVERS: MACGREGOR FOLDING JACKNIFE TYPE
CARGO GEAR : 4X14 MTs CRANE
HOLD CAPACITIES :
GRAIN / BALE : 23,865 CBM / 22,505 CBM
        NO. 1    4,160 / 3,968
        NO. 2    5,001 / 4,711
        NO. 3    5,002 / 4,672
        NO. 4    4,987 / 4,669
        NO. 5    4,712 / 4,484
TANK TOP : HOLDS (1,3 & 5) : 14.67 MT / M2 (HOLDS 2&4) 8.30 MTs/M2
SPEED N CONSUMPTION:
ABT 11.50 KTS ON ABT 19.00 MTS IFO 180 CST + 2.50 MTS MGO - AT SEA
I : PORT IDLE : ABT 1.00 MT IFO 180 CST + ABT 1.00 MT MGO
V ORKING : ABT 1.00 MTS IFO 180 CST + ABT 2.50 MTS MGO
F LL DTLS GIVEN ABT

FOR :

- A/C SEA QUEST SHIPPING PTE LTD
- DELIVERY : DLOSP HALDIA ATDNSHINC
- LAYCAN : 0001HRS 25TH FEB/2400HRS 1ST MARCH , 2005
  (ETR O/A 24-25 FEB AT HALDIA IF AGW/WP)
  TRADE : FOR PERIOD TC OF ABT 50-70 DAYS TRADING BUT IN ANY CASE
  VESSEL TO BE REDELIVERED TO OWNRS LATEST BY 5TH MAY.,2005.
  VSL TO BE ALWAYS TRADED VIA SB(S), SP(S), SA(S) AAAA AWIWL WITH
  LAWFUL AND HARMLESS CGOES WITHIN SUEZ-JAPAN RANGE. IMO/IMDG
  CGOES ALWAYS EXCLUDED.
- INT CLINKER/IRON ORE INBULK
- REDELIVERY : DLOSP SUEZ/JPN RGE PICO ATDNSHINC. HOWEVER, IF LAST

~2~

NSPORT PRIOR TO REDELY P.G., THEN REDELY TO BE AT PASSING MUSCAT
OUTBOUND.
- HRE : US$ 14,000/- PDPR DIOT.
- PAYMENT : FIRST 16 DAYS CHARTER HIRE AND VALUE OF BUNKERS ON DELY
  PAYABLE WITHIN 3 BANKING DAYS AFTER VSL'S DELY AND RCPT OF OWNRS'
  HIRE INVOICE BY FAX OR EMAIL.
- LOHC : US$3,600/- IN LUMPSUM
- GWE : US$ 1,200/- PMPR
- BUNKER CLAUSE : B.O.D ABT 120 MTS FOR IFO AND ABT 50 MTS FOR MGO.
  B.O.R TO BE ABT SAME ONTY AS ON DELY.  BUNKER PRICES BOTH ENDS
  USD 280/- PMT FOR IFO AND USD 480/- PMT FOR MGO.
- ALL NEGO AND EVENTUAL FIXTURE TO BE KEPT PNC
- SUBJ STEM 24HRS AFTRMT
- SUB OWNRS REVIEW CHTRS BACKGROUND,WHICH TO BE LIFTED PRIOR TO CHTRS SUB.
- OWISE AS PER OWNRS' BTB HEAD C/P WITH LOGICAL ALTERNATIONS ONLY.
- COMM : 2.5% ADCOM

E ND

P S CNFM ABV RE-CAP IS INORDER TO PASS SAME TO OWNERS AND PUT VSL ON SUBJ.

AWAITING YOURS

F-

B. RGDS

2/22/2005

26-APR-2006  19:08  FROM                    TO  2035228101345        P.29/36

— 2 —

4.Nov. 2005 19:09    Indian Bank SS 69531681                    No.0272  P. 1

A:0000-18:51:35                              Date:Oct.61-04-07163

------------ Instance Type and Transmission ------------
Notification (Transmission) of Original sent to SWIFT (ACK)
Network Delivery Status : Network Ack
Priority/Delivery : Normal
Message Input Reference : 1951 051004 INDBSGSXXXX ........

------------ Message Header ------------
Swift INPUT  : FIN 103 Single Customer Credit Transfer
Sender      : INDBSGSXXX
              INDIAN BANK
              SINGAPORE SG
Receiver    : BOSCUSS1NYK
              UNION BANK OF CALIFORNIA INTERNATIONAL
              NEW YORK NY US

------------ Message Text ------------
20: Sender's Reference
    YI050607
23B: Bank Operation Code
    CRED
32A: Val Dte/Currency/Interbank Settld Amt
    Date        :04 March 2005
    Currency    : ...... US DOLLAR USD
    Amount      :        #16,766,00 =
50K: Ordering Customer-Name & Address
    CONNECTWELL (DY)
59A: Intermediary Institution - BIC
    CHASUS33
    JPMORGAN CHASE BANK
    NEW YORK NY US
57A: Account With Institution - ...
    /36-SID-101791-1
    KOEXKRSE
    KOREA EXCHANGE BANK
    SEOUL KR
59: Beneficiary Customer-Name & Addr
    /1.50-SID-100797-1
    YANG HA MARINE CORPORATION
70: Remittance Information
    IVO-SEA QUEST SHIPPING PTE LTD
71A: Details of Charges
    SHA

