UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
THYMUS SHIPPING CORP.,              :
                                    :
                                    :
            Plaintiff,              :       ECF
                                    :
    -against-                       :       07 Civ. 10522 (LLS)
                                    :
                                    :
JANGHA MARINE CORP.,                :
                                    :
            Defendant.              :
------------------------------------------------------x


## PLAINTIFF'S MEMORANDUM OF LAW IN
## OPPOSITION TO MOTION TO REDUCE ATTACHMENT

CARDILLO & CORBETT
Attorneys for Plaintiff
THYMUS SHIPPING CORP.
29 Broadway
New York, New York 10006
Tel: (212) 344-0464
Fax: (212) 797-1212

Of Counsel
James P. Rau

**PRELIMINARY STATEMENT**

Plaintiff THYMUS SHIPPING CORP ("Plaintiff" or "Thymus") submits this Memorandum of Law in Opposition to the Order to Show Cause by defendant, JANGHA MARINE CORP ("Defendant" or "Jangha") to reduce the maritime attachment.

The Court is respectfully referred to the accompanying Declaration of M. Hafizullah, Esq. ("Hafizullah Dec."), for additional facts regarding the motion.

This matter involves a maritime claim for breach of charter party (the "Charter Party") for the vessel M/V REGAL STAR (the "Vessel"). Plaintiff, as owner, chartered the Vessel to Jangha, a company with a place of business in Seoul, Korea.

During the period of the Charter Party, Jangha entered into a sub-charter of the Vessel to Sea Quest Shipping Pte. Ltd. ("Sea Quest"). Following Jangha's cancellation of its sub-charter with Sea Quest, the Vessel was arrested in Bangladesh as security for claims brought by Sea Quest for wrongful cancellation. In order to release the Vessel from arrest, Plaintiff was forced to post security in the form of a bank guarantee in the amount of $400,000. An action is currently pending in Bangladesh by Sea Quest which Plaintiff has been required to retain counsel to defend (See Hafizullah Dec.).

While the Vessel was under arrest in Bangladesh, Jangha in breach of the Charter Party withheld hire and port costs in the amount of $154,270.71(Verified Complaint¶ 12). In addition, Plaintiff's claim includes security for the $400,000 bank guarantee, the payment of some $55,000 in costs of the bank guarantee, and estimated interest, legal expenses and arbitration costs, for a total sum of $791,500.73 (Id. ¶ 16). Plaintiff's claims against Jangha are the subject of arbitration in London under the terms of the Charter Party .

Pursuant to this Court's Order for Process of Maritime Attachment dated November 21, 2007 (the "Order"), Process of Maritime Attachment and Garnishment was served on various garnishee banks, with the result that some $268,597.19 belonging to Jangha was attached in December 2007. In its motion, Jangha does not seek to vacate the attachment, but rather to reduce the amount of the Order to eliminate Plaintiff's security for the $400,000 bank guarantee. Given the amount attached, and the fact that Jangha is only challenging the bank guarantee portion of the Order, it is apparent that none of the attached funds would be released even were Jangha to prevail on its motion. However, as shown below, there is absolutely no merit to Jangha's position that Plaintiff should be deprived of security for the bank guarantee.

Jangha's sole ground for reduction of the attachment is that Plaintiff has allegedly failed to state a valid prima facie admiralty claim because it is an unripe indemnity claim. This argument ignores the fact that Plaintiff had to establish a bank guarantee, and thus Plaintiff has a direct and present interest in securing its indemnity claim against Jangha. In fact, as discussed in the Argument below, Judge Hellerstein in a case on point, upheld an attachment against a charterer for the amount of a bank guarantee posted by the shipowner, for a yet unresolved cargo claim, finding that the shipowner's indemnity claim constituted a valid prima facie admiralty claim. Navalmar (U.K.) Ltd. v. Welspun Gujarat Stahl Rohren, Ltd., 485 F.Supp.2d 399 (S.D.N.Y 2007).

