LENNON, MURPHY & LENNON, LLC
Attorneys for Defendant
JANGHA MARINE CORP.
The Gray Bar Building
420 Lexington Avenue, Suite 300
New York, New York 10170
Telephone:    (212) 490-6050
Facsimile:     (212) 490-6070

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
THYMUS SHIPPING CORP.,                          :    07 CV 10522 (LLS)
                                                :
                    Plaintiff,                  :    ECF CASE
                                                :
          - against -                           :    MEMORANDUM OF LAW IN
                                                :    SUPPORT OF MOTION FOR
JANGHA MARINE CORP.,                            :    COUNTERSECURITY AS PER
                                                :    SUPPLEMENTAL RULE E(7)
                    Defendant.                  :
-----------------------------------------------------------X

  Defendant, JANGHA MARINE CORP., ("Jangha" or "Defendant"), by its undersigned counsel, Lennon, Murphy & Lennon, LLC, files the within Memorandum of Law in Support of its Motion for Countersecurity. For the reasons set forth herein, and in the supporting Declaration of Kevin J. Lennon, Plaintiff should be ordered to post countersecurity in the amount of $322,760.66, or, alternatively, Plaintiff should be ordered to post counter-security in the same amount of funds belonging to Jangha that it has restrained, and that, in either case, that if Plaintiff fails to provide such counter-security within ten (10) business days of the date of such an Order, that the Ex Parte Process of Maritime Attachment previously ordered in this case should be vacated and all of Jangha's property and/or funds be released from attachment.

## PRELIMINARY STATEMENT

  Defendant's motion should be granted because: (1) Supplemental Admiralty Rule E(7)(a) plainly provides for the provision of security for Defendant's counterclaim; (2) the Plaintiff has

obtained security from the Defendant, via service of the Ex Parte Order and Process of Maritime Attachment and Garnishment on non-party garnishee located in the district, in the sum of $268,597.15 for Plaintiff's claims as alleged in its Verified Complaint dated November 21, 2007; (3) the Defendant's counterclaim arises from the same charter party contract as the one relied upon by the Plaintiff in support of its alleged claims; and (4) it would be inequitable to deny Defendant countersecurity in the amount of $322,760.66 for its counterclaim in these circumstances where the Plaintiff has already obtained security for its alleged claims in a nearly equivalent amount to the security being sought by the Defendant for its Counterclaim.

## STATEMENT OF FACTS

The relevant facts are set out in the Declaration of JANGHA's counsel, Kevin J. Lennon, to which the Plaintiff's Verified Complaint, Ex Parte Order and Defendant's Counterclaim are annexed.

The Plaintiff, Thymus Shipping Corp. ("Thymus" or "Plaintiff") commenced this action sounding in admiralty seeking process of maritime attachment and garnishment ("PMAG") pursuant to Supplemental Admiralty Rule B. Plaintiff filed its Verified Complaint on November 21, 2007. Plaintiff's Verified Complaint prayed for the issuance of an ex parte Order authorizing the issuance of a PMAG against Defendant's assets located in this District in the amount of $791,500.73, inclusive of estimated interest, attorneys' fees and costs. *See a copy of Plaintiff's Verified Complaint attached as Exhibit 1 to Declaration of Kevin J. Lennon ("Lennon Decl.").*

On or about November 21, 2007 Plaintiff obtained, on an ex parte basis, an order of maritime attachment in the amount $791,500.73. *See a copy of Ex Parte Order, Lennon Decl., Exhibit 2.* The Clerk of Court subsequently issued a PMAG in the same amount. Plaintiff thereafter served the attachment order and PMAG on various non-party garnishee banks located

within the Southern District of New York. To date, a total of $268,597.15 of the Defendant's funds have been attached as a result of Plaintiff's service of its PMAG.