------------ Message Trailer ------------
{MAC:000(R001)}
{CHK:7V7APFDA05FD3}

------------ Interventions ------------
Category      : Network Report
Creation Time :04/06/05 19:51:16
Application   : SWIFT Interface
Operator      : SYSTEM
Text
{1:F1INDBSGSXXX2222 .......... {1:?7{A25V04261}3{431:0}}

25-APR-2005  18:08   FROM                          TO  2065228101345        P.30/36

~ 4 ~

****** MESSAGE HARDCOPY ******                 23-03-2005 13:02   page no 2
Status : DISPOSED TO THE TWR
Station :   1         REPRINTING OF MESSAGE

HCPY  *FIN/SF-0617Z/ISN       :F01   -S5.    .S5D..
HCPY  *Own Address            *AI LATHBBACAL  ALI ANABAD BANK
HCPY  *                                       KULKATA (CALCUTTA)
HCPY  *                                       (INTERNATIONAL BRANCH, CALCUTTA
HCPY  *Input Message Type      :103           SINGLE CUSTOMER CREDIT TRANSFER
HCPY  *Omit to               :AEIBUS33XXXX    AMERICAN EXPRESS BANK, LTD.
HCPY  *                                       NEW YORK, NY
HCPY  *Input Time             :1314
HCPY  *RUR                    :
HCPY  *Priority/Obsol.Period  :Normal/103 Minutes
HCPY  *
HCPY  *20 /SENDER'S REFERENCE
HCPY  *    ISC-CR-USD/52Y05
HCPY  *23B/BANK OPERATION CODE
HCPY  *    CRED
HCPY  *32A/VAL DTE/CUR/INTERBNK SETTLD AMT
HCPY  *    050303USD265000.00
HCPY  *                        23-03-2005
HCPY  *                        US Dollar          265000.00
HCPY  *
HCPY  *50K/ORDERING CUSTOMER-NAME & ADDRESS:
HCPY  *    WEST BENGAL ESSENTIAL COMMODITIES
HCPY  *    SUPPLY CORPORATION LIMITED
HCPY  *    11A, MIRZA GHALIB STREET
HCPY  *    KOLKATA-700 067, INDIA.
HCPY  *52D/ORDERING INSTITUTION-NAME & ADDR
HCPY  *    ALLAHABAD BANK
HCPY  *    CHOWRINGHEE BRANCH
HCPY  *    66 CHOWRINGHEE ROAD
HCPY  *    KOLKATA-70 071, INDIA.
HCPY  *56A/INTERMEDIARY INSTITUTION - BIC
HCPY  *    CHASUS33
HCPY  *                        JPMORGAN CHASE BANK
HCPY  *                        NEW YORK, NY
HCPY  *
HCPY  *57A/ACCOUNT WITH INSTITUTION - BIC
HCPY  *    KOEXKRSE
HCPY  *                        KOREA EXCHANGE BANK
HCPY  *                        SEOUL
HCPY  *
HCPY  *59 /BENEFICIARY CUSTOMER-NAME & ADDR
HCPY  *    / A/C NO. 150-JRD-1027777-1
HCPY  *    JANG HA MARINE CORPORATION
HCPY  *    BANK ACCOUNT WITH
HCPY  *    KOREA EXCHANGE BANK
HCPY  *    INSADONG BRANCH.
HCPY  *70 /REMITTANCE INFORMATION
HCPY  *    REMITTANCE OF FREIGHT FOR SHIPMENT
HCPY  *    18,000 MT OF IOF. AS PER INVOICE
HCPY  *    DATED 02/03/05 ISSUED BY SEA QUEST
HCPY  *    SHIPPING PTE LTD.
HCPY  *71A/DETAILS OF CHARGES
HCPY  *    SHA
HCPY  *

c. 5 -

SHAH / MEKE

M/V REGAL STAR

ACCOUNT

KOREA EXCHANGE BANK INSADONG BRANCH
A/C NO: 156-J8D-100797-1
SWIFT CODE: KOEXKRSE
IN FAVOUR OF : JANG HA MARINE CORPORATION
CORRESPONDENCE BANK: JP MORGAN CHASE BANK, NEW
YORK
SWIFT CODE: CHASUS33

# "REGAL STAR"

## ENCLOSURE 3



IN THE SUPREME COURT OF BANGLADESH
HIGH COURT DIVISION
(ADMIRALTY JURISDICTION)
ADMIRALTY SUIT NO.4 OF 2005

IN THE MATTER OF:
An application filed on behalf of the defendants No.1
and 3 for reduction of the Bank Guarantee amount for
release of the vessel m.v. REGAL STAR from arrest.
-AND-
IN THE MATTER OF:
Sea Quest Shipping Pte Ltd., Singapore
..........Plaintiff.