Moreover, it must be pointed out that Jangha permitted the Vessel to be arrested and failed to provide security in violation of the Charter Party. Indeed, Plaintiff made repeated

2

demands upon Jangha to establish security in Bangladesh as required under the Charter Party, but Jangha refused to do so.

In addition, the amount of the bank guarantee Plaintiff was required to post in the Bangladesh action was directly related to advance hire paid by Sea Quest to Jangha, which Jangha refused to return after it cancelled the charter. It is clear from the Bangladesh court's decision concerning the amount of the bank guarantee to be posted for the release the Vessel from arrest, that the approximately $300,000 paid to Jangha by Sea Quest made up the bulk of the security. Thus, Plaintiff was in essence posting a bank guarantee for monies taken by Jangha. For Jangha to object now to securing Plaintiff's claim herein is adding insult to injury.

Finally, the repeated unsubstantiated assertion made throughout Jangha's papers that Sea Quest is no longer prosecuting the Bangladesh action is false. This is made crystal clear by the recent application by Sea Quest's counsel with the Bangladesh court seeking to extend the subject bank guarantee which was due to expire on April 23, 2008 (Hafizullah Dec., Exh. 2; ¶18).

## FACTS

Thymus chartered the Vessel to Jangha by time Charter Party dated December 1, 2004. During the period of the Charter Party, Jangha sub-chartered the Vessel to Sea Quest for a time chartered trip from Haldia and Paradip, India to China. The Vessel arrived at Haldia as directed by Jangha. Thereafter, Jangha instructed the Vessel to leave the port without cargo, Jangha having terminated its sub-charter with Sea Quest for claimed non-payment of the full hire due. Sea Quest, however, did pay partial hire in the amount of some $281,766. to Jangha which Jangha retained.

3

On March 30, 2005, Sea Quest commenced an action in Bangladesh against Thymus and Jangha, among others, for the breach of charter claiming $1,000,716 in damages. The alleged damages consisted of the following: 1) $271,766 Sea Quest had paid to Jangha for advance hire under the cancelled charter; 2) $18,950 for various port expenses paid by Sea Quest, and 3) $700,000 for consequential losses (Hafizullah Dec.¶13).

Shortly thereafter, while under the Charter Party to Jangha, the Vessel was arrested in Bangladesh as security for claims brought by Sea Quest concerning the cancellation of its sub-charter by Jangha. Under Clause 18 of the Charter Party, Jangha was not to allow the Vessel to be arrested which amounted to an encumbrance under this clause. Clause 18 provides in relevant part: "Charterers will not suffer, nor permit to be continued, any lien or encumbrance incurred by them or their agents, which might have priority over the title and interest of owners in the vessel." (Lennon Dec. Exhibit 7, Enclosure 1).

Given Jangha's responsibility for the arrest it was required under clause 18 to provide security for the release of the vessel. However, despite Thymus' repeated demands upon Jangha to establish security as required under this clause, Jangha refused to do so.

On subsequent application by Thymus' counsel for reduction of security for the release of the vessel, the Bangladesh Supreme Court reduced the amount of the bank guarantee necessary for such release to $400,000, by denying security for the consequential losses claimed by Sea Quest (Lennon Dec. Exhibit 9, Enclosure 3). It should be emphasized that the amount of bank guarantee essentially covered the approximately $300,000 paid to Jangha by Sea Quest.

Consequently, Thymus was compelled to establish security in the form of a bank guarantee in the amount of $400,000, in order to secure the release of the Vessel. This bank

guarantee has been renewed periodically with application to the court for an extension of its validity. Thymus has been forced to bear not only the risk of exposure under this bank guarantee, but the bank fees and expenses which are some $55,000, and mounting.

It is therefore the height of audacity for Jangha to criticize Thymus' defense in the the Bangladesh action, as Thymus would not even be involved there, but for Jangha's acts. Moreover, most of the assertions made by Jangha with regard to the Bangladesh proceedings are simply false or incorrect. For example, in its brief at page 3 Jangha contends that "Thymus should have by now obtained, or sought a dismissal of Sea Quest's claims...". As made clear by Mr. Hafizullah, Thymus' counsel in that action, there is no procedure to move the court for a dismissal of the case. There must be a full trial and hearing of the suit (Hafizullah Dec.¶ 17). Unfortunately, as explained by Mr. Hafizullah, as there is only a Single Judge of the High Court Division of the Supreme Court of Bangladesh which is vested with admiralty jurisdiction, who also hears other matters, it takes time from when the action is started to obtain such a hearing (Id. ).

Moreover, Jangha's criticism that Thymus has done nothing in the case since its inception in March 2005 is equally unfounded . Following Bangladesh court procedure, Thymus filed its Written Statement in March 2006 setting forth its legal position in the action (Hafizullah Dec., Exh 1). Captain Mak in his Declaration failed to mention this important filing by Thymus, which sets the stage for the next procedures in the case ultimately leading to a trial date (Id.¶ 16).

It must also be emphasized that Jangha remains a defendant in the Bangladesh action. As the party with the direct dealings and the contractual relationship with Sea Quest,

Jangha is in a perfect position to raise whatever defenses and "motions" it thinks necessary to prevail against Jangha's claim. Given the nature of Sea Quest's claim that improperly tries to link Thymus and Jangha together, such a victory by Jangha would presumably result in a win for Thymus. As Jangha has done absolutely nothing to defend the claim, its purported criticisms of Thymus are ludicrous.

In addition, Jangha makes the unsubstantiated assertion several times in its papers that Sea Quest is not going to pursue its claim against Thymus in the Bangladesh action. For example, in its brief at page 3, Jangha incredibly states: "it appears Sea Quest is no longer in business and thus will not, be pursuing a recovery from Thymus in Bangladesh." (Emphasis original). This is nothing but rank speculation, which has proven to be untrue as shown below.

In a similar vein, Captain Mak speculates in his Declaration that Sea Quest may no longer have counsel in the Bangladesh proceedings because he was unable to speak to a Mr. Noor Hossain, who he mistakenly states is "Sea Quest's representative." (Mak Dec. ¶ 18). In fact, Sea Quest's counsel in this action is not Mr. Hossain, but Mr. Morshed Khan of the Bangladesh firm, Lee Khan & Partners[1] (Hafizullah Dec. ¶ 18).

In fact, Sea Quest counsel's application just days ago for an extension of the bank guarantee in Bangladesh shows that Sea Quest is pursuing its claim against Thymus (Hafizullah Dec., Exh. 2). Thymus' counsel advises that he will be in court this month in connection with the extension of the bank guarantee and will request an early hearing date (Id.¶ 16).

---

[1] The same Mr. Khan, whose name appears as the Advocate for Sea Quest in the courts' opinion concerning the amount of the bank guarantee (Lennon Dec. Exhibit 9, Enclosure 3).

6

As Plaintiff has been forced to post the $400,000 bank guarantee through no fault of its own, Plaintiff has a direct right to security from Jangha as shown below.

## ARGUMENT

### DEFENDANT'S MOTION TO VACATE AND REDUCE THIS COURT'S ORDER INSOFAR AS SECURITY FOR THE BANK GUARANTEE MUST BE DENIED BECAUSE PLAINTIFF HAS STATED A VALID PRIMA FACIE ADMIRALTY CLAIM PURSUANT TO RULE E(4)(f)

Rule E(4)(f) entitles any person claiming an interest in property restrained pursuant to Process of Maritime Attachment and Garnishment "to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules."

The Second Circuit has held that "a district court must vacate an attachment if the plaintiff fails to sustain his burden of showing that he has satisfied the requirements of Rules B and E". Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 445 (2d Cir. 2006). Under Rule E(4)(f), the "burden is on plaintiff to make four basic showings":

> [A]n attachment should issue under Rule B if the plaintiff shows that 1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment.

Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd., 475 F.Supp.2d 275, 278 (S.D.N.Y 2006) (quoting Aqua Stoli, 460 F.3d at 445).

There is no issue in the present case that Plaintiff has met the requirements for issuance of the attachment Order under Rule B. Here Jangha is seeking only to vacate that part of the Order allowing security for the $400,000 bank guarantee established by Plaintiff in Bangladesh, thereby reducing the amount of the attachment.

The sole basis for Jangha's motion is that Plaintiff has allegedly failed to state a valid prima facie admiralty claim under Rule B because its claim on the bank guarantee is an unripe indemnity claim for which it purportedly relies on three cases. Jangha, however, ignores the Navalmar(U.K.) decision in its brief, a case directly on point in which Judge Hellerstein distinguished the cases relied upon by Jangha in its brief. Navalmar (U.K.), 485 F.Supp.2d 399.

In Navalmar(U.K.), the court upheld a Rule B attachment brought by the shipowner Navalmar, against the charterer of its vessel, arising from a third party cargo damage against Navalmar. Navalmar had been required to post a $1,000,000 bank guarantee to have its vessel released when arrested by the cargo consignee in Aden, Yemen. The cargo suit against Navalmar was unresolved and pending in the court in Aden at the time of the Rule B attachment and motion to vacate. Navalmar had a claim in London arbitration against the charterer for indemnity for the cargo claim, which also remained pending.

The court rejected the defendant charterers' challenge to the attachment based on the argument that it was a premature indemnity claim finding Navalmar to have stated a valid prima facie maritime claim as follows at page 404:

> I find in the case before me that plaintiff Navalmar's claim in the London arbitration for indemnity against WGSR, the charterer, states a prima facie admiralty claim. Navalmar, having been required to file a million dollar bank guarantee in the Aden Commercial Court, to secure the consignee of the goods for damaged cargo during an ocean voyage aboard the M/V Patara

8

> while it was chartered to WGSR, has a direct interest in securing its claim of indemnity against WGSR. In effect, Navalmar has had to prepay a debt owed by it or WGSR, as may be determined, and should have the right by attachment to secure its claim against WGSR for indemnity, just as the consignee of the goods gained security against Navalmar by arresting the vessel owned by Navalmar. The entire point of an attachment, as a provisional remedy before trial, is to secure a plaintiff's claim before it can be adjudicated. In a world of shifting assets, numerous thinly-capitalized subsidiaries, flags of convenience and flows of currencies, maritime attachments have particular importance. *See e.g., Aurora Maritime Co. v. Abdullah Mohamed Fahem & Co.*, 85 F.3d 44 (2d Cir. 1996) ("Maritime attachment is by any test a characteristic feature of the general maritime law."). (emphasis added).

As in Navalmar (U.K.), Plaintiff has been required to file a bank guarantee with the court in Bangladesh to secure Sea Quest's claim against Plaintiff and to in effect prepay the claim of Sea Quest. By the present attachment, Plaintiff is essentially obtaining counter-security from Jangha for a claim on which it was forced to post security.

Moreover, the court in Navalmar (U.K.) pointed out that other judges in this district have ruled "that a claim for indemnity is a lawful admiralty claim, and one that qualifies under Admiralty Rule B as entitling the plaintiff to an arrest of a ship or attachment or garnishment of money or property found in the district". Navalmar (U.K.), 485 F.Supp.2d at 404. See E.g., Daeshin Shipping Co. Ltd. v. Meridian Bulk Carriers, Ltd., 2005 U.S. Dist. LEXIS 22409, *7-9 (S.D.N.Y. 2005) (J. Buchwald) (allowing security for indemnity claim by plaintiff as disponent owner against its charterer for alleged vessel damage when the vessel owner and head charterer had appointed arbitrators and exchanged correspondence about the claim and where the head charterers had reportedly initiated suit against plaintiff in Korea and attached its property there); Staronset Shipping Ltd. v. North Start Navigation Inc., 659 F.Supp.

189, 191 (S.D.N.Y. 1987) (J. Knapp) (allowing security for indemnity claim where stevedore arrested vessel in order to obtain security; the owner's claim against charterer was not premature since "the shipowner's concerns are reasonable" and thus, the owner was "entitled to the security which he seeks.").

Judge Hellerstein went on to note that in other cases by contrast "no proceeding against the plaintiff had commenced at all, rendering its claim for indemnification speculative. See e.g. J.K. Int'l, 2007 U.S. Dist. LEXIS at *15-16 ('There is nothing in the record ... to suggest that a lawsuit against plaintiff, for which plaintiff can then sue defendant for indemnity, is on the horizon')". Navalmar (U.K.), 485 F.Supp.2d at 405 n.5.  Jangha's reliance on J.K. Int't in its brief is therefore totally misplaced.

In addition, although Navalmar (U.K) involved the Inter-Club Agreement ("ICA"), which governs apportionment of liability between the parties insurers (P&I Clubs) for claims of cargo damage arising under charter parties, the court nevertheless declined to follow Sonito Shipping Co., Ltd. v. Sun United Marine Ltd., 2007 U.S. Dist. LEXIS 19531 (S.D.N.Y 2007) (holding indemnity claim under ICA not to have accrued under the terms of that agreement).  The court in Navalmar(U.K), distinguished Sonito as follows at page 405:

> Navalmar, in effect, has prepaid the full claim of the consignee by order of the Aden Commercial Court, for the credit of WGSR [charterer] as well as of itself, and seeks to secure its claim for indemnity against WGSR. The conditions of this case, flowing from litigation and a ship arrest in the Aden Commercial Court and a consequent arbitration in London, are significantly different from the conditions of Sonito, Bottiglieri, and like cases.  The parties have cited no precedent to suggest that Clause 4 of the ICA should apply where a vessel owner has had to prepay an obligation potentially owed by the charterer for goods damaged in an ocean voyage arranged by the charterer. (Footnote omitted)(emphasis added)

In a recent case, however, involving a cargo indemnity claim under the ICA, the court followed Sonito in holding that a shipowner's indemnity claim against the charterer of the vessel for liability for cargo damages brought by the consignees was premature under the express wording of the ICA, even though the shipowner had bonded the claims. Sanko Steamship Co., Ltd. v. China National Chartering Corp., 2008 U.S. Dist. LEXIS 16512 (S.D.N.Y 2008). The ICA provides that a cargo claim must be "properly settled or compromised and paid" before apportionment between the insurers. The court, therefore, declined to follow Navalmar ( U.K), because of the express wording of the ICA. The court nevertheless upheld the attachment with regard to the bonds posted by the shipowner for the unresolved and unpaid cargo claims finding a separate breach of the charter under which the claims accrued.

In the present case, as there is no issue of the ICA involved, but rather a claim by Sea Quest for wrongful cancellation of the sub-charter, the Navalmar (U.K) decision remains controlling on the issue raised herein.

Finally, Jangha seems to be seeking in its motion to also reduce the almost $55,000 in bank fees and costs paid by Plaintiff as of the time of the filing of the Verified Complaint (¶ 16 C.). As these fees and costs, however, have already been paid by Plaintiff there is absolutely no basis these expenses could be considered an "unripe indemnity" claim. Accordingly, security for these expenses must be retained and cannot be encompassed by Jangha's unripe indemnity argument--notwithstanding the utter lack of merit of this argument as shown above.

## CONCLUSION

For all the foregoing reasons, Defendant's motion to reduce the attachment should be denied.

Dated: New York, New York
April 11, 2007

Respectfully submitted,

CARDILLO & CORBETT,
Attorneys for Plaintiff
THYMUS SHIPPING CORP.

By: _____
James P. Rau (JR 7209)

29 Broadway, Suite 1710
New York, New York 10006
212-344-0464.