Pursuant to a maritime contract of charter dated December 1, 2004 the Plaintiff chartered the M/V Regal Star ("Vessel") to Defendant who, in turn, sub-chartered the Vessel to non-party Sea Quest for one time chartered trip from Haldia and Paradip, India to China. The Vessel was directed to and arrived at Haldia, India for loading of Sea Quest's cargo. However, Sea Quest having failed to pay hire on the sub charter party to Jangha as required, Jangha terminated the sub charter party. *See Lennon Decl., ¶ 5.*

Thereafter, Jangha re-let the Vessel by way of a new sub charter to non-party Jade Fortune Investment Inc. ("Jade"). Jangha advised Thymus to follow Jade's forthcoming voyage instructions. Jade subsequently issued voyage instructions to Thymus who followed the same and loaded Jade's cargo at Haldia. The Vessel subsequently arrived at Chittagong, Bangladesh to discharge Jade's cargo. However, on or about March 31, 2005, Sea Quest unlawfully arrested the Vessel for an alleged claim of loss and damages stemming from the events at Haldia, India. *See Lennon Decl., ¶ 6.*

Thymus thereafter arranged for the Vessel's release by posting a bank guarantee in the sum of $400,000 to secure Sea Quest's alleged claims. Following the initial filing of Sea Quest's arrest papers, and a challenge by Thymus to the size of the alleged claims supporting the arrest, there has been no virtually activity in the Bangladeshi proceedings although it was asserted by Thymus in Jangha's recent motion seeking to partially vacate Thymus' maritime attachment that the Bangladeshi proceedings were being advanced. *See Lennon Decl., ¶ 7.*

As a result of being required to post a bank guarantee Thymus filed the subject maritime attachment seeking the following: (a) payment of alleged outstanding hire and port costs in the sum

3

of $154,270.71; (b) counter security for the bank guarantee in the sum of $400,000; (c) costs of the bank guarantee n the sum of $54,576; and (d) interest, arbitration fees and attorneys' fees in the sum of $182,654.202. *See Lennon Decl., ¶ 8.*

The parties have fully submitted their dispute to London arbitration the last brief being submitted by Thymus on April 26, 2006. In this respect, it is to be noted that while Thymus has asserted a claim in the arbitration for unpaid hire and port expenses due and owing from Jangha under the parties' contract, Jangha has counterclaimed on the basis that the final accounting under the parties' contract shows a balance due to it of $165,450.52. Jangha reserved its right to seek security on its counterclaim pursuant to Supplemental Rule E(7) as part of its recent motion seeking to partially vacate Thymus' maritime attachment. *See Lennon Decl., ¶ 9.*

Jangha filed its Counterclaim on May 28, 2008 which included a copy of Jangha's Reply with Counterclaim that was submitted in the London arbitration. Jangha's Reply appended a copy of Jangha's Statement of Account dated September 12, 2005 reflecting a balance due to Jangha from Thymus in the sum of $165,450.52. *See Lennon Decl., ¶ 10..*

As alleged in the Counterclaim, Jangha at all times carried out its obligations under the Thymus – Jangha charter party including payment of all hire due and owing to Thymus; that the vessel was re-delivered to Thymus on or about April 26, 2005; and that a final Statement of Account issued to Thymus dated September 12, 2005 reflected a balance due to Jangha from Thymus in the sum of $165,450.52 which, though duly demand, no part of which had been paid by Thymus. *See Lennon Decl., ¶ 11.*

Despite due demand, Plaintiff has refused to provide countersecurity to Defendant in the amount of $322,760.66 notwithstanding Supplemental Admiralty Rule E(7)'s mandate that a Plaintiff *must* give security for damages in the counterclaim unless the court for cause shown directs

4

otherwise. For this reason, Defendant seeks from this Honorable Court an order pursuant to Rule E(7) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure directing Plaintiff to post countersecurity in favor of Defendant in the amount of $1322,760.66. *See Lennon Decl.,* ¶ 15.

## ARGUMENT

### POINT I

### JANGHA IS ENTITLED UNDER SUPPLEMENTAL ADMIRALTY RULE E(7)(a) TO SECURITY IN THE AMOUNT OF $322,760.66 FOR ITS COUNTERCLAIM

Supplemental Admiralty Rule E(7)(a) provides in relevant part as follows:

> When a person who has given security for damages in the original action asserts a counterclaim that arises from the transaction or occurrence that is the subject of the original action, a plaintiff for whose benefit the security has been given must give security for damages in the counterclaim unless the court for cause shown directs otherwise. Proceedings on the original claim must be stayed until this security is given, unless the court direct otherwise.

*See* Supp. Admiralty R. E(7)(a) of the Fed. R. Civ. P. In *Result Shipping Co. v. Ferruzzi Trading USA, Inc.*, 56 F.3d 394, 399 (2d Cir. 1995), the Court held that the purpose of the Rule is "to place the parties on an equality as regards security." *Id.* at 399-400 *citing Titan Navigation Inc. v. Timsco, Inc.*, 808 F. 2d 400, 403 (5th Cir. 1987) (*quoting Washington-Southern Navigation Co. v. Baltimore & Philadelphia Steamboat Co.*, 263 U.S. 629, 638-39 (1924)).

Countersecurity is appropriate and routinely granted when a defendant whose property has been attached asserts non-frivolous counterclaims growing out of the same transaction, especially when the counterclaimant could have proceeded *in rem* or *quasi in rem* in an independent suit. Consistent with *Result Shipping*, courts have consistently held that Rule E(7) entitles a defendant to countersecurity to place the parties on an equal footing with respect to security. *See e.g. Americas Bulk Transport Ltd. v. Volcano Shipping S.A.*, 2008 U.S. Dist. LEXIS 4269 (S.D.N.Y. 2008);

*Clipper Shipping Lines, Ltd. v. Global Transporte Oceanico S.A.*, 2007 U.S. Dist. LEXIS 18827 *4 (S.D.N.Y. 2007); *Finecom Shipping Ltd. v. Multi Trade Enterprises AG*, 2005 U.S. Dist. LEXIS 25761 *2 (S.D.N.Y. 2005); *Ythan Limited v. Americas Bulk Transport Limited*, 336 F. Supp. 2d 305, 307 (S.D.N.Y. 2004).

The trial court possesses broad discretion in deciding whether to order countersecurity. *See Result Shipping Co., supra*; *Dongbu Express Co. Ltd. v. Navios Corp.*, 944 F.Supp. 235, 239 (S.D.N.Y. 1996). As stated by the court in *Finecom Shipping Ltd. v. Multio Trade Enterprises AG*, 2005 U.S. Dist LEXIS 25761, 2005 AMC 2952 (S.D.N.Y. 2005):

> While courts have identified a number of factors to be considered in exercising this discretion, the core purpose of the countersecurity rule is to place the parties on an even footing; if one party is deprived of the use of its property during the litigation but the adverse party is not, despite the pendency of reciprocal claims, the party with the security may have unfair leverage in the action.

*Finecom Shipping Ltd.*, 2005 U.S. Dist LEXIS 25761 at *2 (citations omitted). In *Result Shipping*, the Second Circuit stated that a court should be guided primarily by two principals in exercising its discretion regarding countersecurity. First, courts must consider that the purpose of the Rule is to place the parties on an equality as regards security. This factor mandates the ordering of countersecurity where, as here, a defendant whose property has been attached asserts non-frivolous counterclaims growing out of the same transaction  Second, Rule E(7)(a) is not intended to impose burdensome costs on a plaintiff that might prevent it from bringing suit. *See Result Shipping Co., supra.*

In this case, it is clear that both Plaintiff's alleged claims and Defendant's Counterclaim arise from the charter party dated December 1, 2004 entered into between the parties. Concisely stated, the parties' competing claims concern whether or not the other is liable for the costs and consequences of the events which transpired when Jangha's prior sub-charterers, non-party Sea

6

Quest, unlawfully arrested Plaintiff's vessel resulting in Jangha lawfully placing the vessel off-hire, and Plaintiff being compelled to post a bank guarantee to secure Sea Quest's claim asserted in the Bangladeshi court, in order to free its vessel from arrest. Therefore, Defendant's counterclaim arises from the same transaction(s) and;/or occurrence(s) that are the subject of the original action and satisfies the requirement of Supplemental Rule E(7).

Defendant's Counterclaim is not frivolous since it will be entitled to recover from Plaintiff its alleged damages by showing that it was justified in placing the vessel off-hire during the time it was arrested by non-party Sea Quest. This is not a situation where an Order requiring Plaintiff, which is a substantial business entity, to post countersecurity in the amount of $322,760.66 would pose any undue burden. In this regard, the instant case is unlike the situation where, for example, an individual seaman has sued for unpaid crew wages and his employer has demanded countersecurity.

An Order directing Plaintiff to provide countersecurity in the instant scenario would also serve equitable purposes. Plaintiff has already obtained security for its alleged claims in the amount of $268,597.15. That sum may increase at any time since Plaintiff continues to serve the PMAG on non-party garnishee banks in the district and is lawfully permitted to seek to attach Jangha's property or funds that may be found in the district to secure the remaining aspect of its claim up to the full $791,500.73 as permitted by the Ex Parte Order.

Thus, Plaintiff should now be required, pursuant to Supplemental Admiralty Rule E(7), to give security to Defendant for its counterclaim in the amount of $322,760.66. The concept of reciprocal security for claims is expressly provided for by the Supplemental Admiralty Rules and the mechanism for such has been construed as furthering the goal of placing the parties on equal

footing. As the counterclaim arises directly from the contract entered between the parties, and the provision of countersecurity would be equitable, Defendant is entitled to the security it seeks herein.

## POINT II

### THYMUS' ATTACHMENT SHOULD BE VACATED IF IT FAILS TO PROVIDE SECURITY FOR JANGHA'S COUNTERCLAIM

The failure of a party to post security for a counterclaim where such party is already benefiting from security on its claim would violate the goal of establishing 'equal footing' of the parties *vis-à-vis* reciprocal security. *See Result Shipping, supra.* The acknowledged remedy for such a failure is to vacate the underlying attachment. *See Verton Navigation, Inc. v. Caribica Shipping Ltd.*, 1992 U.S. Dist. LEXIS 517, *5 (S.D.N.Y. 1992).

Thus, in the event that the Court orders Plaintiff to post countersecurity but Plaintiff fails to provide such countersecurity, the Court should dismiss this action with prejudice which will have the effect of releasing from attachment all of Jangha's property and fund currently attached at any and all non-party garnishee banks in the district. Failure to provide for such an equitable remedy would permit the injustice of Plaintiff retaining full security for its alleged claims whereas Defendant would be left without any security for its counterclaim.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, and also for those reasons set out in the Declaration of Kevin J. Lennon, Plaintiff should be ordered to provide security for Defendant's Counterclaim in the sum of $322,760.66 in the form of a surety bond, or other mutually acceptable form, within ten (10) calendar days following issuance of an Order from this Court compelling Plaintiff to provide such security.

Dated: June 27, 2008
    New York, NY

               LENNON, MURPHY & LENNON, LLC
               Attorneys for Defendant / Counterclaimant
               JANGHA MARINE CORP.

By: /s/ Kevin J. Lennon

               The Gray Bar Building
               420 Lexington Ave., Suite 300
               New York, NY 10170
               (212) 490-6050 - phone
               (212) 490-6070 - facsimile
               kjl@lenmur.com

**<u>AFFIRMATION OF SERVICE</u>**

I hereby certify that on June 27, 2008, a copy of the foregoing Memorandum of Law in Support of Motion for Countersecurity was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's CM/ECF system.

By: /s/ Kevin J. Lennon