-Versus-
m.v. REGAL STAR now lying at Mongla Port,
Mongla and others
.............. Defendants.

Mr. Morshed Ahmed Khan, Advocate.
................For the Plaintiff.
Mr. M. Hafizullah, Senior Advocate with
Mr. Md. Al-Amin Sarker and
Mr. Muhammad Ohiullah, Advocates
.............For the defendants No.1 & 2.

Present:                              The 16th day of April, 2005.
Mr. Justice Md. Imman Ali

This is an application filed on behalf of the defendants No.1 and 3
for reduction of the Bank Guarantee amount for release of the vessel m.v.
REGAL STAR from arrest.

The facts of the case relevant for disposal of the application in brief
are that the plaintiff being charterers filed the instant Admiralty Suit
impleading the vessel, its owner, master, agent, broker and local agent
claiming in total US$ 1,000,716.00 on account of refund of hire and value
of bunkers paid by the plaintiff amounting to US$ 281,766.00; on account
of pilotage, port dues, berth hire, inward & outward, mooring, taxes,
draught survey, light dues, agency fees etc. incurred by the plaintiff at the
port of Haldia amounting to US$ 18,950.00 and on account of
consequential loss amounting to US$ 700,000.00, as detailed in the plaint.

The suit was admitted for hearing and upon an application for arrest being allowed, the vessel was arrested by order dated 31.3.2005.

Mr. M. Hafizullah, learned advocate appearing on behalf of the defendants No.1 and 2 has filed written objection against the plaintiff's application for arrest and also this application for reduction of the Bank Guarantee amount for release of the vessel. The learned advocate submits that the plaintiff entered into a charter party agreement with Jangha Marine Corporation who had themselves chartered the vessel from the head owner Thymus Shipping Corporation defendant No.2 and the owner of the vessel is not privi to the contract of charter by the plaintiffs and, therefore, not liable to pay any of the claims of the plaintiff. The learned advocate submits that it appears from the documents submitted by the plaintiff that the amount of US$ 281,766.00 was paid to Jangha Marine Corporation and not to the defendants No.1 and 2. He further submits that the failure of the vessel to berth at the port of Haldia was not due to any negligence or fault on the part of the owner of the vessel. The learned advocate further submits that the claim of the plaintiff is exorbitant and untenable, in particular, he submits, the claim for US$ 700,000.00 on account of consequential loss is fake, imaginary, fictitious and without any basis and has been made only to create undue pressure and to make illegal gains and it is not maintainable against the defendants No.1 and 2.

The learned advocate has referred to several decisions of this Court as well as the Appellate Division wherein the amount of claim of the plaintiff has been reduced by this Court to meet the ends of justice. His alternative prayer is that the amount of the Bank Guarantee for release of the vessel should be reduced.

Mr. Morshed Ahmed Khan, learned advocate appearing on behalf of the plaintiff submits that the amount of claim with regard to the refund of hire and value of bunkers and pilotage etc. are liquidated claims where the plaintiff has actually expended monies. With regard to the claim for consequential loss of US$ 700,000.00, he submits that this amount of claim had been threatened against the plaintiff by the supplier in India who had suffered loss due to the failure of the charter party contract. The learned advocate has produced a letter from West Bengal Essential Commodities Supply Corporation Limited, addressed to the plaintiff dated 4.4.2005 wherein they have claimed from the plaintiff compensation in the sum of US$ 700,000.00 against non-performance of the vessel, namely M.V. REGAL STAR at the port of Haldia. The learned advocate submits that this loss is also recoverable by the plaintiff from the defendants.

I have considered the submissions of the learned advocates, perused the application, written objection and documents as well as the supplementary document filed by the plaintiff. It is too early to be able to assess the total and final claim of loss. The claim of the plaintiff will depend upon his ability to prove by supporting evidence that he has incurred the loss as claimed by him. However, prima-facie it appears that he has made over payments to one of the defendants and also incurred costs with regard to port dues which is supported by the correspondence dated 6.3.2005. It is also to be borne in mind that the supplier may have had the cargo ready for loading on to the vessel at the load port and may have incurred expenditure which at this stage is not accurately quantifiable, but for which there will necessarily be some claim. However, the claim of the plaintiff for US$ 700,000.00 supported by a letter from the supplier

claiming US$ 700,000.00 including US$ 450,000.00 freight paid to the
plaintiff is yet to be substantiated. Moreover, the figure of US$ 450,000.00
appears to have been paid to the plaintiff and the plaintiff is claiming that as
his loss of business, which is again subject to proof. Bearing in mind the
submissions of the learned advocates and the papers which appear in the
record, I feel that the ends of justice will be met if the amount of Bank
Guarantee required for release of the vessel is reduced to US$ 400,000.00.

In the result, the application for reduction of amount of the Bank
Guarantee is allowed. The vessel M.V. REGAL STAR will remain under
arrest until the security is provided by the defendants for its release in the
figure stated above.

Md. Imman Ali.

Composed by: B.O.
Read by:
Exd. by: